# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QATAR NATIONAL BANK<br>Cornich Road<br>Doha, Qatar,<br><br>       Plaintiff,<br><br>       v.<br><br>WINMAR, INC. d/b/a<br>WINMAR CONSTRUCTION<br>1420 K Street, N.W.<br>Suite 250<br>Washington, D.C. 20005,<br>       and<br>901 15th Street, N.W.<br>Suite 800<br>Washington, D.C. 20005,<br><br>       Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiff Qatar National Bank ("QNB") for its Complaint against Defendant Winmar, Inc. d/b/a Winmar Construction ("Winmar"), alleges as follows:

## PARTIES

1.     Plaintiff QNB is a foreign banking institution organized under the laws of the Government of the State of Qatar with its principal place of business in Doha, Qatar. The Government of the State of Qatar owns 50% of the share value of QNB.

2.     Defendant Winmar is a corporation organized under the laws of the District of Columbia with its principal place of business at 1420 K Street, N.W., Washington, D.C. 20005 and at 901 15th Street, N.W., Washington, D.C. 20005. Defendant Winmar is licensed to do business within the District of Columbia.

1

## JURISDICTION AND VENUE

3.      QNB incorporates paragraphs 1-2 of this Complaint as if fully set forth herein.

4.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. *See* 12 C.F.R. §§ 210.25-31. Alternatively, this Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because it is between a citizen of a foreign state and a citizen of the District of Columbia and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

5.      Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and 1391(b) because Defendant Winmar resides in this district and is subject to personal jurisdiction here, a substantial part of the events or omissions material to QNB's causes of action occurred in this district, and the events or omissions at issue have had substantial effects in the United States and in this District.

## FACTS COMMON TO ALL COUNTS

6.      QNB incorporates paragraphs 1-5 of this Complaint as if fully set forth herein.

7.      On December 12, 2005, QNB executed a payment order from its customer, Al-Jazeera International ("Al-Jazeera"), in the amount of $474,677.00, payable to Defendant Winmar. QNB wired the funds through the United States FedWire system to its correspondent bank, JPMorgan Chase Bank ("JPMorgan Chase"), in New York, N.Y. JPMorgan Chase routed the funds to Winmar's bank, CitiBank Federal Savings Bank ("CitiBank"), in Washington, D.C. Citibank then deposited the funds into Defendant Winmar's Citibank account.

8.      On January 30, 2006, QNB erroneously sent a duplicate payment of $474,677.00 to Defendant Winmar. This erroneous duplicate transfer followed the same route to Defendant Winmar as the December 12, 2005 transfer, as more fully described in paragraph 7 of this Complaint.

9.     Defendant Winmar received the erroneously-wired funds on January 31, 2006. Defendant Winmar had actual and/or constructive notice that the second wire transfer was in error because that transfer was in the exact same amount, and from the same QNB customer (Al-Jazeera), as the December 12, 2005 payment. Notwithstanding this knowledge, Defendant Winmar did not inform QNB that it had received an erroneous duplicate payment.

10.    QNB discovered the error almost immediately. On February 2, 2006, QNB wired a notice and instructions to JPMorgan Chase stating that the January 30, 2006 wire transfer to Defendant Winmar erroneously duplicated the December 12, 2005 transfer to Defendant Winmar. The February 2, 2006 communication from QNB instructed JPMorgan Chase to treat the January 30, 2006 payment order as null and void and to refund the $474,677.00 to QNB's account with JPMorgan Chase.

11.    Later on February 2, 2006, JPMorgan Chase responded to QNB that the payment had already been effected and that JPMorgan Chase was, at that time, contacting Citibank for a refund.

12.    On February 8, 2006, Citibank informed JPMorgan Chase that Defendant Winmar refused to return the $474,677.00 that was erroneously-wired to Defendant Winmar's account with Citibank. JPMorgan Chase so informed QNB on the same day. On March 20, 2006, QNB refunded the erroneous payment of $474,677.00 to Al-Jazeera's account.

13.    Despite repeated requests from QNB, Defendant Winmar has refused to return the $474,677.00 to QNB. At all times relevant herein, Defendant Winmar has been aware that the $474,677.00 that it received from QNB on January 31, 2006 was a duplicate transfer of funds that should not have been made.

14.    As a result of Defendant Winmar's failure to return to QNB the $474,677.00, QNB has incurred a loss of $474,677.00, plus interest and attorneys' fees.

3

## CLAIMS FOR RELIEF

### COUNT ONE
### (Money Had and Received/Money Received by Mistake)

15.    QNB incorporates paragraphs 1-14 of this Complaint as if fully set forth herein.

16.    Defendant Winmar received $474,677.00 that rightfully belongs to QNB.

17.    Defendant Winmar has benefited from the receipt of that money because it has retained those funds for its own use.

18.    Because the $474,677.00 was mistakenly transferred to Defendant Winmar through a duplicate transaction and Defendant Winmar has no legal right to retain those funds, principles of equity and good conscience require that Winmar return those funds to QNB.

19.    Defendant Winmar refused to return the $474,677.00 to QNB despite QNB's repeated demands that it do so.  As a result, Defendant Winmar now owes QNB $474,677.00, plus interest.

### COUNT TWO
### (Unjust Enrichment)

20.    QNB incorporates paragraphs 1-19 of this Complaint as if fully set forth herein.

21.    QNB made an erroneous duplicate wire transfer to Defendant Winmar in the amount of $474,677.00.

22.    Defendant Winmar has refused to return those funds to QNB despite being notified that (a) the funds were erroneously transferred to Defendant Winmar, and (b) Defendant Winmar has no right to retain those funds.

23.    Defendant Winmar has been unjustly enriched because it has retained QNB's funds for its own use.

24.    At all times relevant herein, QNB has maintained a reasonable expectation that Defendant Winmar would return $474,677.00 to QNB because those funds were erroneously

transferred to Defendant Winmar and Defendant Winmar was aware of the mistake almost immediately after the mistake was made.

25.    Having received a second wire transfer from QNB on January 31, 2006 in the exact same amount as a wire transfer from QNB on December 12, 2005, and having been informed immediately thereafter that the wire transfer was made in error, Defendant Winmar should have reasonably expected that it would be required to return to QNB the erroneously transferred funds.

26.    Accordingly, it would be inequitable to permit Defendant Winmar to retain the $474,677.00 that it knowingly received in error.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Qatar National Bank prays that, upon final judgment, it has judgment against Defendant Winmar, Inc. d/b/a Winmar Construction in the amount of $474,677.00, plus:  reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; and, any other and further relief, both at law and in equity, to which Plaintiff may show itself justly entitled.

## DEMAND FOR JURY TRIAL

Plaintiff Qatar National Bank hereby demands trial by jury on all issues so triable.

DATED:        July 24, 2006                    Respectfully submitted,


_____
Ronald S. Liebman (D.C. Bar No. 239657)
Ugo Colella (DC Bar No. 473348)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone:  (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Plaintiff*
*Qatar National Bank*