## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| QATAR NATIONAL BANK | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:06CV01307 |
| | ) | |
| v. | ) | **PLAINTIFF QATAR NATIONAL BANK'S** |
| | ) | **MEMORANDUM IN OPPOSITION TO** |
| WINMAR, INC. d/b/a | ) | **DEFENDANT'S MOTION TO DISMISS** |
| WINMAR CONSTRUCTION | ) | **FOR FAILURE TO JOIN A NECESSARY** |
| | ) | **PARTY OR ALTERNATIVELY FOR AN** |
| | ) | **ORDER MANDATING JOINDER** |
| | ) | |

## I.    SUMMARY OF ARGUMENT

Defendant Winmar, Inc. improperly seeks dismissal for failure to join a "necessary," as opposed to an "indispensable," party— relief which is never permitted under the Federal Rules of Civil Procedure. "[T]he decision to proceed is a decision that the absent person is merely 'necessary' while the decision to dismiss is a decision that he is 'indispensable.'" *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968). Because "Defendant discusses neither the feasibility of joining [the absentee] nor the factors relevant to determining whether [the absentee] is indispensable to further proceedings[,] ... this Court has no grounds upon which it could dismiss the case for failure to join a necessary party." *Nofziger Communications, Inc. v. Birks*, 757 F. Supp. 80, 85 (D.D.C. 1991).

Further, there is no basis for this Court to find that Al-Jazeera International ("Al-Jazeera") is either necessary or indispensable to this action for the following reasons:

1.    By alleging only the most conclusory of facts and failing to introduce any evidence, Winmar failed to satisfy its "burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the

absence." *Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (citing *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981)).

2.  Analyzing circumstances nearly identical to those presented here, this Court has held that the recipient of an erroneous duplicate payment (here, Winmar), from a bank (QNB), has an independent obligation to repay the bank as a matter of law, regardless of the relationship between the recipient and the bank's customer. *Credit Lyonnais-New York v. Washington Strategic Consulting Group, Inc.*, 886 F. Supp. 92, 92-93 (D.D.C. 1995). Winmar's relations with Al-Jazeera are simply not material to this action and do not support joinder or dismissal.

3.  Winmar's assertion that QNB's customer, Al-Jazeera, must be joined because it is QNB's principal fails as a matter of law for two reasons:

    (a)  First, Contrary to Winmar's assertion that "[a] central issue in Winmar's defense to QNB's claim will be that Al Jazeera ratified the action taken by its agent QNB" (Defendant's Memorandum, p. 5), the "relation between a bank and its depositor is that of debtor and creditor, not of agent and principal." *Kings Premium Service Corp. v. Manufacturers Hanover Trust Co.*, 496 N.Y.S. 2d 524, 526 (2d Dep't. 1985). Unlike every agency relationship, which involves a fiduciary duty at its core, "'a bank generally owes no fiduciary duty to its depositors.'" *Geiger v. Crestar Bank*, 778 A.2d 1085, 1091 (D.C. 2001).

    (b)  Second, "Courts have consistently concluded that Rule 19 does not require joinder of principal and agent." *Dennis v. Wachovia Securities, LLC*, 429 F. Supp. 2d 281, 290 (D. Mass. 2006) (internal quotations omitted).

4.  Winmar's alleged concern that "[w]ithout Al Jazeera, ... Winmar will face the potential for inconsistent, competing obligations" from a subsequent lawsuit seeking reimbursement from

Al-Jazeera (Defendant's Memorandum, p. 6) is not the type of inconsistency Rule 19 protects against for two reasons:

(a)    First, Rule 19 merely protects a party "against situations in which there would be two court orders and compliance with one might breach the other." *Michael v. Haralson*, 586 F. Supp. 169, 171 (E.D.Pa. 1983). Winmar has not alleged, let alone proven, that any such type of conflicting order is likely or even possible.

(b)    Second, "the possibility that [defendant] may have a right of reimbursement... against [the absent party] is not sufficient to make [the absent party] indispensable to the litigation." *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3rd Cir. 1993). Further, "[n]either will defendant suffer prejudice if the [absentee] is not joined, since [it] remains free to raise any claim against the [absentee] in a separate action." *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 51 (D.D.C. 2003).

## II.    FACTUAL BACKGROUND

On December 12, 2005, QNB executed a payment order from its customer, Al-Jazeera, in the amount of $474,677.00, payable to Winmar. QNB wired the funds through to its correspondent bank, JPMorgan Chase Bank ("JPMorgan Chase"), in New York, N.Y. JPMorgan Chase routed the funds to Winmar's bank, CitiBank Federal Savings Bank ("CitiBank"), in Washington, D.C. Citibank then deposited the funds into Defendant Winmar's Citibank account. [Complaint, ¶ 7.]

On January 30, 2006, Al-Jazeera sent another fax transmission to QNB for the purpose of confirming whether or not the December 12, 2005 payment order had been executed by QNB. Instead, however, QNB interpreted the wire as another payment order in the same amount. [*See* Rasheed Decl., Ex. 1 & Ex. "A" attached thereto.] Acting on this miscommunication, later on January 30, 2006, QNB erroneously sent a duplicate payment of $474,677.00 to Winmar. This erroneous duplicate transfer followed the same route to Winmar as the December 12, 2005 transfer.

[Complaint, ¶ 8.]  Winmar received the erroneously-wired funds on January 31, 2006.  Defendant Winmar had actual and constructive notice that the second wire transfer was in error because that transfer was in the exact same amount, and on behalf of, the same QNB customer (Al-Jazeera), as the December 12, 2005 payment.  [Complaint, ¶ 9.]

After quickly discovering the error, on February 2, 2006, QNB wired a notice and instructions to JPMorgan Chase stating that the January 30, 2006 wire transfer to Winmar erroneously duplicated the December 12, 2005 transfer to Winmar.  The February 2, 2006 communication from QNB instructed JPMorgan Chase to treat the January 30, 2006 payment order as null and void and to refund the $474,677.00 to QNB's account with JPMorgan Chase. [Complaint, ¶ 10.]

Later on February 2, 2006, JPMorgan Chase responded to QNB that the payment had already been effected and that JPMorgan Chase was, at that time, contacting Citibank for a refund. [Complaint, ¶ 11.]  On February 8, 2006, Citibank informed JPMorgan Chase that Winmar refused to return the $474,677.00 that was erroneously-wired to Winmar's account with Citibank. [Complaint, ¶ 12.]  On March 20, 2006, after Al-Jazeera demanded that its account be credited in the amount of the erroneous transfer, QNB refunded the payment of $474,677.00 to Al-Jazeera's account.  [Rasheed Decl., Ex. 1 & Ex. "A" attached thereto; Complaint, ¶ 12.]  Despite repeated requests from QNB, Winmar has refused to return the $474,677.00 to QNB.  [Complaint, ¶ 13.]

## III.    ARGUMENTS AND AUTHORITIES

### A.    STANDARD

Rule 12(b)(7) permits a motion to dismiss if dismissal is required by Rule 19.  FED. R. CIV. P. 12(b)(7).  Rule 19, in turn, provides:

> (a) Persons to be Joined if Feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person

claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(a), (b). "This is a fact-specific inquiry that 'can only be determined in the context of particular litigation.'" *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 50 (D.D.C. 2003) (quoting *Provident Tradesmens Bank & Trust, Co. v. Patterson*, 390 U.S. 102, 118 (1968)).

This Court has discretion in deciding Winmar's Motion. *See United States v. Exxon Corp.*, 94 F.R.D. 252, 259 (D.D.C. 1981). However:

Before dismissing an action under the aegis of Rule 19, the district court must be positioned to say, with the security afforded by careful, practically-oriented exploration and evaluation of the facts and circumstances of the particular case: 1) one or more persons not joined as a party is indeed "needed for just adjudication," 2) joinder of such person(s) is not feasible, and 3) dismissal is preferable to adjudication without the unjoined person(s).

*Park v. Didden*, 695 F.2d 626, 628-29 (D.C. Cir. 1982) (reversing a Rule 19 dismissal where there was no reason for designating certain non-parties as anything other than proper parties whose joinder was permissive rather than compulsory); *see Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 8 (1990) ("The

Court of Appeals erred by failing to hold that the District Court abused its discretion in ordering [absentees] joined as defendants and in dismissing the action … ").

Furthermore, "federal courts have been very reticent to dismiss on the grounds of failure to join an indispensable party, except when serious prejudice or inefficiency will result." *Defenders of Wildlife v. Andrus*, 77 F.R.D. 448, 452 (D.D.C. 1978) (holding in that case, "[w]hile the failure to dismiss the case will perpetuate two lawsuits, the equities outweigh such inefficiency") (citing *Provident Tradesmens Bank*, 390 U.S. at 109-11; *Mallis v. Federal Deposit Ins. Corp.*, 407 F. Supp. 7 (D.C.N.Y.1975)); *Harran Transp. Co. v. National Trailways Bus System*, 1985 WL 2349, at *6 (D.D.C. Aug. 5, 1985) ("Virtually all discussions of the indispensable party issue emphasize that courts are reluctant to dismiss pursuant to Rule 19(b) unless it appears serious prejudice will result."). Thus, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505-06 (D.Md. 2002) (quoting *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999)) (internal citations omitted).

## B.  WINMAR FAILED TO SATISFY ITS BURDEN OF PRODUCING EVIDENCE TO PROVE A RIGHT TO EITHER JOINDER OR DISMISSAL

Winmar's motion seeking dismissal or joinder under Rules 12(b)(7) and 19 cannot be granted because it is not supported by any specific allegations or any evidence at all. "The proponent of a motion to dismiss under 12(b)(7) has the burden of <u>producing evidence</u> showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (emphasis added) (citing *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981) (holding that "the burden was on the defendants, as the moving party, to show that continuation of the action in [a party's] absence would prejudice them")); *Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F.

Supp. 1233, 1239 (D.D.C. 1982) (finding that "defendant has failed to meet his burden as the moving party to make out a claim of indispensability under Rule 19(a)").[1] The proponent's burden can be satisfied by providing "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Citizen Band*, 17 F.3d at 1293. By itself, Winmar's failure to produce any supporting evidence requires denial of Winmar's Motion. Winmar's conclusory statements of fact do not change this result. *See Swartz v. Beach*, 229 F. Supp. 2d 1239, 1251 (D. Wyo. 2002) ("A Rule 12(b)(7) motion will not be granted on the 'vague possibility that persons who are not parties may have an interest in the action.'") (quoting *Sunrise Financial, Inc. v. Painewebber, Inc.*, 948 F. Supp. 1002, 1006 (D. Utah 1996)).

### C. WINMAR'S RELATIONSHIP WITH AL-JAZEERA DOES NOT REQUIRE JOINDER BECAUSE IT IS IMMATERIAL TO WINMAR'S DUTY TO REFUND THE DUPLICATIVE PAYMENT TO QNB

In a case involving facts almost identical to the present case, this Court has held that, where an erroneous duplicate payment was issued by a bank (like QNB here) based upon the mistaken belief that a confirmation request relating to a previous payment order was a new, separate payment order (as happened with the January 30, 2006 confirmation request from Al-Jazeera), the recipient has an obligation to repay the erroneous payment to the bank as a matter of law, independent of the recipient's relationship with the bank's customer. *Credit Lyonnais-New York v. Washington Strategic Consulting Group, Inc.*, 886 F. Supp. 92, 92-93 (D.D.C. 1995). This Court in *Credit Lyonnais* addressed a similar situation where:

> On December 24, 1993, Credit Lyonnais-New York made a wire transfer to Franklin National Bank in favor of its depositor Washington Strategic Consulting Group, in

---

[1]    Federal courts consistently place the burden of producing evidence on a 12(b)(7) movant. *See Third Ave. Trust v. Suntrust Bank*, 163 F. Supp. 2d 215, 218 (S.D.N.Y. 2001) ("The party moving for joinder bears the burden of demonstrating that these conditions exist."); *Sykes v. Hengel*, 220 F.R.D. 593, 595-96 (S.D. Iowa 2004) ("The proponent of a motion to dismiss under FED. R. CIV. P. 12(b)(7) has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence."); *E.E.O.C. v. Apria Healthcare Group, Inc.*, 222 F.R.D. 608, 609-10 (E.D.Mo. 2004) ("The party moving for dismissal under Rule 12(b)(7) has the burden to show that the absent person should be joined under Rule 19.").

the amount of $171,821.30. It did so at the request of its affiliate SCB Credit Lyonnais-Cameroon, which in turn was acting for its customer in Cameroon-Washington Strategic's client. Four days later, SCB Credit Lyonnais-Cameroon wired Credit Lyonnais-New York to inquire whether the requested payment had been made. Credit Lyonnais-New York, mistakenly thinking that its Cameroon affiliate had requested another transfer, wired another $171,821.30 to Franklin National Bank, which duly deposited the funds to the account of Washington Strategic.

It took nearly six months for Credit Lyonnais-New York to discover its mistake. As soon as it did, it made demand upon Washington Strategic for the return of the funds. When that demand was resisted, Credit Lyonnais-New York brought this action, advancing theories of unjust enrichment, money had and received, constructive trust, and conversion.

*Credit Lyonnais*, 886 F. Supp. at 92-93. Other than the amount of the duplicative transfer and the fact that the bank took six months, rather than only three days, to discover and inform the recipient of the mistake, the *Credit Lyonnais* facts are uncannily similar to those at issue here.

In *Credit Lyonnais*, this Court noted that "the outcome of this case is controlled by settled law: Where one person receives money that in equity and good conscience belongs to another, an action will lie for 'money had and received.'" *Id.* at 93 (citing *Hillyard v. Smither & Mayton, Inc.*, 76 A.2d 166, 167 (D.C. 1950)). As in the present case:

Washington Strategic's theory of defense is that the second payment was in fact authorized, or in any case that Washington Strategic was entitled to the money because its client still owed it about $170,000 when the second wire transfer arrived. The trouble with this theory is that it does not raise or depend upon a material issue of fact. The unjust enrichment issue is drawn between Credit Lyonnais-New York and Washington Strategic. Washington Strategic's Cameroonian client is not a party, and the question whether the client owed the money or authorized its payment is not material to that narrowly drawn issue.

*Id.* (emphasis added) (citing *4934, Inc. v. District of Columbia Dep't of Employment Services*, 605 A.2d 50, 56 (D.C. 1992)). Accordingly, this Court held that "[t]here are no genuine issues of material fact. Plaintiff is entitled to judgment as a matter of law." *Id.* at 92 (emphasis added). Similarly, the unjust enrichment claim asserted in QNB's Complaint "is drawn between [QNB] and [Winmar]." *Id.*

Winmar's client, Al-Jazeera, "is not a party, and the question whether the client owed the money or authorized its payment is not material to that narrowly drawn issue." *Id.*

Although Winmar vaguely alludes to a discharge for value defense, it does not allege any specific facts in support of this theory, let alone produce any evidence to support it. [*See* Defendant's Memorandum, p. 6.] Winmar's Motion does not cite to, and QNB's counsel cannot find, any cases from the District of Columbia recognizing the discharge for value defense. Rather, the rule in the District of Columbia, as stated by this Court, is that a recipient of an erroneous, duplicate bank payment must return the funds to the bank regardless of "whether the [recipient's] client owed the money or authorized its payment." *Credit Lyonnais*, 886 F. Supp. at 92-93.

Further, to the extent that some other jurisdictions recognize the discharge for value defense, which is inconsistent with the holding of *Credit Lyonnais*, its application is extremely limited and does not apply here. For example, as one court noted:

> No decision we are aware of has applied the discharge for value rule where the debt or lien in question was anything less than an objectively verifiable, preexisting, liquidated obligation. Indeed, allowing the rule to apply to debts or obligations any less substantial would risk destroying the certainty of the rule and allow the exception to control its application.

*Bank of America v. Sanati*, 11 Cal. App. 4th 1079, 1089 (Cal. App. 2 Dist. 1992) (citing RESTATEMENT OF RESTITUTION § 14 and cases collected therein). Even if the discharge for value defense were applicable, which is proscribed by this Court's opinion in *Credit Lyonnais*, Winmar has not provided any evidence that Al-Jazeera has a liquidated obligation to Winmar at any time pertinent to this analysis. There are other factors relating to the discharge for value defense favoring QNB; however, under this Court's holding in *Credit Lyonnais*, the Court need not undertake such an analysis.

**D.    THE FALSENESS OF WINMAR'S ASSERTION THAT QNB IS AL-JAZEERA'S AGENT DEMONSTRATES THE INNAPROPRIATENESS OF JOINDER**

In its Motion, Winmar asserts that "[a] central issue in Winmar's defense to QNB's claim will be that Al Jazeera ratified the action taken by its agent QNB" (Defendant's Memorandum, p. 5) and that "[t]his issue cannot be properly resolved unless Al Jazeera is a party." As a matter of law, Winmar is incorrect, aside from the illogical and false proposition that Al-Jazeera would ratify an erroneous, duplicate payment from its account.

> As a general rule, the "relation between a bank and its depositor is that of debtor and creditor, not of agent and principal. The money deposited becomes part of the bank's general funds, and it impliedly contracts to pay the depositor's checks ... to the amount of his credit, but in discharging its implied obligation it pays its own money as a debtor, not its depositor's money as agent"

*Kings Premium Service Corp. v Manufacturers Hanover Trust Co.*, 496 N.Y.S. 2d 524, 526 (2d Dep't 1985) (quoting *General Fire Assur. Co. of Paris, France, v State Bank*, 177 A.D. 745, 750 (N.Y.A.D. 1 Dept. 1917); *cf. Aaron Ferer & Sons Ltd. v Chase Manhattan Bank, N.A.*, 731 F.2d 112, 122 (2d Cir. 1984) ("A correspondent bank relationship, standing alone, does not create an agency relationship ... the usual relationship of bank and customer is that of debtor and creditor.").

The agency relationship alleged by Winmar is defined by the fiduciary obligations agents owe to their principals— an obligation absent from the relationship between a bank and its depositors. "An agency has been defined as 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Cahn v Antioch University*, 482 A.2d 120, 131 (D.C. 1984) (quoting RESTATEMENT (SECOND) OF AGENCY § 13 (1958)); *Aronoff v Lenkin Co.*, 618 A.2d 669, 687 (D.C. 1992) (noting that the duty an agent owes his principal is that of "a fiduciary respecting matters within the scope of the agency."). Unlike an agent, however, "'a bank generally owes no fiduciary duty to its depositors.'" *Geiger v Crestar Bank*, 778 A.2d 1085, 1091 (D.C. 2001) (quoting

*Miller v. American Nat'l Bank & Trust Co. of Chicago*, 4 F.3d 518, 520 (7th Cir. 1993)); *see also Islam v. Option One Mortg. Corp.*, 432 F. Supp. 2d 181, 195 (D. Mass. 2006) ("It is helpful to start with the observation that a bank's relationship to its customers [is] simply [ ] one of creditor and debtor ··· -- an arm's-length, business relationship. ... No fiduciary duty is owed.") (citations and quotation marks omitted). This rule is widely accepted in jurisdictions across the United States.[2]    Thus, the agency theory in Winmar's Motion must fail as a matter of law.    QNB and Al-Jazeera share "an arm's-length, business relationship" with no fiduciary duty.

In fact, it is clear that the money erroneously wired to Winmar belongs, not to Al-Jazeera, but to QNB. The United States Supreme Court has rejected the view that "a bank account consisted of money belonging to the depositor and held by the bank." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995). The Court noted "[i]n fact, ... it consists of nothing more or less than a promise to pay, from the bank to the depositor." *Id.*

> Once a deposit is accepted by a bank, it becomes part of the general deposits of that bank, and the transferee becomes a general creditor of the bank. ... At that point, the bank acquires an ownership interest in the transferred funds and the transferee acquires a cause of action against the bank. Such a cause of action is not a "legal interest" in the forfeited property, but a claim against the estate of the bank.

*United States v. BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. 2, 8 (D.D.C. 1997). Thus, if the second payment had been authorized by Al-Jazeera, QNB would have paid it with its own funds, which then would have affected Al-Jazeera debt or credit with QNB in an equal amount. Similarly, since the payment was not authorized by Al-Jazeera, it was paid with QNB's funds, however the amount of QNB's "promise to pay, from the bank to the depositor" ultimately remained unchanged,

---

[2]       *See Thompson v. Capital One Bank, Inc.*, 375 F. Supp. 2d 681, 683 (N.D. Ill. 2005) ("[N]o fiduciary duty exists between a bank and its depositor."); *Cruz v. United States*, 219 F. Supp. 2d 1027, 1039 (N.D. Cal. 2002) ("It is undisputed that 'banks, in general ··· are not fiduciaries for their depositors.'") (quoting *Copesky v. Superior Court*, 229 Cal. App. 3d 678, 694 (1991)); *Republic Nat. Bank v. Hales*, 75 F. Supp. 2d 300, 316-17 (S.D.N.Y. 1999) ("It is well settled under New York law that the usual relationship of a bank and its customer is not a fiduciary one, but rather one of creditor and debtor."); *Olvas Civiles, S.A. v. ADM Securities, Inc.*, 32 F. Supp. 2d 1018, 1024 (N.D. Ill. 1999) ("In Illinois, a fiduciary relationship does not exist as a matter of law between a bank and its depositor; the relationship is simply that of debtor/creditor.").

and QNB suffered the loss. *Citizens Bank*, 516 U.S. at 21. As a consequence, Winmar is wrongfully withholding QNB's— not Al-Jazeera's— money. This is consistent with the rule of *Credit Lyonnais* that the "the question whether [Al-Jazeera] owed the money or authorized its payment is not material" to the issue of Winmar's duty to repay the amount it received in error. *Credit Lyonnais*, 886 F. Supp. at 93.

## E.    EVEN IF AL-JAZEERA WAS QNB'S PRINCIPAL, RULE 19 DOES NOT REQUIRE ITS JOINDER

Even if QNB were Al-Jazeera's agent (which it is not, as demonstrated *supra*), the joinder of Al-Jazeera would not be required. "Courts have consistently concluded that 'Rule 19 does not require joinder of principal and agent.'" *Dennis v. Wachovia Securities, LLC*, 429 F. Supp. 2d 281, 290 (D. Mass. 2006) ("This is an appropriate case in which to exercise [the court's discretion] and get on with decision between the two real contestants.'") (quoting *Depriest v. BASF Wyandotte Corp.*, 119 F.R.D. 639, 640 (M.D.La. 1988) and *Fidelity & Cas. Co. of N.Y. v. Tillman Corp.*, 112 F.3d 302, 304 (7th Cir. 1997); *see also Hall v. National Service Industries, Inc.*, 172 F.R.D. 157, 159 (E.D.Pa. 1997) ("It is well established that Rule 19 does not require the joinder of principal and agent."); *Bausch v. Philatelic Leasing, Ltd.*, 728 F. Supp. 1201, 1209 (D.Md. 1989) ("Principals and agents are not, as a general rule, indispensable parties."); *Nottingham v. General Am. Communications Corp.*, 811 F.2d 873, 880 (5th Cir.), *cert. denied*, 484 U.S. 854 (1987) ("[I]t is well-established that Rule 19 does not require the ... joinder of principal and agent"). Consequently, Winmar's agency allegations support neither the mandatory joinder nor the dismissal sought by Winmar.

## F.    DISMISSAL OR JOINDER IS NOT PROPER BECAUSE WINMAR DOES NOT FACE ANY INCONSISTENT OBLIGATIONS WITHIN THE MEANING OF RULE 19

In its Motion, Winmar claims that "[w]ithout Al Jazeera, ... Winmar will face the potential for inconsistent, competing obligations." [Defendant's Memorandum, p. 6.] Winmar supports this contention with vague claims (again without any supporting evidence) that:

> Winmar is faced with the competing claim of Al Jazeera for return of the same funds. Al Jazeera is a necessary party to this action and just adjudication cannot be had in Al Jazeera's absence because these competing claims prevent this Court from according complete relief among the parties.

[Defendant's Memorandum, p. 5.] Again, as a matter of law, Winmar is incorrect.

The law is clear that the "inconsistent obligations" referred to in Rule P. 19(a) are distinct in nature from the hypothetical inconsistent adjudications about which Winmar expresses its concern.

> "[T]he possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic [does not] trigger the application of Rule 19." Rule 19(a)(2)(ii) protects against inconsistent obligations, not inconsistent adjudications; under the Rule a person is protected against situations in which there would be two court orders and compliance with one might breach the other.

*Michael v. Haralson*, 586 F. Supp. 169, 171 (E.D.Pa. 1983) (quoting *Field v. Volkswagenwerk A G*, 626 F.2d 293, 301-02 (3d Cir. 1980)); *see also Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("[I]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."); *Southern Co. Energy Marketing, L.P. v. Virginia Elec. and Power Co.*, 190 F.R.D. 182, 186 (E.D.Va. 1999) ("The term 'inconsistent obligations' does not mean 'any inconsistency' ... Inconsistent obligations arise only when a party to the case risks facing conflicting judgments, so that compliance with one would conflict with the other."). Winmar has not identified any potential future litigation, which might require it to violate any order of this Court. The result of any proceeding by this Court would not prevent Winmar from complying with any judgment either granting or denying it a right to reimbursement from Al-Jazeera.

## G. THE POSSIBILTY THAT WINMAR MAY NEED TO SEEK REIMBURSEMENT FROM AL-JAZEERA DOES NOT SUPPORT JOINDER OR DISMISSAL

The law is clear that Winmar's hypothetical future claim against Al-Jazeera— in response to any judgment this Court may enter in favor of QNB— under the theory that "Al Jazeera has been unjustly enriched and has received both the benefit of the funds under its contract with Winmar and

the recovery of the funds from QNB" (Motion, ¶ 8), does not support mandatory joinder.  In such circumstances, as this Court found in another case, "[n]either will defendant suffer prejudice if the [absentee] is not joined, since [it] <u>remains free to raise any claim</u> against the [absentee] <u>in a separate action</u>."  *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 51 (D.D.C. 2003) (emphasis added) (holding that a benefits plan was not an indispensable party to a lawsuit brought by a recovery agent against its insured under ERISA seeking medical expense reimbursement from the insured's recovery from a nonparty).  This is one specific application of the aforementioned rule that "[i]nconsistent obligations arise only when a party to the case risks facing conflicting judgments, so that compliance with one would conflict with the other."  *Southern Co.*, 190 F.R.D. at 186.

In the context of Rule 19, "<u>the possibility that [the defendant] may have a right of reimbursement</u>, indemnity, or contribution against [the absent party] <u>is not sufficient to make [the absent party] indispensable to the litigation</u>."  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3rd Cir. 1993) ("Though federal civil practice ... permits a party defendant who claims a right of contribution or indemnity from third persons to protect itself from potentially inconsistent verdicts by impleading the absent party under Federal Rule of Civil Procedure 14, it is not required to do so; and, if it does not, its right to bring a separate action for contribution or indemnity is unaffected.") (emphasis added).  Courts in jurisdictions across the United States consistently apply this rule.[3]

---

[3]    *See DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) ("The 'complete relief' provision of 19(a) 'does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible.'") (quoting *Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984)); *Dennis v. Wachovia Securities, LLC*, 429 F. Supp. 2d 281, 290 (D. Mass. 2006) ("'Rule 19 does not require joinder of persons against whom [parties] have a claim of contribution.'") (quoting *Nottingham v. Gen. Am. Comm. Corp.*, 811 F.2d 873, 880 (5th Cir. 1987)); *Payan v. Continental Tire North America, Inc.*, 232 F.R.D. 587, 590 (S.D. Tex. 2005) ("[T]he possibility of a suit for contribution does not justify dismissal under Rule 19"); *General Council of Assemblies of God v. Fraternidad de Iglesia de Asamblea de Dios Autonoma Hispana, Inc.*, 382 F. Supp. 2d 315, 320 (D. Puerto Rico 2005) ("The 'complete relief' prescribed in [Rule 19(a)] only relates to those persons already party to the action; it does not concern any subsequent relief that could be later obtained from the absent party."); *Sykes v. Hengel*, 220 F.R.D. 593, 597 (S.D. Iowa 2004) ("Even if ... VIT is required to indemnify the Defendants, that duty does not make VIT an indispensable party to this action.") (citing *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1016-17 (8th Cir. 1984)); *Giaguara S.p.A. v. Amiglio*, 257 F. Supp. 2d 529, 541 (E.D.N.Y. 2003) ("[I]t is long established in the Second Circuit that a joint obligor is not an indispensable party to an action against

The immateriality to the present action of Winmar's hypothetical reimbursement claim against Al-Jazeera does not depend on whether the underlying duty between those two entities is based on contract or tort. *See Janney*, 11 F.3d at 412 ("Although *Field* involved potential liability in tort from an auto accident, we think its reasoning is equally applicable to cases involving co-obligors who may be jointly and severally liable on a contract.") (citing *Field v. Volkswagenwerk A.G.*, 626 F.2d 293, 298 (3d Cir. 1980)).   It appears that Winmar may be contemplating a contribution or similar claim against Al-Jazeera seeking reimbursement of any funds that may be owed by Al-Jazeera to Winmar.[4]  Of course, this Court need not address Winmar's right of reimbursement from Al-Jazeera because such a right will not accrue until a judgment is entered herein.   In the District of Columbia, "[b]efore a right of contribution arises, a joint debtor must first establish that he paid more than his pro rata share." *Pleasants v. Locke*, 924 F.2d 1144, 1146 (D.C. Cir. 1991) (citing *Merchants Mutual Insurance Co. v. Richardson*, 273 A.2d 652, 655 & n. 5 (D.C. App. 1971)); *see also Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F. Supp. 2d 21, 29 (D.D.C. 2002) ("Nor should this action be dismissed because defendants cannot join [the absentees] for claims of contribution. ...   [T]he right of contribution does not arise until the party seeking contribution has paid his or her share.

---

one of the other obligors.") (citing *Greenleaf v. Safeway Trails*, 140 F.2d 889, 890-91 (2d Cir. 1944)); *Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2001 WL 585638 at *4 (S.D.N.Y. May 30, 2001) ("Well established precedent holds that 'one of several joint obligors is not an indispensable party to an action against the others'") (citing *Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889, 890 (2d Cir. 1944)); *In re Lloyd's American Trust Fund Litigation*, 954 F. Supp. 656, 676 n. 5 (S.D.N.Y. 1997) ("A speculative risk of future litigation is insufficient to render the absent [persons] necessary parties."); *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 164 F.R.D. 215, 217 (E.D. Mich. 1995) ("'The 'complete relief' provision of Rule 19 relates to those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible.'") (quoting *Budd v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984)); *S&S Machinery Corp. v. General Motors Corp.*, 1994 WL 529867, at *8 (S.D.N.Y. Sep. 28, 1994) ("If I were to consider every possible effect of non-joinder, including the possibility that a subsequent breach of an indemnification agreement would have to be litigated in a different court, the meaning of 'necessary parties' under Rule 19(a) would lose meaning and purpose."); *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496, 503 (7th Cir. 1980) ("[P]otential indemnitors have never been considered indispensable parties, or even parties whose joinder is required if feasible.").

[4]      In the District of Columbia, "it is axiomatic that one joint obligor may ordinarily claim contribution from a co-obligor after having discharged their mutual obligation.'" *Ross v. Fierro*, 659 A.2d 234, 238 (D.C. 1995) (quoting *Fithian v. Jamar*, 286 Md. 161, 410 A.2d 569, 574 (1979)).   Under the law of the District of Columbia, such contribution rights among co-obligors are apparently not limited to joint tortfeasors. *Id.* (holding that minority shareholder had a contribution obligation to a majority shareholder after the majority shareholder personally signed a note to pay off the corporation's prior note, on which the minority shareholder had been liable).

Such a claim would arise after a judgment was rendered against the defendants here."). Winmar's vague suggestion that it may pursue unjust enrichment claims against Al-Jazeera leads to no different result, "since [it] remains free to raise <u>any claim</u> against the [absentee] in a separate action." *Primax*, 260 F. Supp. at 51 (emphasis added); *Janney*, 11 F.3d at 412 ("[T]he possibility that [defendant] may have a right of reimbursement... against [the absent party] is not sufficient to make [the absent party] indispensable to the litigation.").

The determination, immaterial here, of whether and how Winmar may recover money it paid to Al-Jazeera is either a matter of state law, *Pasco*, 637 F.2d at 505 & n. 21, or possibly a matter of the law of the State of Qatar. *Brinco Mining Ltd. v. Federal Ins. Co.*, 552 F. Supp. 1233, 1239 (D.D.C. 1982). In any event, "[w]hether [the absentee] and [Defendant] are 'joint tort-feasors' or in a relationship supporting an indemnity claim, the possibility of a subsequent suit based on either relationship was not an eventuality that Rule 19 was designed to avoid." *Pasco*, 637 F.2d at 505. Further, not only does Winmar's hypothetical unjust enrichment claim against Al-Jazeera not support joinder or dismissal as a matter of law, Winmar certainly has not discharged its burden of producing evidence even if it could somehow prevail on this issue. *See Brinco Mining*, 552 F. Supp. at 1239 (holding that "defendant has failed to meet his burden as the moving party to make out a claim of indispensability under Rule 19(a)" when he "failed to bring any precedent to the Court's attention indicating that Canadian law would not hold the defendant severally liable in this case.").

## H.   WINMAR'S MOTION SHOULD BE DENIED BECAUSE IT HAS NOT ESTABLISHED THAT AL-JAZEERA COULD NOT BE IMPLEADED

Here, as in another case, "[Defendant] suggests that proceeding without [the absentees] may undermine his right to contribution from them. These protests lose all force in light of the protection Rule 14 places within his grasp. Under that Rule, [Defendant] may implead the absentees." *Park v. Didden*, 695 F.2d 626, 632 (D.C. Cir. 1982).

In addressing a motion similar to Winmar's, this Court noted:

> Even if [the absentee] is a necessary party, dismissal would not be proper unless joining [the absentee] is not feasible and proceeding with the action without [the absentee] would be inequitable considering all the factors listed in Rule 19(b). <u>Defendant discusses neither the feasibility of joining [the absentee] nor the factors relevant to determining whether [the absentee] is indispensable to further proceedings</u>. Therefore, this Court has no grounds upon which it could dismiss the case for failure to join a necessary party, even if it found that [the absentee] was such a party.

*Nofziger Communications, Inc. v. Birks*, 757 F. Supp. 80, 85 (D.D.C. 1991) (emphasis added) (citing FED. R. CIV. P. 19; 2A MOORE'S FEDERAL PRACTICE, para. 12.07[2.-6] (2d ed. 1989)). Another court also recently addressed a motion to dismiss similar to Winmar's Motion, noting:

> Defendants' contention that the action should be dismissed for failure to name indispensable parties fails for two reasons. First, <u>Defendants have offered only conclusory statements, without any evidence</u> showing that the [absentees] are, in fact, indispensable as defined in Rule 19(a). Since Defendants have not shown an indispensable party under Rule 19(a), the inquiry under Rule 19(b) cannot be reached. Second, even if the [absentees] were parties indispensable under Rule 19(a), <u>Defendants have failed to even argue, much less prove, that the parties cannot be joined in the action</u>.

*Imperial v. Castruita*, 418 F. Supp. 2d 1174, 1179 (C.D. Cal. 2006) (emphasis added).[5] Accordingly, Winmar's failure to even address the possibility of a third-party claim against Al-Jazeera, precludes the relief requested in Winmar's Motion.

---

[5]    These principles have been applied consistently by the federal courts. *See Pasco*, 637 F.2d at 503 ("[T]he existence of the Rule 14 provisions demonstrates that parties ... who may be impleaded under Rule 14 are not indispensable parties within Rule 19(b). If persons subject to rights of indemnity or contribution were always indispensable parties, there would not be a need for the impleader provisions of Rule 14."); *Ranger Transp., Inc. v. Wal-Mart Stores*, 903 F.2d 1185, 1187 (8th Cir. 1990) (noting that an absent party "could easily have been impleaded by [defendant]. [Defendant] did not choose to do so. It merely raised the issue of indispensability, and then moved to dismiss the suit ... "); *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124-25 (2nd Cir. 1990) (holding that a tenant's suit against a subtenant could not properly be dismissed for failure to join the landlord as an indispensable party because the subtenant could have joined the landlord by asserting a compulsory counterclaim against it); *Boone v. General Motors Acceptance Corp.*, 682 F.2d 552, 553 (5th Cir. 1982) (holding that an absent party is not indispensable when the defendant "could protect their interests by joining the [absent party] as a third party should they care to do so").

I.   **ANY NEED TO OBTAIN EVIDENCE FROM AL-JAZEERA IS NOT A FACTOR BEARING ON WHETHER A PARTY IS NECESSARY OR INDISPENSABLE**

To the extent that Winmar suggests in paragraph seven of its Motion that Al-Jazeera must be joined due to the need for discovery and evidence because the agency "issue cannot be properly resolved unless Al-Jazeera is a party," facilitating discovery is not valid basis for joinder of parties. "Rule 19 of the Federal Rules of Civil Procedure does not list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication." *Castello Pub. Co. v. Rotelle*, 670 F.2d 1035, 1045 (D.C. Cir. 1981). This concern is further mooted, as demonstrated *supra*, because QNB is not Al-Jazeera's agent as a matter of law.

IV.   **CONCLUSION**

For the reasons stated herein, Defendant Winmar's Motion to Dismiss for Failure to Join a Necessary Party or Alternatively for an Order Mandating Joinder should, in all respects, be denied.

DATED:       August 24, 2006                    Respectfully submitted,


       /s/ Ronald S. Liebman
Ronald S. Liebman (D.C. Bar No. 239657)
Alan T. Dickey (DC Bar # 496403)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Plaintiff*
*Qatar National Bank*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| QATAR NATIONAL BANK | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 1:06CV01307 |
| WINMAR, INC. d/b/a WINMAR CONSTRUCTION | ) | **ORDER** |
| _____ | ) | |

Upon consideration of Defendant Winmar, Inc.'s Motion to Dismiss for Failure to Join a Necessary Party or Alternatively for an Order Mandating Joinder, the Opposition of Qatar National Bank, and the entire record herein, on this _____ day of _____, 2006, is is:

ORDERED that Defendant Winmar, Inc.'s Motion to Dismiss for Failure to Join a Necessary Party or Alternatively for an Order Mandating Joinder is, in all respects, denied.

_____
Judge Gladys Kessler

Copies to:

James F. Lee, Jr.
Arthur T.K. Norris
Robert A. Kearbey
Lee & McShane, PC
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C. 20036
*Counsel for Defendant, Winmar*

Ronald S. Liebman
Alan T. Dickey
Patton Boggs LLP
2550 M Street, N.W.
Washington, D.C. 20037
*Counsel for Plaintiff Qatar National Bank*