UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QATAR NATIONAL BANK )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>WINMAR, INC. d/b/a )<br>WINMAR CONSTRUCTION )<br>)<br>Defendant )<br>_____ ) | Case No.: 1:06CV01307<br><br>**PLAINTIFF QATAR NATIONAL BANK'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE THIRD PARTY COMPLAINT AGAINST AL-JAZEERA INTERNATIONAL** |

## I. SUMMARY OF ARGUMENT

In this action, Qatar National Bank ("QNB") seeks to rectify a simple clerical error resulting in an erroneous, duplicate payment it made to Winmar, Inc. ("Winmar"). QNB committed the clerical error less than nine months ago by executing a single $474,677 payment order to Winmar a second time. Winmar had swift notice of the error, but has refused to return the money to QNB despite repeated demands from QNB. Entirely separate from that single transaction, Winmar has various ongoing apparent contractual disputes with Al-Jazeera International ("Al-Jazeera"), which involve money passing back and forth between those parties on numerous occasions. Rather than return QNB's money, Winmar seeks to drag QNB's straightforward claims for reimbursement into Winmar's continuing saga of contractual disputes with Al-Jazeera. In doing so, Winmar improperly seeks to use QNB's unfortunate error as leverage against Al-Jazeera in their unrelated contractual quarrels. The Court should decline to do so for the following reasons:

1. Winmar has failed to satisfy its burden of proof to show that, if Winmar is found liable to QNB in this action, then Al-Jazeera will in turn be liable to Winmar.

2. Winmar's duty to refund the amount it received in error from QNB is independent of Winmar's transactions with Al-Jazeera under the law of restitution in this District.

3. Al-Jazeera's presence as a third-party defendant is further immaterial to this action because Winmar has failed to show that it had a liquidated debt from Al-Jazeera--a requirement of the discharge-for-value rule, which is, in any event, not applicable here.

4. Winmar's claims against Al-Jazeera are not sufficiently dependent on QNB's claims against Winmar to support joinder under Rule 14, because:

   a. QNB's success in its claim against Winmar will turn on Winmar's obligation to repay wrongfully-withheld funds under the law of restitution and mistake, not upon any conduct involving Al-Jazeera.

   b. The joinder of Al-Jazeera under Rule 14 is not supported by the mere possibility that Winmar may pursue, as one of many items of damages in its separate contract disputes with Al-Jazeera, recovery of a portion of any judgment this Court may enter in this action.

   c. Winmar's Third-Party Complaint asserts no valid basis for seeking indemnity or contribution from Al-Jazeera.

## II. FACTUAL BACKGROUND

On December 12, 2005, QNB executed a payment order from its customer, Al-Jazeera, in the amount of $474,677.00, payable to Winmar using the Fedwire system. On January 30, 2006, Al-Jazeera sent a second fax seeking confirmation of whether the December 12 payment order had been executed. QNB misconstrued the fax as a second payment order and, on the same day, through a clerical error, sent a second, duplicate payment of $474,677.00 to Winmar. After realizing the error, on February 2, 2006--three days after the erroneous transfer, QNB requested that Winmar return the money. On the same day, Winmar instructed its correspondent bank to inform QNB that Winmar would not return the erroneously-wired funds. On March 30, 2006, QNB refunded the

payment of $474,677.00 to Al-Jazeera's account. Winmar has continuously refused to return any of the $474,677.00 duplicate payment to QNB.

Although Winmar alleges that it was owed monies by Al-Jazeera, it has not alleged that it had any type of liquidated or other concrete debt from Al-Jazeera at any time material to this action. Al-Jazeera's debts, if any, to Winmar were then and are now uncertain and contested. In fact, Winmar alleges that (1) Al-Jazeera owed it in excess of $474,677 on the date of the erroneous duplicate payment; (2) "Winmar returned $119,380 of the funds at issue to Al Jazeera"; and (3) Al-Jazeera currently owes Winmar $75,000. *See* Winmar's Third-Party Complaint against Al-Jazeera International, ¶¶ 18, 22, 23. Winmar and Al-Jazeera have an ongoing dispute, regarding the terms and performance of their contractual obligations, with which QNB has no privity or other connection. *See* Winmar's Third-Party Complaint against Al-Jazeera International, ¶¶ 33-38.

## III.  ARGUMENTS AND AUTHORITIES

### A.  STANDARD

Rule 14(a) provides in pertinent part:

> When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. ... Any party may move to strike the third-party claim, or for its severance or separate trial.

FED. R. CIV. P. 14(a). "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987). "A third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978).

"In disputes regarding whether a third-party complaint is properly asserted, 'the burden [is] on the third-party plaintiff to show that if it is found to be liable to the [plaintiff],[1] the third-party defendant will in turn be liable to the third-party plaintiff.'" *Leasetec Corp. v Inhabitants of the County of Cumberland*, 896 F. Supp. 35, 40 (D.Me. 1995) (quoting *Massachusetts Laborers' Health and Welfare Fund v Varrasso*, 111 F.R.D. 62, 63 (D. Mass. 1986)).

B. **WINMAR'S RELATIONS WITH AL-JAZEERA ARE IMMATERIAL TO THE PRESENT ACTION**

1. **Winmar's Disputes with Al-Jazeera are Not Material to QNB's Claims against Winmar under the Applicable Law of Restitution**

QNB is an innocent non-party to the ongoing disputes between Winmar and Al-Jazeera. *See National Bank of Canada v Artex Indus., Inc*, 627 F. Supp. 610, 614 (S.D.N.Y. 1986) (noting that "money paid under a mistake of fact may be recovered back however negligent that party paying may have been in making the mistake…."). This case is about a simple clerical error QNB made on January 30, 2006 resulting in a mistaken $474,677 duplicate payment to Winmar. This money does not belong to Winmar, and Winmar knows that. Winmar cannot logically or credibly claim it did not realize that the second payment, which was in the exact amount of the previous payment, was not made in error. Certainly, Winmar knew an error had occurred three days after the payment, when, after receiving notice of the error, it refused to return the funds to QNB. Winmar cannot plausibly claim that it somehow acted to its detriment in reliance on the payment before discovering that the payment was made in error. Winmar has not even attempted to allege any reliance. None of the equities in this matter favor Winmar keeping QNB's money.

Winmar neither produced evidence nor made any specific allegation to establish that the alleged $119,380 payment it made to Al-Jazeera relates to QNB's clerical error rather than the

---

[1] The *Leasetec* opinion contains a typographical error where, in place of the bracketed text, it refers again to the "third-party plaintiff." The quoted *Varrasso* opinion contains the correct term "plaintiff."

4

ongoing contractual wrangling between Winmar and Al-Jazeera. Thus, this Court has no basis to find any relationship between QNB's erroneous payment to Winmar and Winmar's independent claims against Al-Jazeera. *See Leasetec*, 896 F. Supp. at 40 ("[T]he burden [is] on the third-party plaintiff to show that if it is found to be liable to the [plaintiff], the third-party defendant will in turn be liable to the third-party plaintiff.'") (quoting *Varrasso*, 111 F.R.D. at 63). Further, Winmar made the alleged $119,380 payment to Al-Jazeera without consulting QNB <u>after</u> QNB demanded a return of its $474,677. If Winmar really returned QNB's money to Al-Jazeera, it did so at its own risk, and QNB should not pay a penalty for Winmar omission of QNB from the process.

In any event, the nature or motive for Winmar's alleged $119,380 payment, which is necessarily subjective, among all of Winmar's and Al-Jazeera's transactions and disputes, should not require QNB to be brought into the middle of Winmar's disputes with Al-Jazeera. The law in this District is clear that QNB is entitled to a refund of its money without being dragged into all of the machinations driving Winmar's ongoing dispute with Al-Jazeera. *See Credit Lyonnais-New York v. Washington Strategic Consulting Group, Inc.*, 886 F. Supp. 92, 92-93 (D.D.C. 1995).

Seeking to avoid this clear rule of law, Winmar asserts that the "Court in *Credit Lyonnais* did not address the federal regulations regarding wire transfers made through Fedwire, nor through the UCC provisions incorporated thereinto, and issued its decision <u>based solely on a 'narrowly drawn issue' under principles of restitution</u>."[2] The *Credit Lyonnais* Court did base its decision on the principles of restitution. However, Federal Regulation J governing Fedwire transfers provides that "[a] receiving bank [here, QNB] that ... issues a payment order in execution of the sender's [Al-Jazeera's] order and then issues a duplicate order ... is entitled to recover from the beneficiary [Winmar] of the erroneous order the excess payment received to the extent allowed by the <u>law governing mistake and restitution</u>." 12 C.F.R. § 210 Appendix B to Subpart B § 4A-303 (emphasis

---

<sup></sup>2   *See* Winmar's Reply in Support of its Motion to Dismiss, p. 2 (emphasis added).

5

added). The Court should apply the law of restitution in this District as articulated in *Credit Lyonnais*. That law is incorporated into the Federal Regulations for Fedwire transactions occurring in the District of Columbia. *Id.*

In *Credit Lyonnais*, this Court analyzed circumstances very similar to those presented here, where the plaintiff, upon receipt of a confirmation request of a previous payment, committed a clerical error and executed a second, duplicate payment in the same amount. 886 F. Supp. at 92-93. The Court held that "the outcome of this case is controlled by settled law: Where one person receives money that in equity and good conscience belongs to another, an action will lie for 'money had and received.'" *Id.* at 93 (citing *Hillyard v. Smither & Mayton, Inc.*, 76 A.2d 166, 167 (D.C. 1950)). As in the present case:

> [The defendant]'s theory of defense is that the second payment was in fact authorized, or in any case that [the defendant] was entitled to the money because its client still owed it about $170,000 when the second wire transfer arrived. <u>The trouble with this theory is that it does not raise or depend upon a material issue of fact. The unjust enrichment issue is drawn between [the plaintiff bank] and [the defendant]. [The defendant]'s Cameroonian client is not a party, and the question whether the client owed the money or authorized its payment is not material to that narrowly drawn issue.</u>

*Id.* (emphasis added) (citing *4934, Inc. v. District of Columbia Dep't of Employment Serv.*, 605 A.2d 50, 56 (D.C. 1992)). Accordingly, this Court held that "[t]here are no genuine issues of material fact. <u>Plaintiff is entitled to judgment as a matter of law.</u>" *Id.* at 92 (emphasis added). Similarly, the unjust enrichment claim asserted in QNB's Complaint "is drawn between [QNB] and [Winmar]." *Id.* Winmar's client, Al-Jazeera, "is not a party, and the question whether the client owed the money or authorized its payment is not material to that narrowly drawn issue." *Id.*

6

2.  <u>**Winmar's Own Allegations Preclude Application of the Discharge-for-Value Defense**</u>

Even if the discharge-for-value defense applies to transfers such as the one at issue here, Winmar cannot prevail on that defense. The discharge-for-value defense applies only to liquidated-- not the amorphous, contested debts on which Winmar relies. As one court noted:

> Examples in the Restatement of Restitution describing the "discharge for value" rule describe debts that are liquidated, concrete and preexisting, not merely probable and undetermined. (E.g., REST., RESTITUTION, § 14, com. b, illus. 1 [no restitution for proceeds erroneously used to pay existing mortgage on real estate]; illus. 2 [no restitution from city for property taxes paid on property not actually owned]; illus. 3 [no restitution where bank erroneously cashes customer's check given to payee in payment for services rendered]; illus. 4 [no restitution from judgment creditor for execution of judgment of wrong person's property].) <u>No decision we are aware of has applied the discharge for value rule where the debt or lien in question was anything less than an objectively verifiable, preexisting, liquidated obligation.</u> (*See* REST., RESTITUTION (appen.) § 14 and cases collected.) <u>Indeed, allowing the rule to apply to debts or obligations any less substantial would risk destroying the certainty of the rule and allow the exception to control its application.</u>
>
> Consequently, it does not appear the "discharge for value" rule can be properly invoked in a case such as this where the alleged preexisting debt or lien is at best a probable yet undetermined interest ...

*Bank of America v. Sanati*, 11 Cal. App. 4th 1079, 1088-89 (Cal. App. 2 Dist. 1992) (emphasis added) (citing RESTATEMENT OF RESTITUTION § 14 and cases collected therein).

The debt Al-Jazeera allegedly owed to Winmar is, at best, "probable and undetermined" rather than "liquidated, concrete and preexisting." *Id.* Winmar claims that "[a]t the time of the transfer, Winmar was entitled to receive amounts due and owing under the Contract in excess of the amount of the transfer." Motion, ¶ 5. Yet, in the very next sentence, Winmar remarkably states that "Winmar returned $119,380 of the funds at issue to Al Jazeera." Motion, ¶ 6. It is not credible that Winmar would make a $119,380 payment to Al-Jazeera if Al-Jazeera owed Winmar a concrete, liquidated debt in an amount greater than the duplicate transfer. This alleged "debt" "in excess of the amount of the transfer" is precisely the type of uncertain debt to which the discharge-for-value rule does not apply. To hold otherwise would permit any recipient of an erroneous transfer to retain

7

the funds if he or she could claim any type of amorphous, unstructured obligation owing from the transmitting bank's customer.

### C. AL-JAZEERA CANNOT BE LIABLE TO WINMAR FOR ALL OR PART OF QNB'S CLAIM AGAINST WINMAR WITHIN THE MEANING OF RULE 14

#### 1. Winmar's Causes of Action Against Al-Jazeera Do Not Support Rule 14 Joinder

In an attempt to tie QNB's claims against Winmar to those of Winmar against Al-Jazeera, Winmar claims that, should it be held liable to QNB, "Al-Jazeera is liable to Winmar for contribution and indemnity." *See* Winmar's Motion, p. 5. Yet, in its proposed Third-Party Complaint, Winmar asserts neither a cause of action for indemnity nor contribution. "Indemnity generally involves the 'shifting of the entire loss from one who has paid it to another who would be unjustly enriched at the indemnitee's expense by the indemnitee's discharge of the obligation.'" *Johnson v Mercedes-Benz, USA, LLC*, 182 F. Supp.2d 58, 65 (D.D.C. 2002) (quoting *District of Columbia v Washington Hosp. Center*, 722 A.2d 332, 340 (D.C. 1998)). Winmar has not alleged any basis for shifting the entire amount of any judgment QNB receives against Winmar to Al-Jazeera. In fact, Winmar will suffer no "loss" at all. It will simply be returning QNB's money.

Further, "[j]ust because a putative third-party plaintiff's theory of recovery from the third-party defendant purports to be 'contribution,' it does not follow that Rule 14(a) must permit the claim." *Kohl's Dep't Stores, Inc. v Target Stores, Inc*, 214 F.R.D. 406, 413 (E.D.Va. 2003). Winmar's Third-Party Complaint states no basis for contribution from Al-Jazeera in the present action because it does not allege (nor could it credibly allege) that Al-Jazeera is a joint tortfeasor. *See Hudert v Alion Science & Tech. Corp.*, 429 F. Supp. 2d 99, 107 (D.D.C. 2006) ("[C]ontribution is the right of joint tort-feasors to collect from one another so that the plaintiff's losses are equitably shared by all wrongdoers."); *District of Columbia v Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C. 1998) ("An essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the

sense that their negligence concurred in causing the harm to the injured party."). Any claim for contribution by Winmar against Al-Jazeera would therefore entail Winmar's demonstration that Al-Jazeera bore responsibility as a "joint tort-feasor" who "concurred in causing the harm to [QNB]." *Id.* Because Winmar fails to allege that Al-Jazeera did anything to harm QNB, Winmar fails to assert a claim for contribution.

Thus, "while Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability." *Kim v. Fujikawa*, 871 F.2d 1427, 1434 (9th Cir. 1989). Winmar's Third-Party Complaint states no substantive right to indemnity or contribution from Al-Jazeera and, thus, does not support joinder under rule 14.

Winmar's claims against Al-Jazeera are focused on the contract between those two entities and their performance of or failure to perform the obligations contained therein. As noted *supra*, QNB's claim for restitution of the funds it erroneously transferred to Winmar is a simple, straightforward matter under the law of restitution incorporated into the applicable federal regulations. QNB should not be dragged into Winmar's independent, convoluted disputes with Al-Jazeera involving issues completely unrelated to QNB's attempt to obtain a return of the money that it erroneously sent to Winmar through a clerical error.

2.  **Winmar's Allegation that it Will Seek Some Portion of a Judgment Entered against it in this Action as Damages Against Al-Jazeera in their Ongoing Contractual Dispute Does Not Support Joinder under Rule 14**

Furthermore, the possibility that the result of QNB's action against Winmar may ultimately affect the overall damages sought between Winmar and Al-Jazeera as part of their unrelated contract disputes is not a sufficient basis to permit joinder of Al-Jazeera in this action. *See Leasetec Corp. v. Inhabitants of the County of Cumberland*, 896 F. Supp. 35, 40-41 (D.Me. 1995); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242, 248-49 (S.D.N.Y. 2004). For example, in *Leasetec*, a series of

9

contracts and assignments established that a lessor, Leasetec, purchased equipment for a computer system specified by the County in its agreements with the system provider, Computervision. 896 F. Supp. at 37. Leasetec then leased the computer equipment to the County. *Id.* The court held that the County's claims against Computervision were not proper third-party claims in the breach of contract action that Leasetec brought against the County to recover lease payments. *Id.* at 40.

The *Leasetec* court noted that, while Computervision continued to have warranty obligations running to the County, any breach of those obligations was independent of Leasetec's claims against the County, even though the County might recover from Computervision the payments it made to the lessor for faulty equipment as an element of damages. *Id.* The court clarified:

> It may be that the County seeks to include its liability on the rental contract as an element of *damages* in its contract claims against Computervision but the question of Computervision's *liability* is not tied to the outcome of the original claim by Leasetec. If Leasetec is successful in its claims against the County it will be because of the terms of and performance of the parties under the Lease Agreement, and not due to any actions of Computervision.

*Id.* at 40 (emphasis in original). Similarly, if QNB is successful in its claims against Winmar, it will be because of Winmar's obligation to repay wrongfully-withheld funds under the law of restitution and mistake, and not due to any conduct of Al-Jazeera. Joinder of Al-Jazeera is simply not proper here.

The *Leasetec* court further explained:

> In *Unilease* and the present case, the third-party claims are similar in that they both assert a claim that "you owe me because your breach of our contract caused me to breach my contract with the plaintiff." <u>In neither case, however, was the third-party plaintiff's breach actually caused by or excused as a result of the third-party defendant's actions. As stated above, the fact that the County may have an action against Computervision in which it could recover, as an element of damages, payments it made to Leasetec for the faulty equipment does not make the third-party claim dependent on the initial claim.</u> Since the Third-Party Complaint fails to comply with the requirements of Rule 14(a), it must be dismissed and the County must seek relief against Computervision in a wholly separate action.

*Id.* at 41 (emphasis added) (citing *Unilease Computer Corp. v. Major Computer Inc.*, 126 F.R.D. 490 (S.D.N.Y. 1989) (holding that the third-party claim by a computer equipment broker that leased

10

hardware against the sublessee was neither derivative of nor dependent on the outcome of the lessor's main claim, nor did it arise out of the same transaction or instrument where the agreements did not refer to each other or indicate intent to incorporate the other by reference)). Equally, Winmar's wrongful withholding of QNB's funds was neither caused nor excused as a result of Al-Jazeera's actions. Thus, under Rule 14, the fact that Winmar may have a breach of contract action against Al-Jazeera in which it could include (among many other items), as an element of damages, some portion of the judgment this Court enter granting restitution to QNB does not make Winmar's purported third-party claim dependent on QNB's initial claim.

Likewise, in *Siemens Westinghouse Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242 (S.D.N.Y. 2004), the court held that a replacement contractor's third-party tort and contract claims against the owners of a power-plant construction project, the project's original contractor, and subcontractor were in no way contingent upon the narrow question presented by the equipment supplier's main claim against the contractor addressing whether the supplier or contractor was liable up-front for liquidated damages that were paid to the project owners under the terms of their consortium agreement. *Id.* at 244-46, 248-49. The court accordingly held that the claims did not satisfy Rule 14 even though the claims could affect the ultimate apportionment of liquidated damages between the supplier and contractor, and even if the claims depended upon the adjudication of the contractor's counterclaims against the supplier. *Id.* at 248-49. The court noted:

> Whether any Third-Party Defendant committed contract breaches or torts affecting the ultimate apportionment of liquidated damages is not contingent in any way upon the narrow question of which [of the original parties] is liable for the up-front payments under the Consortium Agreement.

*Id.* at 248. Similarly, whether or not Al-Jazeera breached some duty to Winmar (among their multiple disputed transactions) that might affect the ultimate apportionment of damages assessed by this Court herein is not sufficiently contingent upon the narrow question of whether Winmar is

11

liable to return the erroneous payment it received from QNB. Joinder of Al-Jazeera under Rule 14 is therefore inappropriate.

IV. **CONCLUSION**

For the reasons stated herein, Defendant Winmar's Motion for Leave to File a Third-Party Complaint should, in all respects, be denied.

DATED:   October 13, 2006               Respectfully submitted,


                                        /s/ Alan T. Dickey
                                        Ronald S. Liebman (D.C. Bar No. 239657)
                                        Alan T. Dickey (DC Bar # 496403)
                                        PATTON BOGGS LLP
                                        2550 M Street, N.W.
                                        Washington, D.C. 20037
                                        Telephone: (202) 457-6000
                                        Facsimile: (202) 457-6315

                                        *Attorneys for Plaintiff*
                                        *Qatar National Bank*