IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| QATAR NATIONAL BANK,<br>　　　　Plaintiff, | : | |
| | : | |
| `v.` | : | Civil Action No. 1:06-cv-01307-GK |
| | : | |
| WINMAR, INC.,<br>　　　　Defendant and Third<br>　　　　Party Plaintiff. | : | |
| WINMAR, INC.,<br>　　　　Third Party Plaintiff<br>　　　　and Counterclaim<br>　　　　Defendant,<br>　v. | : | |
| AL JAZEERA INTERNATIONAL,<br>　　　　Third Party Defendant<br>　　　　and Counterclaim<br>　　　　Plaintiff. | : | |

### AL JAZEERA INTERNATIONAL'S ANSWER
### TO THE THIRD PARTY COMPLAINT, AFFIRMATIVE DEFENSES,
### AND COUNTERCLAIMS AGAINST WINMAR, INC.

Al Jazeera International ("AJI"), by and through counsel, responds to the numbered

paragraphs of the Third Party Complaint of Winmar, Inc. ("Winmar") as follows:

1.    AJI lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in paragraph 1 of the Third Party Complaint, and therefore

denies those allegations.

2.    The allegations contained in the first sentence of paragraph 2 of the Third Party Complaint are denied.  The allegations contained in the second sentence of paragraph 2 of the Third Party Complaint are legal conclusions to which no response is required.

3.    AJI admits the allegations contained in paragraph 3 of the Third Party Complaint to the extent that it has agreed, at Winmar's request, to waive formal service of process of the Third Party Complaint.  The remaining allegations contained in paragraph 3 of the Third Party Complaint are legal conclusions to which no response is required.

4.    AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 2 of their Answer to the Third Party Complaint.

5.    The allegations contained in paragraph 5 of the Third Party Complaint are legal conclusions to which no response is required.  To the extent a response is required, AJI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 5 of the Third Party Complaint, and therefore denies those allegations.

6.    The allegations contained in paragraph 6 of the Third Party Complaint are legal conclusions to which no response is required.  AJI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 6 of the Third Party Complaint, and therefore denies those allegations.

7.    The allegations contained in paragraph 7 of the Third Party Complaint are legal conclusions to which no response is required.  To the extent a response is required, AJI denies that it maintains an office in the District of Columbia.

8.    AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 7 of their Answer to the Third Party Complaint.

9.     The allegations of paragraph 9 of the Third Party Complaint are admitted to the extent that AJI and Winmar entered into a contract as of November 23, 2005, but said allegations are otherwise denied except to the extent they accurately describe the contract they purport to characterize. Answering further, AJI states that the subject contract is the best evidence of its contents.

10.     The allegations of paragraph 10 of the Third Party Complaint are denied. Answering further, AJI states that the subject contract is the best evidence of its contents.

11.     The allegations of paragraph 11 of the Third Party Complaint are denied except to the extent they accurately describe the contract they purport to characterize. Answering further, AJI states that the subject contract is the best evidence of its contents.

12.     AJI denies the allegations contained in paragraph 12 of the Third Party Complaint.

13.     AJI denies the allegations contained in paragraph 13 of the Third Party Complaint.

14.     AJI denies the allegations contained in paragraph 14 of the Third Party Complaint.

15.     AJI denies the allegations contained in paragraph 15 of the Third Party Complaint. Answering further, AJI avers that Winmar's first payment was in the amount of $645,164 and was an initial deposit.

16.     AJI admits the allegations contained in paragraph 16 of the Third Party Complaint to the extent that Winmar's next payment was in the amount of $474,677 and was received on or about December 12, 2005, but said allegations are otherwise denied. Answering further, AJI avers that the $1,119,841 Winmar had received by mid-December 2005 was considerably more than the total amount to which Winmar was entitled under the contract.

17.     AJI admits the allegations contained in paragraph 17 of the Third Party Complaint.

18.    AJI denies the allegations contained in paragraph 18 of the Third Party Complaint. Answering further, AJI avers that, as it had informed Winmar prior to the termination for convenience of the contract, as a result of the payments totaling $1,119,841 which Winmar had received by mid-December 2005, Winmar had received considerably more than the total amount to which it was entitled under the contract.

19.    The allegations of paragraph 19 of the Third Party Complaint are denied except to the extent they accurately describe the contract they purport to characterize. Answering further, AJI states that the subject contract is the best evidence of its contents.

20.    AJI denies the allegations contained in paragraph 20 of the Third Party Complaint. Answering further, as Winmar well knew before, on and after January 30, 2006, there were no "amounts undisputedly due and owing" to it by AJI because AJI had informed Winmar that as a result of the payments totaling $1,119,841 which Winmar had received by mid-December 2005, Winmar had received considerably more than the total amount to which it was entitled under the contract.

21.    The allegations of paragraph 21 of the Third Party Complaint are admitted to the extent that AJI submitted a claim to the Architect, but said allegations are otherwise denied. Answering further, AJI states that the letter to the Architect dated February 24, 2006, containing, *inter alia*, the subject claim, is the best evidence of its contents.

22.    AJI denies the allegations contained in paragraph 22 of the Third Party Complaint. Answering further, AJI avers that on February 3, 2006, AJI again informed Winmar that AJI did not owe any money to Winmar under the contract. Answering further, AJI avers, at that same time, AJI for the first time also informed Winmar of its determination, based on the information

- 4 -

then available to AJI, that Winmar had been overpaid by approximately $200,000. Answering

further, AJI avers that on February 24, 2006, by letter, AJI submitted a formal claim under the

contract to Dennis C. Janson, managing partner of the Janson Design Group, in his capacity as

Architect pursuant to Section 4.2 of the contract, titled "Architect's Administration of the

Contract". Answering further, AJI avers that in that letter AJI requested, *inter alia*, a ruling by

the Architect pursuant to the terms of the contract that Winmar had been overpaid by AJI based

on the services performed by Winmar prior to the termination of the contract for convenience on

January 11, 2006, and that AJI was entitled to a refund from Winmar in an amount AJI requested

the Architect to calculate but which exceeded $200,000, without regard to the $464,677

erroneous duplicate payment that AJI's bank, Qatar National Bank ("QNB"), had made to

Winmar on or about January 31, 2006. Answering further, AJI avers that on or about March 9,

2006, with full knowledge of all of the foregoing, Winmar, through counsel, unconditionally

tendered to AJI, through counsel, a check in the amount of $119,380 payable to AJI. Answering

further, AJI avers that said $119,380 was applied by AJI to reduce the overpayment previously

received by Winmar, thereby reducing by $119,380 the amount of the refund then due to AJI

from Winmar that AJI requested the Architect to calculate but which exceeded $200,000,

without regard to the $464,677 erroneous duplicate payment that QNB had made to Winmar on

or about January 30, 2006.

23. AJI denies the allegations contained in paragraph 23 of the Third Party Complaint.

24. AJI denies the allegations contained in paragraph 24 of the Third Party Complaint.

## Count I:  Third Party Claims

25.    AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 24 of its Answer to the Third Party Complaint.

26.    AJI denies the allegations contained in paragraph 26 of the Third Party Complaint. Answering further, AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraph 22 of its Answer to the Third Party Complaint.

27.    AJI denies the allegations contained in paragraph 27 of the Third Party Complaint. Answering further, AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraph 22 of its Answer to the Third Party Complaint.

28.    AJI denies the allegations contained in paragraph 29 of the Third Party Complaint. Answering further, AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraph 22 of its Answer to the Third Party Complaint.  Answering further, AJI avers that it brought to the attention of it bank, QNB, the fact that AJI had not authorized QNB to make any payments on its behalf to Winmar following the $474,677 payment in mid-December 2005, and that QNB had mistakenly made a duplicate payment to Winmar of $474,677 on or about January 30, 2006.  Answering further, AJI avers that QNB, admitting its mistake in having sent Winmar a duplicate payment of $474,677 on or about January 30, 2006, tried to recover that payment from Winmar.  When those efforts failed, QNB credited back to the account of AJI the full amount of the duplicate payment of $474,677 QNB had made to Winmar in error and erroneously debited from AJI's account.

29.   The allegations contained in paragraph 29, including all subparts, of the Third Party Complaint are legal conclusions to which no response is required.  To the extent a response is required, AJI denies those allegations.

30.   The allegations contained in paragraph 30 of the Third Party Complaint are legal conclusions to which no response is required.  To the extent a response is required, AJI denies those allegations.

31.   The allegations contained in paragraph 31 of the Third Party Complaint are legal conclusions to which no response is required.  To the extent a response is required, AJI denies those allegations.

32.   The allegations contained in paragraph 32 of the Third Party Complaint are legal conclusions to which no response is required.  To the extent a response is required, AJI denies those allegations.

## Count II:  Breach of Contract

33.   AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 32 of its Answer to the Third Party Complaint.

34.   AJI denies the allegations contained in paragraph 34 of the Third Party Complaint.

35.   AJI denies the allegations contained in paragraph 35 of the Third Party Complaint.

36.   AJI denies the allegations contained in paragraph 36 of the Third Party Complaint.

37.   AJI denies the allegations contained in paragraph 37 of the Third Party Complaint.

38.   AJI denies the allegations contained in paragraph 38 of the Third Party Complaint.

### Count III:  Unjust Enrichment

39.    AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 38 of its Answer to the Third Party Complaint.

40.    AJI denies the allegations contained in paragraph 40 of the Third Party Complaint.

41.    AJI denies the allegations contained in paragraph 41 of the Third Party Complaint. Answering further, AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraph 22 of its Answer to the Third Party Complaint.

42.    AJI denies the allegations contained in paragraph 42 of the Third Party Complaint.

43.    AJI admits the allegations contained in paragraph 43 of the Third Party Complaint.

44.    AJI denies the allegations contained in paragraph 44 of the Third Party Complaint.

45.    AJI denies the allegations contained in paragraph 45 of the Third Party Complaint.

### Count IV:  Money Had and Received/Money Received by Mistake

46.    AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 45 of its Answer to the Third Party Complaint.

47.    AJI denies the allegations contained in paragraph 47 of the Third Party Complaint.

48.    AJI denies the allegations contained in paragraph 48 of the Third Party Complaint.

### Relief Requested

AJI restates in their entirety and incorporates herein by reference the foregoing responses to paragraphs 1 through 48 of its Answer to the Third Party Complaint.

### GENERAL DENIAL

Each and every allegation of the Third Party Complaint not specifically admitted above is hereby denied.

### FIRST AFFIRMATIVE DEFENSE

Winmar's Third Party Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Winmar's claims against AJI are barred under the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE

Winmar's claims against AJI are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Winmar's claims against AJI are barred because AJI has performed all of its obligations under its contract with Winmar.

### FIFTH AFFIRMATIVE DEFENSE

Winmar's claims against AJI are barred because Winmar has failed to perform all of its obligations under its contract with AJI.

### SIXTH AFFIRMATIVE DEFENSE

Winmar has suffered no damages as a result of any action or omission by AJI and there is no basis to award any damages to Winmar.

### SEVENTH AFFIRMATIVE DEFENSE

Winmar cannot recover on its claims against AJI because Winmar has already received from AJI more money than the total amount to which it was entitled under the contract.

### EIGHTH AFFIRMATIVE DEFENSE

AJI reserves the right to plead additional defenses as they become known or available.

## **WINMAR'S DEMAND FOR A JURY TRIAL**

1.    All of the claims asserted by Winmar against AJI in the Third Party Complaint

arise out of or are connected to the construction project located at 1627 K Street, N.W.,

Washington, D.C. 2006, or to the contract between Winmar and AJI.

2.    The contract between Winmar and AJI included AIA Document A201-1997,

titled "General Conditions of the Contract for Construction" (the "General Conditions").

3.    The AIA standard form of the General Conditions was modified or revised in

various respects by AJI and Winmar prior to execution.

4.    In its standard form, i.e., prior to the parties' revisions, Section 4.6.2 of the

General Conditions provided:

> Claims not resolved by mediation shall be decided by
> arbitration which, unless the parties agree otherwise, shall be in
> accordance with the Construction Arbitration Rules of the
> American Arbitration Association currently in effect. The demand
> for arbitration shall be filed in writing with the other party to the
> Contract and with the American Arbitration Association, and a
> copy shall be filed with the Architect.

5.    However, prior to execution, the parties agreed to delete from the contract all

references to binding arbitration before the American Arbitration Association and to replace

them with litigation in this Court or in the Superior Court of the District of Columbia as the

means by which the parties would resolve any claims arising out of or connected in any way to

the project or their contract.

6.    In so doing, Section 4.6.2 of the contract was replaced with the following

provision:

> Both parties specifically waive their right to a jury trial to resolve any and all claims, including but not limited to those sounding in contract, tort or statute, against the other arising out of or connected in any way to the Project or this Agreement because the parties hereto believe that the complex commercial and professional aspects of their dealings with one another make a jury determination neither desirable nor appropriate.

7.     Accordingly, Winmar has waived any right to a jury trial it otherwise might have

had with respect to its claims against AJI, and Winmar's demand for a jury trial must be stricken.

## COUNTERCLAIMS

Al Jazeera International, by and through counsel, hereby asserts the following

Counterclaims against Winmar, Inc.:

### Parties

1.     Counterclaim Plaintiff Al Jazeera International ("AJI") currently is a division of

Al Jazeera Satellite Network, which is an entity organized under the laws of the Government of

the State of Qatar with its principal place of business located in Doha, Qatar.

2.     Upon information and belief, Counterclaim Defendant Winmar, Inc. ("Winmar")

is a corporation organized under the laws of the District of Columbia with its principal place of

business located in the District of Columbia.

### Jurisdiction and Venue

3.     These Counterclaims are compulsory counterclaims pursuant to Rule 13(a), F. R.

Civ. Proc., and jurisdiction over said Counterclaims is based on 28 U.S.C. § 1367(a) and Rule

14(a), F. R. Civ. Proc.  Jurisdiction and venue in this district are also proper under Section 4.6.1

of the General Conditions of the contract.

- 11 -

**Facts Common to all Counts**

4.    AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 3 of its Counterclaims.

5.    On or about November 23, 2005, AJI and Winmar entered into a contract for construction work to be performed at facilities leased by AJI located at 1627 K Street, N.W., Washington, D.C. (the "contract").

6.    At the time the contract was entered into, AJI made a payment to Winmar in the amount of $645,164 as an initial deposit pursuant to Section 5.1.2.1 of the contract.

7.    However, one month earlier, on October 20, 2005, in an effort to expedite performance of the work and in anticipation of the parties formally entering into a contract, Winmar certified Application and Certificate for Payment No. 2 in which it claimed that it was due $474,677 under the contract.

8.    On the same day, October 20, 2005, Winmar certified Application and Certificate for Payment No. 2b in which it claimed that it was due an additional $115,872 under the contract.

9.    On November 21, 2005, Winmar certified Application and Certificate for Payment No. 3 in which it claimed that it was due an additional $775,913 under the contract.

10.    On December 7, 2005, Winmar certified Application and Certificate for Payment No. 1 in which it claimed that it was due an additional $471,678 under the contract.

11.    As of December 7, 2005, Winmar had certified it was due a total of $1,363,463 for Application and Certificates for Payment Nos. 1, 2b and 3. This $1,363,463 was over and

above the initial deposit of $645,164 made by AJI when the contract was entered into and the

$474,677 that was the amount of Application and Certificate for Payment No. 2.

12.     Each Application and Certificate for Payment submitted by Winmar included the

following sworn statement executed by an officer of Winmar:

> The undersigned Contractor certifies that to the best of the
> Contractor's knowledge, information and belief, the Work covered
> by this Application for Payment has been paid by the Contractor
> for Work for which previous Certificates for Payment were issued
> and payments received from the Owner, and that current payment
> shown herein is now due.

13.     Believing that the $474,677 certified by Winmar in Application and Certificate

for Payment No. 2 as due under the contract in fact was due, on or about December 12, 2005,

AJI, through its bank, QNB, wired Winmar said $474,677 in payment of Application and

Certificate for Payment No. 2.

14.     On January 4, 2006, Winmar informed AJI that Winmar was suspending

performance of its contract as of that day, January 4, for alleged non-payment in the amount of

$1,363,463 for Application and Certificates for Payment Nos. 1, 2b and 3.

15.     On January 11, 2006, AJI terminated its contract with Winmar pursuant to the

Termination for Convenience provision contained in Section 14.4 of the General Conditions of

the contract. The Termination for Convenience was confirmed in writing on the following day,

January 12, 2006.

16.     Two of the reasons AJI decided to exercise its right to terminate its contract with

Winmar for convenience were (a) Winmar's refusal to provide AJI with documentation to

support the $1,363,463 Winmar certified was then due from AJI, and (b) Winmar's refusal to

- 13 -

provide AJI with documentation to address AJI's concern that as a result of the $1,119,841 Winmar had already been paid by mid-December 2005, Winmar had been overpaid by a considerable sum.

17.     However, Winmar's position was that AJI owed it $653,449. In this regard, on January 18, 2006, Winmar submitted a revised Application and Certificate for Payment No. 3-Revision 1 in which it certified that it was due $653,449 as its final payment under the contract. No supporting documentation of any kind was submitted by Winmar with this Application and Certificate for Payment, which previously had been in the amount of $775,913.

18.     Accordingly, in an effort to resolve the issue of the amount Winmar had been overpaid or underpaid, by letter dated January 19, 2006, AJI, through counsel, sent Winmar, through counsel, a letter that, in addition to a detailed listing of the documentation AJI was requesting, stated the following:

> The amount of that payment [sought by Winmar] constitutes a
> Claim within the meaning of Section 4.3.1 of the General
> Conditions, which provides that the "responsibility to substantiate
> Claims shall rest with the party making the Claim." It seems to me
> to be inefficient and counterproductive for Winmar to continue to
> refuse to provide documentation substantiating its Claim on the
> ground that under its view of the contract, that documentation is
> not required. This is especially so when that position has
> effectively been rejected by the Architect in his letters to Winmar
> dated January 5 and 6, 2006, rescinding certain certifications and
> requesting supporting documentation including, but not limited to,
> a reconciliation of all payments and costs to date. Moreover,
> Section 4.4.2 (1) of the General Conditions expressly gives the
> Architect the authority "to request additional supporting data from
> the claimant" as part of his review of a Claim.

19.     On January 25, 2006, Winmar, through counsel, submitted still another revised Application and Certificate for Payment No. 3-Revision 2 in which it certified that it was due

- 14 -

$355,297 under the contract rather than the $653,449 claimed in Application and Certificate for Payment No. 3-Revision 1 submitted just one week earlier. Unlike Application and Certificate for Payment No. 3-Revision 1, Winmar did provide some documentation with Application and Certificate for Payment No. 3-Revision 2.

20. As of January 25, 2006, Winmar's total claim for amounts due under the contract from AJI was in the amount of $355,297.

21. On or about January 30, 2006, AJI's bank, QNB, misconstrued AJI's earlier request to confirm that the December 12, 2005, payment to Winmar in the amount of $474,677 had been made as a request by AJI to pay Winmar an additional $474,677. As a result, on January 30, 2006, QNB mistakenly made a duplicate payment to Winmar in the amount of $474,677.

22. On February 3, 2006, AJI informed Winmar that AJI owed nothing to Winmar and, to the contrary, AJI had overpaid Winmar by approximately $200,000. No mention of the $474,677 erroneous duplicate payment was made at that time, and it was not considered by AJI in calculating, based on the information then available, that Winmar had been overpaid by approximately $200,000.

23. As a result, when by letter dated February 24, 2006, a copy of which was sent by email to Winmar and by email and regular mail to counsel for Winmar, AJI, through counsel, submitted in accordance with the provisions of the contract a formal Claim to the Architect with respect to, *inter alia*, the refund due to AJI from Winmar as a result of Winmar having been overpaid, AJI stated in relevant part:

> On January 25, 2006, counsel for Winmar provided
> undersigned counsel with still another Application and Certificate

for Payment, this one dated January 23, 2006, in the amount of
$355,297, which did include some supporting documentation.
Counsel for Winmar's letter indicates that a complete copy was
provided to you, as the Architect. That $355,297 was the product
of the following calculation:

| Total Completed and Stored to Date per Winmar | $1,475,135 |
| Less Previous Payments to Winmar per Winmar | $1,119,838 |
| Total Claimed Due to Winmar | $355,297 |

However, on January 31, 2006, through the mistake of
AJI's bank, Winmar was paid an additional $477,677 [correct
figure should have been $474,677], which Winmar has refused to
return in whole or in part. This refusal continues even in the face
of the fact that based on Winmar's own claim of $355,297, it has
now received $122,380 [correct figure should have been $119,380]
more than even it believes it is entitled to. In any event, as a result,
the amount which Winmar has actually been paid is not $1,119,838
but rather $1,597,515 [correct figure should have been
$1,594,515].

24.     Counsel for Winmar subsequently informed undersigned counsel by letter that

"My clients were unaware until your [February 24, 2006] letter was received that any wire had

been accomplished on January 31, 2006."

25.     Accordingly, based on counsel for Winmar's representation, before Winmar knew

that the $474,677 erroneous duplicate payment on January 30, 2006, had been received, Winmar

knew that payment had been made by mistake and that AJI considered Winmar's retention of

any portion of it wrongful not only because AJI never intended to pay Winmar any additional

funds, but also because Winmar had already been overpaid.

26.     In its February 24, 2006, letter, which was sent to Dennis C. Janson, managing

partner of the Janson Design Group, in his capacity as Architect pursuant to Section 4.2 of the

- 16 -

General Conditions of the contract, titled "Architect's Administration of the Contract," AJI

specifically invoked Section 4.2.11, which provided in relevant part:

> The Architect will interpret and decide matters concerning
> performance under and requirements of, the Contract Documents
> on written request of either of the Owner [AJI] or Contractor
> [Winmar]. The Architect's response to such requests shall be
> made in writing within any time limits agreed upon or otherwise
> with reasonable promptness.

27.    In its letter, AJI made several requests of the Architect and one Claim as that term

is defined in Section 4.3.1 of the General Conditions. The first request of the Architect was as

follows:

> "By your letter to Chris Condon of Winmar dated
> January 5, 2005, you rescinded certification of Applications
> and Certificates for Payment Nos. 1, 2b, and 3, dated
> December 7, 2005, October 31, 2005, and November 30,
> 2005, respectively, totaling $1,363,463 (the "Rescission
> Letter"). The Rescission Letter stated that you were
> rescinding those certifications due to "a number of
> discrepancies" in those Applications and Certificates for
> Payment, "as well as the lack of appropriate supporting
> documentation." AJI understands that your determination
> that Winmar's supporting documentation was inadequate
> was based on your interpretation of the Contract, as the
> Architect, and your understanding of your obligations, and
> Winmar's, under the Contract. Please confirm that this
> understanding is correct."

28.    By letter dated March 20, 2006, the Architect made the following ruling as to that

request:

> "As the Architect of record for this project, I did
> rescind certification of Applications and Certificates for
> Payment numbers 1, 2b and 3, dated December 7, 2005,
> October 31, 2005, and November 30, 2005, respectively

based on my understanding and my interpretation of the
Contract and the fact that Winmar did not provide
appropriate supporting documentation and which invoices
contained a number of discrepancies. The Application and
Certification for Payment was initially approved in error
and based on Section 9.5.1 of the General Conditions my
rescission was appropriate."

29.    The second request AJI made of the Architect in AJI's February 24, 2006, letter

was as follows:

"If AJI is correct in understanding that you
rescinded the certification of Applications and Certificates
for Payment Nos. 1, 2b, and 3 based on your interpretation
of the obligations imposed on Winmar under the Contract,
AJI then requests that you, as the Architect, rescind the
portions of Application and Certificate for Payment No. 2
that also lack the supporting documentation required by the
Contract. Specifically, AJI requests that you rescind
certification of Application and Certificate for Payment No.
2's requested payment of $157,000 for Change Order No. 1
and requested payment of $225,000 for Change Order No.
2."

30.    In his letter dated March 20, 2006, the Architect made the following ruling as to

that request:

Attached under separate heading is my letter
rescinding the certification of Application and Certification
of Payment No. 2 containing Change Order No. 1 for [*sic*]
and Change Order No. 2 for lack of appropriate
documentation as interpreted under the Contract.

31.    The third request AJI made of the Architect in AJI's February 24, 2006, letter was

as follows:

> "AJI requests that you, as the Architect, issue a
> determination, pursuant to Section 4.2.11 of the General
> Conditions, that Winmar has not submitted any Claims (as
> defined by Section 4.3.1) and that there are no Claims by
> Winmar currently pending before you as the Architect."

32.    In his letter dated March 20, 2006, the Architect made the following ruling as to

AJI's third request:

> "Pursuant to Section 4.2.11 of the General
> Conditions, Winmar has not submitted any Claims as
> defined by section 4.3.1 and that there are no claims by
> Winmar currently pending before me as the Architect of
> record."

33.    In its February 24, 2006, letter, AJI also made the following Claim against

Winmar:

> "Pursuant to Sections 4.3 and 4.4 of the General
> Conditions, AJI requests that you determine, in your
> capacity as the Architect, that Winmar has been overpaid
> by AJI based on the services performed by Winmar prior to
> termination of the Contract and that AJI therefore is
> entitled to a refund from Winmar in the amount of
> $855,976, less that portion of the overhead and fee to which
> Winmar is determined to be entitled as a result of AJI's
> termination of the Contract."

34.    In his letter dated March 20, 2006, the Architect made the following ruling as to

AJI's Claim against Winmar:

> "Pursuant to Section 4.3 and 4.4 of the General
> Conditions and based on the services performed by Winmar
> prior to Al Jazeera International's termination of the
> Contract, Winmar has been over paid by the amount of
> $855,976 and Al Jazeera International is due a refund in
> that amount less that portion of the overhead and fee for

> which Winmar may be entitled as a result of Al Jazeera
> International's termination of the Contract.

35.    Pursuant to Section 4.4.5 of the General Conditions, "[t]he approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and litigation.

36.    AJI and Winmar have waived their right to mediation as to Claims under the contract.

37.    The refund to AJI of $855,976 (less that portion of the overhead and fee to which Winmar is determined to be entitled pursuant to the Termination for Convenience provision of the contract) that the Architect ruled needed to be made by Winmar must be reduced to reflect the fact that said figure (a) included the $474,677 duplicate payment erroneously made to Winmar by QNB, for which QNB has reimbursed AJI; (b) included a $3,000 error made by AJI in setting out the amount of the duplicate payment as $477,677 in AJI's February 24, 2006, letter to the Architect rather than $474,677; and (c) did not include the March 9, 2006, payment Winmar made to AJI in the amount of $119,380, which could not have been included in AJI's February 24, 2006, letter to the Architect and which AJI has credited to the refund due to it from Winmar.

38.    Accordingly, the net amount of the refund Winmar owes AJI, based on the information currently available to AJI, is $261,919 (less that portion of the overhead and fee to which Winmar is determined to be entitled pursuant to the Termination for Convenience provision of the contract).

## Count I:  Breach of Contract

39.     AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 38 of its Counterclaims.

40.     AJI has duly performed all of its obligations to Winmar under the contract.

41.     The Architect has determined in accordance with the terms of the contract that AJI has overpaid Winmar and that Winmar owes a refund to AJI.

42.     The amount of said refund, based on the information currently available to AJI, is no less than $261,919 (less that portion of the overhead and fee to which Winmar is determined to be entitled pursuant to the Termination for Convenience provision of the contract).

43.     Winmar's failure to pay that refund to AJI constitutes a breach of the contract.

44.     By reason of Winmar's breach, AJI is entitled to said refund plus such other and further damages resulting therefrom in an amount to be proven at trial.

## Count II:  Mistake

45.     AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 44 of its Counterclaims.

46.     On October 20, 2005, Winmar certified Application and Certificate for Payment No. 2 in which it claimed that it was due $474,677 under the contract, which amount was in addition to the initial payment AJI had made to Winmar in the amount of $645,164 as a deposit when the contract was entered into.

47.     Believing that the $474,677 certified by Winmar as due in Application and Certificate for Payment No. 2 in fact was due under the contract, on or about December 12, 2005, AJI paid Winmar said $474,677 via wire through AJI's bank, QNB.

48.     However, in fact Winmar was not entitled to the amounts claimed by it or paid to it by AJI.

49.     Accordingly, AJI is entitled to a refund of all amounts it paid Winmar by mistake over and above the total amount Winmar earned under the contract.

50.     The amount of said refund, based on the information currently available to AJI, is no less than $261,919 (less that portion of the overhead and fee to which Winmar is determined to be entitled pursuant to the Termination for Convenience provision of the contract).

51.     By reason of the mistaken payment induced by Winmar, AJI is entitled to recover any amount paid by mistake plus such other and further damages resulting therefrom in an amount to be proven at trial.

**Count III:  Unjust Enrichment**

52.     AJI hereby incorporates by reference and reasserts as if fully set forth herein paragraphs 1 through 51 of its Counterclaims.

53.     Winmar has been unjustly enriched by receiving and retaining amounts paid to it by AJI to which Winmar is not entitled.

54.     AJI is entitled to a refund of all amounts it paid Winmar to which Winmar was not entitled under the contract.

55.    The amount of said refund, based on the information currently available to AJI, is no less than $261,919 (less that portion of the overhead and fee to which Winmar is determined to be entitled pursuant to the Termination for Convenience provision of the contract), which, as a matter of equity, Winmar must repay to AJI.

56.    By reason of Winmar's unjust enrichment at the expense of AJI, AJI is entitled to recover any amount by which Winmar has been unjustly enriched plus such other and further damages resulting therefrom in an amount to be proven at trial.

WHEREFORE, having fully answered Winmar's Third Party Complaint and asserted Counterclaims, AJI respectfully requests and prays that:

1.    Judgment be entered against Winmar on each of its claims against AJI and the Third Party Complaint dismissed, with prejudice;

2.    Judgment be entered for AJI and against Winmar on Counts I, II and III of its Counterclaims, in an amount to be determined;

3.    Compensatory damages be awarded to AJI on Counts I, II and III of its Counterclaims, in an amount to be determined;

4.    Pre-judgment and post judgment interest, costs, expenses, and reasonable attorneys' fees be awarded to AJI; and

5.    Such further and additional relief be awarded to AJI as this Court deems just and

proper.

AL JAZEERA INTERNATIONAL

Dated: January 31, 2007

By:    _____
Leslie H. Wiesenfelder
(D.C. Bar No. 173500)

DOW LOHNES PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, DC 20036
(202) 776-2000

Attorneys for Third-Party Defendant
and Counterclaim Plaintiff Al Jazeera
International