IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| QATAR NATIONAL BANK, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:06-cv-1307 (GK/JMF) |
| | : | |
| WINMAR, INC., | : | |
| Defendant and Third | : | |
| Party Plaintiff. | : | |
| | : | |
| WINMAR, INC., | : | |
| Third Party Plaintiff | : | |
| and Counterclaim | : | |
| Defendant, | : | |
| v. | : | **JOINT MEET AND CONFER STATEMENT** |
| | : | |
| AL JAZEERA INTERNATIONAL, | : | |
| Third Party Defendant | : | |
| and Counterclaim | : | |
| Plaintiff. | : | |

Pursuant to FED. R. CIV. P. 16 and 26(f), LCvR 16.3(c), and the Court's order dated October 31, 2007, the parties (collectively "the Parties"), Plaintiff, Qatar National Bank ("QNB"); Defendant and Third Party Plaintiff Winmar, Inc. d/b/a Winmar Construction ("Winmar"); and Third Party Defendant and Counterclaim Plaintiff Al Jazeera International ("AJI"), hereby respectfully submit this report addressing the topics listed in LCvR 16.3(c). Included, as required by the Court, is a brief statement of the case and the statutory basis for all causes of action and defenses.

I.    **PLAINTIFF'S STATEMENT OF THE CASE AND STATUTORY BASIS FOR CAUSES OF ACTION**

In this action, QNB seeks recovery of an erroneous, duplicate payment it made to Winmar. On December 12, 2005, QNB executed a payment order from its customer, Al-Jazeera International ("Al-Jazeera"), in the amount of $474,677.00, payable to Winmar using the Fedwire system. On January 30, 2006, Al-Jazeera sent a second fax seeking confirmation of whether the December 12

payment order had been executed.  QNB misconstrued the fax as a second payment order and, on the same day, sent a second, duplicate payment of $474,677.00 to Winmar.  After realizing the error, beginning on February 2, 2006, QNB made repeated requests for Winmar to return the money.  On March 20, 2006, QNB refunded the payment of $474,677.00 to Al-Jazeera's account.  Winmar has refused to return any of the $474,677.00 duplicate payment to QNB.

Pursuant to Federal Reserve Regulation J and U.C.C. Article 4A Section 4A-303, incorporated therein, governing Funds Transfers through the Fedwire system, "[a] receiving bank that … issues a payment order in execution of the sender's order and then issues a duplicate order, … is entitled to recover from the beneficiary of the erroneous order the excess payment received to the extent allowed by the law governing mistake and restitution."  12 C.F.R. § 210.25 (enacted pursuant to 12 U.S.C. § 248) and Appendix B to Subpart B thereto.  Thus, Plaintiff believes that it is entitled under federal law to payment of the amount of the erroneous duplicate order as allowed by the state law governing mistake and restitution, specifically the doctrines of unjust enrichment and money had and received.  Plaintiff further believes that the law of restitution and mistake in this District, as set forth in *Credit Lyonnais-New York v. Washington Strategic Consulting Group, Inc.*, 886 F. Supp. 92 (D.D.C. 1995), makes the relationships and transactions between Winmar and Al-Jazeera immaterial to the determination of this action.  *See also* U.C.C. section 4A-212 on "Funds Transfers" (incorporated into applicable Regulation J) ("A receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer …").

QNB believes that, to the extent that the discharge-for-value defense applies to QNB's claims against Winmar, that defense turns on a limited set of facts and cannot prevail because, *inter alia*, (1) Winmar did not have a liquidated debt owing from AJI; (2) Winmar learned of the fact that the January 30, 2006 duplicate payment was made by the same communication by which Winmar learned that the transfer was in error; (3) the amount of the duplicative payment provided further,

constructive notice of the error; and thus (4) Winmar received notice of the mistake before the Winmar credited the AJI's account.

## II.    DEFENDANT'S STATEMENT OF THE CASE AND STATUTORY BASIS FOR DEFENSES

This action arises out of a construction dispute that arose between Al-Jazeera and Winmar during the build-out of office space leased by Al-Jazeera for its Washington, DC news bureau. During the course of that dispute, Al-Jazeera and/or its bank, QNB, sent a wire transfer through the Federal Reserve Fedwire system from Al-Jazeera's account at QNB to Winmar's account at Citibank in Washington, DC.  QNB claims that this wire transfer was in error and has requested return of the money from Winmar.

At the time of the transfer, Winmar was owed money from Al-Jazeera.  Winmar relies on two defenses to the present action.  The first defense is that of Discharge for Value.  This statutory defense is contained in UCC § 4A-303(a), enumerated in the comments thereto, and incorporated into the Federal Regulations governing wire transfers through Fedwire by 12 C.F.R. § 210.25(b)(1). This section of the Federal Regulations is given the force and effect of federal law in 12 C.F.R. §§ 210.25(a).  Winmar contends that it was owed a debt by Al-Jazeera, that it applied the funds to the debt owed, and that at the time it applied the funds to Al-Jazeera's debt, it had no knowledge that the wire transfer was mistaken.

Winmar's second defense is that Al-Jazeera ratified the payment order, and therefore under principles of agency, QNB is not able to recover on the authorized transaction of its principal for purposes of this transaction.  Agency principles are incorporated into the federal regulations governing transfers through Fedwire by UCC § 4A-202 ("A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.").  Al-Jazeera ratified the transaction through its

inclusion of the transfer in the claim it made to the Architect on the underlying construction project, and Al-Jazeera's ratification made the transfer an authorized payment order under UCC § 4A-202, and they are bound by it under the law of agency. Winmar argues that QNB has no standing to sue or be sued on the authorized transfer made from Al-Jazeera's account to Winmar's account.

With respect to the underlying facts of this matter, Winmar and Al-Jazeera entered into their construction contract in November of 2005 under which Winmar was to provide construction services for Al-Jazeera's build-out of office space at 1627 K Street NW, Washington, DC. Pursuant to the terms of the parties' Agreement, Winmar commenced their work and proceeded in accordance with their obligations under the same. Thereafter, Al-Jazeera made their first payment in the amount of $645,161, pursuant to the contract terms. On or around December 12, 2005, Al-Jazeera wired a progress payment to Winmar in the amount of $474,677. Winmar continued to perform their duties under the parties' contract. On or around January 11, 2006, Al-Jazeera terminated the contract for convenience. At the time of the termination, Winmar was attempting to fulfill its obligations under the contract and was owed for work performed in an amount in excess of $474, 677. As a result of Al-Jazeera's failure to pay Winmar in accordance with the terms of the parties' contract, Winmar initiated their breach of contract claim against Al-Jazeera.

At the time of the allegedly erroneous bank transfer on or around January 30, 2006, Al-Jazeera owed Winmar in excess of $474,677. Despite Winmar's repeated requests for full payment under the parties' contract, Al-Jazeera has failed to provide such payment. Al-Jazeera claims that they are entitled to further documentation from Winmar prior to releasing such payment. Al-Jazeera further alleges, in their Counterclaim, that Winmar is the party who in fact owes Al-Jazeera money for overpayment, claiming that the second wire transfer of January 30, 2006 not only was in error but constitutes a significant overpayment to Winmar.

It is Al-Jazeera that has accepted duplicate recoveries, however, both in the amount of $474,677 from QNB on March 20, 2006, but also from Winmar in the amount of $119,380—following a claim made to Winmar disputing amounts owed under the contract, earlier on March 9, 2006. It is therefore Al-Jazeera who is liable to Winmar for any recovery from Winmar by QNB in this matter.

## III.    THIRD PARTY DEFENDANT'S AND COUNTERCLAIM PLAINTIFF'S STATEMENT OF THE CASE AND STATUTORY BASIS FOR DEFENSES AND CAUSES OF ACTION

This action arises out of AJI's termination for convenience of a construction contract with Winmar entered into as of November 23, 2005, for work to be performed at facilities leased by AJI located at 1627 K Street, N.W., Washington, D.C. (the "contract"). The base amount of the contract was $2,351,615. Within approximately one month thereafter, AJI concluded that as a result of Winmar having already received a total of $1,119,841 by mid-December 2005, Winmar had been overpaid by a considerable sum. Winmar contended that it had not been overpaid and that, to the contrary, AJI owed an additional $1,363,463 to Winmar. On January 4, 2006, Winmar informed AJI that Winmar was suspending performance of its contract as of that day, January 4, for alleged non-payment of said $1,363,463. When AJI requested documentation to support Winmar's entitlement to said $1,363,463, Winmar claimed that it was not required to provide that documentation under the contract and refused to provide it. AJI then exercised its right under Section 14.4 of the General Conditions of the contract and terminated the contract for convenience on January 11, 2006.

Between January 11, 2006 and January 25, 2006, Winmar reduced the amount it claimed it was due under the contract from $1,363,463, to $653,449, and finally to $355,297. Winmar, however, not only knew that AJI's position was that Winmar was not due anything from AJI, but also that Winmar had been overpaid by AJI.

5

On or about January 30, 2006, AJI's bank, QNB, misconstrued AJI's earlier request to confirm that the December 12, 2005, payment to Winmar in the amount of $474,677 had been made as a request by AJI to pay Winmar an additional $474,677. As a result, on January 30, 2006, QNB mistakenly made a duplicate payment to Winmar in the amount of $474,677 by wire into Winmar's bank account. At the time of that erroneous duplicate payment to Winmar by QNB, Winmar was not owed any money by AJI but instead had been overpaid by AJI and owed AJI a considerable sum, which overpayment does not include the $474,677 erroneous duplicate payment Winmar received from QNB. AJI has been unable to quantify the exact amount Winmar has been overpaid by AJI because Winmar has refused to provide AJI with documentation supporting its claims, much less supporting the $1,119,838 it received from AJI.

By letter dated March 9, 2006, with full knowledge of all of the foregoing, Winmar, through its counsel, unconditionally tendered to AJI a check in the amount of $119,380 payable to AJI, stating it arrived at that amount because that is the difference between the $474,677 erroneous duplicate payment made to Winmar by QNB and the $355,297 which Winmar claims it is due under the contract. In that March 9, 2006, letter, referring to the $474,677 erroneous duplicate payment made to Winmar by QNB, counsel for Winmar stated: "My clients were unaware until your [counsel for AJI's February 24, 2006] letter was received [by counsel for Winmar] that any wire had been accomplished on January 31, 2006."

AJI's principal defense to Winmar's claims is that Winmar is not owed any money under the contract and was not owed any money under the contract at the time of the erroneous duplicate payment made to Winmar by QNB in the amount of $474,677. In addition, the $474,677 erroneous duplicate payment made to Winmar by QNB is a dispute between Winmar and QNB.

AJI's Counterclaim against Winmar is to recover the total amount that AJI overpaid Winmar under the contract, net of the $119,380 payment made by Winmar to AJI on March 9, 2006, which

AJI has duly credited to the refund due to AJI by Winmar under the contract. AJI relies on the terms of the contract as well as the theories of payment by mistake and unjust enrichment in support of its Counterclaims.

As ordered by the Court, the Parties held a Settlement Conference with Magistrate Judge John M. Facciola on January 2, 2008, but no settlement was reached. Counsel do not believe that any further settlement discussions held prior to the completion of discovery would be productive, although the Court's ruling on any dispositive motions may alter the situation. The Magistrate Judge has held the matter open and the Parties will renew their settlement efforts when they believe doing so would be fruitful.

## IV.    PARTIES' JOINT STATEMENT ADDRESSING ALL MATTERS LISTED IN LCvR 16.3(c)

The Parties have conferred and reached agreement on many of the matters listed in LCvR 16.3(c), as stated below. On the issues where the Parties were unable to agree, each party has set forth its own position separately below.

> **(1)    Whether the case is likely to be disposed of by dispositive motion; and whether, if a dispositive motion has already been filed, the parties should recommend to the Court that discovery or other matters should await a decision on the motion.**

QNB believes that the case may be resolved by a dispositive motion. QNB believes that there are grounds for the Court to grant a motion for summary judgment in favor of QNB on its claims against Winmar.

Winmar believes that there are grounds to grant a motion for summary judgment in its favor.

AJI believes that genuine issues of material fact preclude summary judgment on its Counterclaims against Winmar or on any of Winmar's claims against AJI.

The Parties agree that discovery should commence immediately.

    **(2)**    **The date by which any other parties shall be joined or the pleadings amended, and whether some or all the factual and legal issues can be agreed upon or narrowed.**

The Parties do not believe that any additional parties need to be joined.  The Parties agree that the date for any pleadings to be amended should be May 1, 2008.  The Parties agree that it is likely that some factual and legal issues can be agreed upon or narrowed.  The Parties will work cooperatively toward entering into stipulations on those matters where agreement can be reached.

    **(3)**    **Whether the case should be assigned to a magistrate judge for all purposes, including trial.**

The Parties agree that the case should not be assigned to a magistrate judge.

    **(4)**    **Whether there is a realistic possibility of settling the case.**

Not at this time.  As noted above, the Parties held a Settlement Conference with Magistrate Judge John M. Facciola on January 2, 2008, but no settlement was reached.  The Parties do not believe that any further settlement discussions held prior to the completion of discovery would be productive, although the Court's ruling on any dispositive motions may alter the situation.  The Magistrate Judge has held the matter open and the Parties will renew their settlement efforts when they believe doing so would be fruitful.

    **(5)**    **Whether the case could benefit from the Court's alternative dispute resolution (ADR) procedures (or some other form of ADR); what related steps should be taken to facilitate such ADR; and whether counsel have discussed ADR and their response to this provision with their clients.**

In light of the results of the Settlement Conference, the Parties do not believe that this case could benefit from any form of alternate dispute resolution at this point.

    **(6)**    **Whether the case can be resolved by summary judgment or motion to dismiss; dates for filing dispositive motions and/or cross-motions, oppositions, and replies; and proposed dates for a decision on the motions.**

QNB believes that the case can be resolved by a motion for judgment on the pleadings or a motion for summary judgment.  Winmar believes that the existence of fact issues make this

possibility remote. AJI believes that none of the claims asserted by Winmar against AJI or the Counterclaims asserted by AJI against Winmar can be resolved by motion.

The Parties all agree that Track Three (Complex) in Appendix I to the Court's Order dated August 17, 2006, should apply to the case except for certain discovery and motion deadlines applicable to QNB's claims against Winmar. The Parties agree that the deadline for motions and cross-motions for summary judgment relating to QNB's claims against Winmar should be April 10, 2008. The Parties agree that the deadline for all other motions and cross-motions for summary judgment should be October 8, 2008.

The Parties agree that the respondent party should have 20 calendar days to file an opposition to such a motion, and the movant shall have an additional 10 calendar days to file a reply in support of the original motion. The Parties' proposed Order is attached hereto as Exhibit A.

**(7)    Whether the parties should stipulate to dispense with the initial disclosures required by Rule 26(a)(1), F.R.Civ.P., and if not, what if any changes should be made in the scope, form or timing of those disclosures.**

The Parties agree that initial disclosures should be made on or before February 11, 2008.

**(8)    The anticipated extent of discovery, how long discovery should take, what limits should be placed on discovery; whether a protective order is appropriate; and a date for the completion of all discovery, including answers to interrogatories, document production, requests for admissions, and depositions.**

QNB believes that only limited discovery is necessary to resolve its claims against Winmar because the discharge for value defense either (1) is inapplicable; or (2) can be resolved by applying the law to a narrow set of indisputable facts and because QNB is not AJI's agent as a matter of law.

Winmar disagrees and believes that it needs to conduct discovery with respect to QNB's claims against it covering such topics as the relationship between AJI and QNB, the circumstances surrounding the wire transfer at issue, the investigation conducted by QNB into the wire transfer, and AJI's actions following the wire transfer.

QNB and Winmar have agreed that the deadlines for discovery set forth in the proposed Order attached hereto as Exhibit A are sufficient to address foreseeable issues relating to QNB's claims against Winmar and Winmar's defenses thereto.

With respect to Winmar's claims against AJI and AJI's Counterclaims against Winmar, Winmar and AJI agree that discovery is necessary.

To the extent that documents contain non-public financial information or other private or confidential information, the Parties agree that a protective order limiting the use of such disclosed information to the prosecution or defense of the case is warranted.

AJI contends that the nature of the claims which Winmar has asserted against AJI and the Counterclaims which AJI has asserted against Winmar require that all document production by the Parties be completed before any depositions are taken with respect to AJI's Counterclaims or Winmar's claims against AJI.

The Parties agree that the following deadlines are appropriate for discovery relating to QNB's claims against Winmar and Winmar's defenses thereto:

| | |
|---|---|
| Exchange Witness Lists: | March 10, 2008. |
| Deadline for Document Discovery Requests To A Party: | March 24, 2008. |
| Deadline for All Other Discovery Requests: | April 14, 2008. |
| All Discovery Closed: | May 16, 2008. |

The Parties further agree that the following deadlines are appropriate for discovery relating to claims between and among Winmar and AJI and defenses by those parties thereto:

| | |
|---|---|
| Exchange Witness Lists: | April 7, 2008. |
| Deadline for Document Discovery Requests To A Party: | April 17, 2008. |
| Deadline for All Other Discovery Requests: | June 2, 2008. |

All Discovery Closed:                         September 8, 2008

The Parties agree that a maximum of 25 interrogatories and 25 requests for admission should be allowed by each party to any other party. The Parties also agree that a maximum of seven depositions may be conducted by each party.

**(9)     Whether the requirement of exchange of expert witness reports and information pursuant to Rule 26(a)(2), F.R.Civ.P., should be modified, and whether and when depositions of experts should occur.**

The Parties agree that they do not anticipate the need for any expert testimony, and therefore propose that all matters relating to discovery of experts be suspended until such time as any party determines that expert testimony may be desirable.

**(10)    In class actions, appropriate procedures for dealing with Rule 23 proceedings, including the need for discovery and the timing thereof, dates for filing a Rule 23 motion, and opposition and reply, and for oral argument and/or an evidentiary hearing on the motion and a proposed date for decision.**

Not applicable.

**(11)    Whether the trial and/or discovery should be bifurcated or managed in phases, and a specific proposal for such bifurcation.**

The Parties agree that no reason presently exists to bifurcate trial and/or discovery.

**(12)    The date for the pretrial conference (understanding that a trial will take place 30 to 60 days thereafter).**

The Parties agree that the pretrial conference should be set for 60 days after the close of discovery.

**(13)    Whether the Court should set a firm trial date at the first scheduling conference or should provide that a trial date will be set at the pretrial conference from 30 to 60 days after that conference.**

The Parties agree that a trial date need not be set until the pretrial conference.

**(14)    Such other matters that the parties believe may be appropriate for inclusion in a scheduling order.**

The Parties do not believe that any additional matters beyond those addressed herein need to be included in the Scheduling Order.

DATED:        February 5, 2008                    Respectfully submitted,


                                                  _____/s/ Alan T. Dickey_____
                                                  Alan T. Dickey (DC Bar # 496403)
                                                  PATTON BOGGS LLP
                                                  2550 M Street, N.W.
                                                  Washington, D.C. 20037
                                                  Telephone:  (202) 457-6000
                                                  Facsimile: (202) 457-6315

                                                  *Attorneys for Plaintiff*
                                                  *Qatar National Bank*


                                                  _____/s/ James F. Lee, Jr._____
                                                  James F. Lee, Jr., (DC Bar No. 247718)
                                                  Arthur T. K. Norris, (DC Bar No. 438907)
                                                  1211 Connecticut Avenue, N.W.
                                                  Suite 425
                                                  Washington, D.C.  20036
                                                  (202) 530-8100

                                                  *Attorneys for Defendant*
                                                  *Winmar Construction*



                                                  _____/s/ Leslie H. Wiesenfelder____
                                                  Leslie H. Wiesenfelder (D.C. Bar No. 173500)
                                                  DOW LOHNES PLLC
                                                  1200 New Hampshire Ave., N.W.
                                                  Suite 800
                                                  Washington, DC 20036
                                                  (202) 776-2726

                                                  *Attorneys for Third-Party Defendant*
                                                  *and Counterclaim Plaintiff Al Jazeera International*