**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| QATAR NATIONAL BANK, | : | |
| Plaintiff, | : | Civil Action No. 1:06-cv-1307(GK) |
| v. | : | |
| WINMAR, INC., | : | |
| Defendant and Third | : | |
| Party Plaintiff. | : | |
| _____ | : | |
| WINMAR, INC., | : | |
| Third Party Plaintiff | : | |
| and Counterclaim | : | |
| Defendant, | : | |
| v. | : | |
| ALJAZEERA INIERNATIONAL, | : | |
| Third Party Defendant | : | |
| and Counterclaim | : | |
| Plaintiff. | : | |
| _____ | : | |

**QATAR NATIONAL BANK'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

**INDEX OF EXHIBITS**

Exh. 1:        Winmar's Third-Party Complaint against Al-Jazeera International

Exh. 2:        Declaration of Alan T. Dickey

Exh. 3:        June 12, 2008 Stipulation by Winmar and QNB

Exh. 4:        Affidavit of Majid Burhan Mahmoud.

Exh. 5:        Winmar's Responses to QNB's First Set Of Requests for Admissions, Interrogatories, and Requests for Production of Documents to Winmar

Exh. 6:        QNB's First Set Of Requests for Admissions, Interrogatories, and Requests for Production of Documents to Winmar

## STATEMENT OF MATERIAL FACTS AS TO
## WHICH THERE IS NO GENUINE DISPUTE

Plaintiff, Qatar National Bank ("QNB") by and through its undersigned counsel, hereby respectfully submits this Statement of Material Facts as to Which There is No Genuine Dispute in support of its Motion for Summary Judgment on Counts I and II of its Complaint and states:

1.      On November 23,2005, Winmar entered into a contract with AJI for work on office space at 1627 K Street NW, Washington, D.C. ("the Contract").  Exh. 1, Winmar's Third-Party Complaint ("Winmar's 3PC") ¶ 9.

2.      Under the Contract and a subsequent agreement, Winmar and AJI agreed that AJI would wire payments under the Contract to an account at Citibank Federal Savings Bank ("Citibank") in Washington, D.C.  Winmar's, 3PC ¶¶ 11-13.

3.      On October 27, 2005,  AJI made a payment to Winmar in the amount of $645,164 as an initial deposit under the Contract.  Winmar's, 3PC ¶ 15; WIN001-02[1].

4.      On October 20, 2005, Winmar and the architect on the Project, Janson Design Group ("the Architect"), certified in an Application and Certificate for Payment No.2 that Winmar was due $474,677, in addition to the $645,164 initial deposit, under the Contract.  WIN003-04.

5.      Between October 20 and December 7, 2005, Winmar submitted three more Applications and Certificates for Payment, stating that AJI owed Winmar an additional total of $1,363,463 (Applications Nos. 1, 2b and 3 in the amounts of $115,872, $775,913, and $471,678 respectively) under the Contract over and above the deposit of $645,164 paid by AJI and the $474,677 that was

---

[1]      The documents attached as Exhibit A to Mr. Dickey's Declaration (attached hereto as Exh. 2) were produced by Winmar to QNB in discovery in this case.   Winmar has stipulated as to the authenticity of those documents. *See* Exh. 3, ¶ 1.  For convenience, we have added the Bates label designation "WIN___" to the bottom of each page of these document. Uses of the term "WIN___" herein are references to the documents produced by Winmar attached to Mr. Dickey's Declaration.

the amount of Application and Certificate for Payment No. 2. WIN005-10. These three Applications were certified for payment by the Architect on December 7, 2005. *Id.*

6.      On December 8, 2005, AJI faxed a payment order to QNB requesting QNB to wire $474,677 from AJI's account at QNB to Winmar's account at CitiBank. Exh. 4, Mahmoud Aff.[2] ¶ 3 & Exh. A. On December 12, 2005, QNB executed the payment order in the amount of $474,677. Mahmoud Aff. ¶ & Exh. B. QNB wired the funds through the FedWire system to its correspondent bank, JPMorgan Chase Bank. *Id.* JPMorgan Chase then routed the payment to Winmar's bank, CitiBank. *Id.*; Winmar's 3PC ¶ 16 (on "December 12, 2005, AI-Jazeera wired $474,677 to Winmar as a progress payment pursuant to the Contract.").

7.      On December 22, 2005, Winmar's Vice President, Christopher Condon, sent a letter to AJI and its counsel reaffirming Winmar's claim that AJI owed Winmar an additional total of $1,363,463 under the Contract at that time. WIN011.

8.      On January 4, 2006, Winmar informed AJI that Winmar was suspending performance of the Contract as of that day for alleged non-payment in the amount of $1,363,463 for Application and Certificates for Payment Nos. 1, 2b and 3. On January 5 and 6, 2006, Winmar received notice in two letters from the Architect that Application and Certificate for Payment Nos. 1, 2b, and 3 for the collective amount of $1,363,463 "have been certified in error … [d]ue to a number of discrepancies" in them "as well as a lack of supporting documentation." WIN012-14. The Architect notified Winmar that it was rescinding the Applications and Certificates for Payment and requesting documentation to support Winmar's claim that it was due $1,363,463 from AJI. *Id.*

9.      On January 11, 2006, AJI terminated the Contract for convenience. Winmar's, 3PC ¶ 17. On January 12, 2006, AJI provided Winmar with written notice of that termination. WIN015-16.

---

[2]      The Affidavit of Majid Burhan Mahmoud, attached hereto as Exh. 4, is referred herein as "Mahmoud Aff."

10.     On January 18, 2006, Winmar submitted a revised Application and Certificate for Payment

No. 3-Revision 1, in which it certified that it was due $653,449 as its final payment under the

contract.  WIN 017-19.

11.     On January 19, 2006, the Architect notified Winmar that it was rejecting Winmar's

Application and Certificate for Payment No. 3-Revision 1 because it was not clear as to what work it

covered and it again included no supporting documentation.  WIN020.

12.     On January 19, 2006, AJI's counsel notified Winmar's counsel by letter that AJI believed that

Winmar was not entitled to further payment until it provided additional documentation.  WIN021-

23.

13.     On January 23, 2006, Winmar submitted Application and Certificate for Payment No. 3-

Revision 2, in which Winmar certified that it was due $355,297 under the Contract, rather than the

$653,449 claimed in Revision 1 of the same Application submitted one week earlier.  WIN024-25.

The January 23, 2006 Revision 2 of Application No. 3, signed by Winmar's President, Edwin

Villegas, states that: (1) the "TOTAL COMPLETED & STORED TO DATE" and the TOTAL

EARNED LESS RETAINAGE" under the Contract was $1,475,135; the total of payments received

from AJI was $1,119,838; and the "CURRENT PAYMENT DUE" was $355,297. *Id.*

14.     The January 23, 2006 Application and Certificate for Payment No. 3-Revision 2 was the last

such Application for payment Winmar made under the Contract before Winmar received notice of

the January 31, 2006 duplicate payment of $474,677 made by QNB.

15.     On January 30, 2006, AJI again faxed the December 12, 2005 payment order to QNB, but

this time it included a handwritten note stating that AJI had not "received any … transfer

confirmation for this ... Can you please send the Confirmation please."  Mahmoud Aff. ¶ 5 & Exh.

C.

16.    QNB misinterpreted that confirmation request to be a second payment order.  Mahmoud

Aff. ¶ 6 & Exh. D.  As a result of this misinterpretation, on January 30, 2006, QNB duplicated the

December 12, 2005 payment of $474,677.00 to Winmar's account at Citibank in error.  *Id.*  The

funds were wired into Winmar's account on January 31, 2006.  *Id.*;  Exh. 6, Resp. to Req. for Adm.

#4 ("On or about January 31, 2006, a wire transfer of $474,677.00 was credited to a bank account of

Winmar's at Citibank Federal Savings Bank.").

17.    After learning of the error, on February 2, 2006, QNB wired instructions to JPMorgan

Chase Bank as follows:

> URGENT……URGENT …
> THE ABOVE PAYMENT HAS BEEN WRONGLY DUPLICATED FROM
> OUR SIDE WITH REF 6202790001932 DATED 12.12.2005 WITH THE SAME
> AMOUNT AND SAME BENEFICIARY DETAILS
> KINDLY TREAT THE PAYMENT ORDER … DATED 30.01.2006 AS NULL
> AND VOID AND REFUND THE AMOUNT TO OUR ACCOUNT WITH
> YOU UNDER URGENT SWIFT ADVISE TO US .
> SORRY FOR THE INCONVENIENCE CAUSED

Mahmoud Aff. ¶ 7 & Exh. D.  On the same day, JPMorgan Chase notified QNB that the payment

had already been effected in accordance with the January 31 instructions and that JPMorgan Chase

was "presently contacting Citibank Federal Savings Bank for refund."  *Id.*

18.    On February 3, 2006, Winmar received notice from AJI's counsel that AJI was asserting that

it owed nothing to Winmar, and to the contrary, AJI had overpaid Winmar by approximately

$200,000.  Exh. 2 ¶ 3 & Exh. B attached thereto.

19.    On February 3, 2006, Winmar's President informed a subcontractor that:

> Winmar has received a letter from AJI terminating our construction contract by
> convenience.  Winmar has accepted their request and is assisting in the transition.
> Winmar in turn has submitted a final requisition for payment and payment has not
> been received to date. …  We have been advised that AJI is denying our requisition
> for payment.  As such, we have no choice but to file a lien to protect our interests
> and intend to do so shortly.

WIN026-27.

4

20.    On February 8, 2006, JPMorgan Chase wired QNB the following message:

> WE HAVE ATTEMPTED TO OBTAIN REFUND FROM CITIBANK
> FEDERAL SAVINGS BANK AND THEY HAVE TODAY ADVISED THE
> FOLLOWING QTE. ..CLIENT REFUSE TO RETURN FUNDS…UNQTE.
> WE KINDLY SUGGEST THAT BENE BE CONTACTS DIRECTLY BY
> REMITTER TO RESOLVE AND CLOSE OUR FILE

Mahmoud Aff. ¶ 8 & Exh. D.

21.    QNB interpreted the February 8, 2006 wire from Winmar's bank, Citibank, as a conclusive

rejection by Winmar of QNB's request for a refund of the $474,677 duplicative payment.  Mahmoud

Aff. ¶ 8.  QNB received no further response from Winmar to its February 2, 2006 wire request for

refund of the duplicate payment.  *Id.*

22.    On February 24, 2006, AJI, through counsel, submitted a formal claim to the Architect

stating that Winmar had been overpaid with respect to, *inter alia*, the $474,677 duplicative payment.

Exh. 5, Resp. to Req. for Adm. #1; Exh. 6 (Exh A thereto).

23.    On March 9, 2006, counsel for Winmar responded to AJI by letter by stating that "My

clients were unaware until your [February 24, 2006] letter was received that any wire had been

accomplished on January 31, 2006."  Exh. 5, Resp. to Req. for Adm. #2; Exh. 6 (Exh B thereto).

Winmar's March 9, 2006 letter states: "The excess over the amount last requisitioned by Winmar is

reflected in the enclosed check for $119,380."  *Id.*  "Winmar returned to Al-Jazeera $119,380 on

March 9, 2006, following a claim made to the Architect disputing the amounts owed."   Winmar's

3PC ¶ 27.

24.    On March 28, 2006, counsel for Winmar responded to the Architect by letter by stating that:

> Mr. Wiesenfelder's February 24, 2006 letter was the first notice Winmar received that
> AJI had wired money into Winmar's account.  Prior to February 24, 2006, Winmar
> received no request from AJI to return the wired funds.  We have verified that a total
> of $474,677 was wired into Winmar's account on January 31, 2006 …

Exh. 5, Resp. to Req. for Adm. #3; Exh. 6 (Exh C thereto).

25.    Winmar has admitted the following:

Mr. Wiesenfelder's [February 24, 2006] letter was the first notice that Winmar received from AJI or its representatives regarding the specific transfer of $474,677.00 that is at issue in the above captioned matter. Winmar had become aware, through Citibank, in the days preceding Mr. Wiesenfelder's letter, that QNB was seeking reimbursement from Winmar for the payment of $474,677.00, made on or around January 31, 2006. At that time, Winmar attempted to confirm the information provided to them by Citibank and the initial source of the payment. It was during this period that Winmar received Mr. Wiesenfelder's letter.

Exh. 5, Resp. to Req. for Adm. #5.

[I]n the days preceding Mr. Wiesenfelder's February 24, 2006 letter, Winmar was made aware by Citibank of QNB's apparent request to return the funds deposited on or around January 31, 2006.

Exh. 5, Resp. to Inter. #2.

[T]he communication by Citibank Federal Savings Bank to Winmar (referenced in Winmar's Response to QNB's Request for Admission No. 5), by which "Winmar had become aware, through Citibank, in the days preceding Mr. Wiesenfelder's [February 24, 2006] letter, that QNB was seeking reimbursement from Winmar for the payment of $474,677.00, made on or around January 31, 2006," was the first notice that Winmar received that the payment of $474,677.00 had been made on or around January 31, 2006 into Winmar's Citibank account

Exh. 3, ¶ 2 (Stipulation).

26.     No person from AJI ever authorized QNB to make the December 30, 2006 payment of $474,677 to Winmar. Mahmoud Aff. ¶ 9. The January 31, 2006 payment was made solely based on an erroneous interpretation of AJI's January 30, 2006 faxed request for confirmation that the previous, December 12, 2005, payment in the same amount had been executed. *Id.*

27.     On March 12, 2006, Anas Al-Merstani, the Head of Legal Affairs for Al Jazeera Satellite Network, sent a letter to QNB, stating that the duplicative payment was QNB's fault and threatening legal action against QNB "[i]f the funds are not returned without delay." *Id.*, Exh. E.

28.     On March 20, 2006, after receiving AJI's demands for a refund, including those contained in the March 12, 2006 letter, QNB reimbursed AJI for the amount of the January 31, 2006 duplicate payment of $474,677 made to Winmar by QNB. *Id.* at ¶ 11, Exh. G.

29.    On April 12, 2006, QNB again contacted Winmar seeking a refund of the January 31, 2006

duplicate payment of $474,677 made to Winmar by QNB. *Id.* at ¶ 10, Exh. F.  QNB received no

response from Winmar. *Id.*

30.    QNB has never received from Winmar, AJI, or any other person or entity, any refund of, or

other compensation for, the in $474,677.00 funds paid by QNB to Winmar on January 31, 2006. *Id.*

at ¶ 12.


DATED:    June 16, 2008                    Respectfully submitted,



                                    _____/s/ Alan T. Dickey_____
                                    Alan T. Dickey (DC Bar # 496403)
                                    PATTON BOGGS LLP
                                    2550 M Street, N.W.
                                    Washington, D.C. 20037
                                    Telephone:  (202) 457-6000
                                    Facsimile: (202) 457-6315

                                    *Attorneys for Plaintiff*
                                    *Qatar National Bank*


7