IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **QATAR NATIONAL BANK** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | 1-06CV01307 |
| : | |
| **WINMAR, INC.d/b/a** : | |
| **WINMAR CONSTRUCTION** : | |
| : | |
| **Defendant** : | |

## WINMAR, INC.'S OPPOSITION TO QATAR NATIONAL BANK'S MOTION FOR SUMMARY JUDGMENT

Defendant/Third Party Plaintiff/Counterclaim Defendant Winmar, Inc., by and through its undersigned counsel, respectfully submits this Opposition to Plaintiff Qatar National Bank's Motion for Summary Judgment on Counts I and II of its Complaint, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and in support thereof states as follows:

**I.    INTRODUCTION**

This matter truly arises out of a contractual dispute between Winmar Inc. ("Winmar") and Third Party Defendant/Counterclaim Plaintiff Al Jazeera International ("AJI"). By nature of their allegedly erroneous "duplicate payment" on behalf of AJI and the fact that they were first to file a Complaint in this action, Qatar National Bank ("QNB") finds itself caught in the middle of Winmar and AJI's problem. As a result of their filing, and this Court's granting of Winmar's Motion for Leave to File a Third Party Complaint against AJI, all necessary parties are before the Court for adjudication of this matter. AJI disputes that it owes Winmar any further money for work on the project, in fact they claim that Winmar has been overpaid. Because there remains to be a resolution of the dispute between Winmar and AJI on the core issue of whether any money

is owed by AJI to Winmar, QNB cannot avail itself of summary judgment. A dispute of material fact as to an affirmative defense does exist between Winmar and QNB based on whether AJI owes money to Winmar. Discovery is ongoing as to that issue. Therefore, summary judgment on behalf of QNB at this time would be improper.

In its Motion for Summary Judgment, Qatar National Bank ("QNB") appears to be making what amounts to argument on behalf of AJI. This action arises out of a contract between Winmar and AJI under which Winmar was to provide certain construction services in conjunction with the project for build-out of office space at 1627 K Street, NW, Washington, DC (the "Project"). See Winmar, Inc.'s Statement of Material Facts as to Which There is no Genuine Dispute (hereinafter "WSMF"), ¶ 1. Winmar and AJI entered into their contract on or around November 23, 2005. *Id.* Pursuant to the terms of Winmar and AJI's contract, each agreed to a monthly draw schedule, entitled "Monthly Estimated Draw", which set forth the schedule of payments under the contract. WSMF ¶ 2. AJI agreed to disburse each such "draw" through an escrow agent until such time as the Architect for the Project approved the applicable certificate for payment. WSMF ¶ 3. Upon presentation of the executed certification, the escrow agent was to release the funds to Winmar. *Id.* As AJI was unable to find a suitable escrow agent for their purposes, Winmar and AJI agreed that Winmar would establish a deposit account with Citibank Federal Savings Bank ("Citibank") in Washington, DC where AJI would have the payment wired (the "project account"). WSMF ¶4.

Winmar commenced work in accordance with the contract and AJI made an initial payment of $645,161. WSMF ¶ 5. On or around December 8, 2005, AJI made a second payment, via the approved deposit method, in the amount of $474,677. WSMF ¶ 6. As of December 8th, however, Winmar had submitted three further payment applications, specifically

Application and Certification for Payment numbers 2b, 3, and 1, in the amounts of $115,872, $755,913, and $471,678 respectively, the latter being for change orders for the project. WSMF ¶ 7. These payment applications were in addition to the initial deposit amount of $645,161 and payment application no. 2 in the amount of $474,677. WSMF ¶ 8. Therefore, as of December 8, 2005, Winmar believed that they had completed enough work on the project to warrant payment from AJI in the total amount of $2,463,301. WSMF ¶ 9. <u>The Architect furthermore certified all such payments in accordance with the project Contract Documents</u>. WSMF ¶ 10. Winmar therefore had adequate reason to believe that they were entitled to the entire payment.

Proceeding under that rightful assumption that, as of December 22, 2005, Winmar was still owed $1,363,463, Winmar Vice-President, Christopher Condon wrote a letter to AJI stating as such. WSMF ¶ 11. Mr. Condon's letter also stated that if that amount was not paid in a timely manner, then Winmar would take the necessary action under the contract to either suspend or terminate the work. *Id.* Having not received adequate payment, on January 4, 2006, Winmar suspended their performance of the Work for AJI's failure to make payments in accordance with the contract. WSMF ¶ 12. It was at this point on January 5 and 6, that AJI then provided their first notice to Winmar that they believed the previously certified payments totaling $1,363,463 were in error. WSMF ¶ 13.

On or around January 11, 2006, AJI terminated their contract with Winmar for convenience. WSMF ¶ 14. In their attempt to collect monies that they believed they were owed by AJI, Winmar then submitted two further revised applications for payment, in the amounts of $653,449 and $355,297 on January 18 and 23 respectively. WSMF ¶ 15. The Architect failed to certify the former for payment, indicating the incorrect requisition amount in their rejection, and stated that AJI would not make any further payment until Winmar provided documentation to

substantiate such claimed amounts. WSMF ¶ 16. The Architect failed to address the second in a timely manner. *See Winmar Affidavit*, as attached to WSMF.

On January 31, 2006, QNB had $474,677 wired into Winmar's Citibank account. WSMF ¶ 17. Sometime thereafter, Winmar received verbal communication from an individual claiming to represent Citibank who informed them that the $474,677 payment was made in error. WSMF ¶ 18. Winmar did not receive any written confirmation from either QNB or AJI until Mr. Wiesenfelder's February 24, 2006 letter. *Id.*

Winmar, believing that they were due at least $355,297, in good faith reimbursed AJI in the amount of $119,380 from the $474,677. WSMF ¶ 20. To the best of Winmar's knowledge, AJI has retained that amount since and has both failed to return it to Winmar and failed to reimburse QNB in that amount. WSMF ¶ 21.

As of March 20, 2008, Winmar calculated that AJI still owes at least $643,646 comprising all contract amounts, plus termination costs and interest for work on the project. *See SMF* ¶ 22. Winmar therefore retained the alleged "duplicate payment" in good faith, in partial discharge of AJI's obligations under the parties' contract.

II.   **STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a party is entitled to summary judgment only if it demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). When faced with a motion for summary judgment, Rule 56(e) requires the non-moving party to "go beyond the pleadings" and show the existence of a genuine issue for trial by way of affidavits, deposition testimony or answers to interrogatories. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In making this determination, the evidence of the non-movant is to be believed and all justifiable inferences are

4

to be drawn in his or her favor. *Id.; see also, Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Both as a matter of law and because there is clearly a dispute of material fact in the underlying dispute between Winmar and AJI, summary judgment on behalf of QNB is improper at this time.

### III.   ARGUMENT

The main dispute in the above-captioned action centers around the lack of payment from AJI to Winmar as it relates to the project. A dispute of material fact between Winmar and QNB does exist in that Winmar has alleged an affirmative defense to being owed the money that QNB wired into Winmar's account. In fact, Winmar believes they are owed far in excess of that amount. WSMF ¶ 22. AJI maintains their position that Winmar has been overpaid. *See AJI Answers to Winmar Interrogatories*, attached as Exhibit 5 to WSMF. Therefore an issue of material fact as to Winmar's affirmative defense exists and summary judgment on behalf of QNB is not proper.

**A.   Summary judgment on behalf of QNB would be improper at this time.**

A summary judgment decision in favor of QNB would be partially determinative of the claims between Winmar and AJI. In granting Winmar's Motion for Leave to File a Third Party Complaint against AJI, this Court determined that AJI was a necessary party to this action. Adjudication of the claims between Winmar and AJI are necessary for complete relief to be accorded among the parties. Winmar maintains an affirmative defense to QNB's allegations, which rest on the actions of AJI arising out of the contractual relationship between Winmar and AJI. The allegations in the third-party complaint share a common nexus of fact and where "there is a close factual and logical nexus between the pendent claims added under Rule 18(a) and the original claim…pendent jurisdiction supports these claims." *United States v. Twin Falls*, 806 F.2d 862, 867-

5

868 (9th Cir. 1986) (See also *Schwab v. Erie Lackawanna Railroad*, 438 F.2d 62 (3d Cir. 1971); *Noland Co. v. Graver Tank & Manufacturing Co.*, 301 F.2d 43, 49-51 (4th Cir. 1962)).

As stated above, the actual dispute in this matter centers around the payment, or lack thereof, from AJI to Winmar for work performed on the project. To that extent, it is actually QNB's claim which is derivative of the underlying factual dispute. More specifically, if this Court determines that Winmar wrongfully retained the monies paid by QNB, then the Court has thus made a determination that Winmar is not entitled to payment from AJI in any amount, or in an amount less than the $474,677. That factual determination is not before the Court, however, and such issues related to that dispute still subject to further discovery between Winmar and AJI. The close of discovery between the two parties is currently set for September 8, 2008.

In *Credit Lyonnais-New York v. Washington Strategic Consulting Grp.*, this Court determined that the issue of unjust enrichment, under circumstances similar to the case at bar, was solely between the named parties in the litigation. 886 F.Supp. 92, 93 (D.D.C. 1995). The Court also noted, however, that the alleged debtor party, Washington Strategic's Cameroonian client, had not been made a party to that litigation by the Defendant. *Id.* Therefore, the question of whether the client owed any money to Washington Strategic was not truly before the Court and the unjust enrichment issue had to be drawn between the named parties only. *Id.* In the instant case, however, <u>this Court has already determined that AJI is a proper party to the litigation</u>. A determination as to Winmar's liability, if any, to QNB, can only be determined by, and therefore is derivative of, the issues pertinent to the matter between Winmar and AJI. As such, any determination of any liability on the part of Winmar to QNB prior to adjudication of the claims between Winmar and AJI is premature. Any such determination would result in

unfair prejudice to either Winmar or AJI. Accordingly, summary judgment on behalf of QNB would not be proper at this time.

**B.    Winmar is entitled to retain the monies paid by QNB under the law of Mistake and Unjust enrichment.**

The alleged duplicate payment from QNB, on behalf of AJI, to Winmar is rightly retained by Winmar. Pursuant to 12 C.F.R. § 210 Appendix B to Subpart B-§ 4A-303,

> A receiving bank that ... issues a payment order in execution of the sender's order and then issues a duplicate order, is entitled to payment of the amount of the sender's order under § 28:4A-402(c) if that subsection is otherwise satisfied. The bank is entitled to recover from the beneficiary of the erroneous order the excess payment received to the extent allowed by the law governing mistake and restitution. 12 C.F.R. § 210 Appendix B to Subpart B-§ 4A-303(a) (2008).

The section is derived verbatim from the Uniform Commercial Code provision of the same section, which has been adopted in the District of Columbia. Appendix A to Subpart B further states that the official comments to the UCC, while not incorporated into Subpart B or the Appendix A, "may be useful in interpreting Article 4A" 12 C.F.R. § 210 Appendix A to Subpart B-§ 210.25(b)(1).

> The official comment to § 4A-303 of the UCC states
>
> [T]he law of restitution might allow Beneficiary to keep all or part of the [duplicate payment]....[If] Beneficiary received the [duplicate payment] in good faith in discharge of the debt, [Beneficiary] may be allowed to keep it. In this case Originator's Bank has paid an obligation of Originator and under the law of restitution...Originator's Bank would be subrogated to Beneficiary's rights against Originator on the obligation paid by Originator's Bank. U.C.C. § 4A-303, comment 2 (as incorporated into comment 3).

In the instant case, Winmar reasonably believed, based upon the certified payment applications leading up to the alleged duplicate payment, that AJI owed them well in excess of the $474,677 amount. In fact, as of the filing of their Answers to AJI's Interrogatories, Winmar has stated that

7

they are owed $643,646 above and beyond the $355,297 amount that they retained from the January 31, 2006 "duplicate payment." AJI disputes the same.

Furthermore, in addressing the unjust enrichment issue, courts in DC will allow a creditor party to retain monies received by mistake. In *Chase Manhattan Bank v. Burden*, the District of Columbia Court of Appeals permitted an individual with an equitable claim to monies received by mistake to retain the same. 489 A.2d 494, 497 (D.C. 1985). In *Burden*, the Defendant was a limited partner in a partnership who received an erroneous disbursement of funds from the general partner. *Id*. The Court determined that Burden, while having no legal claim to the disbursed funds, was nonetheless entitled to retain them based upon his contribution of capital to the partnership and the decision of the general partner to make a disbursement, thus allowing Burden to maintain an equitable claim to anticipated disbursements. *Id*. Burden's claim to partnership funds was satisfied when he received the disbursement in question. *Id*. The Court concluded that it would be improper to order restitution to Chase Manhattan when the result would be for Burden to suffer for someone else's mistake, "especially when that someone else is a sophisticated financial institution like [QNB]." *Id*.

Much like in *Burden*, Winmar claims that it maintains an equitable claim to monies from AJI for work on the project. Winmar requested payment from AJI totaling $2,463,301, all of which had been certified for payment by the project Architect. Of that amount, as of the date of termination, AJI had yet to pay $1,363,463. Pursuant to the terms of the parties' contract, payments upon certification of Winmar's Applications for payment were to occur no later than ten days after receipt and certification of the same. *See* Winmar/AJI contract, §§ 5.1.2.3–5.1.3, as attached to Winmar's Third Party Complaint. Despite AJI's attempt at withdrawing the certifications for payment, the parties' contract makes no such allowance. *Id*. The contract does,

however, provide for possible decisions for the Architect withholding certification for payment. AJI failed to avail itself of this provision. *See* Letter from Winmar counsel to Project Architect, dated March 28, 2006, attached as Exhibit C to QNB's Interrogatories to Winmar, attached as Exhibit 3 to WSMF.

Furthermore, pursuant to the parties' contract, within seven days after receipt of a payment application, the Architect is to either issue the certificate for payment in that amount, or notify the Owner and Contractor as to the reasons for withholding. *Id.* Having received no such notice from either AJI or the Architect prior to receipt of the "duplicate payment," Winmar had further reason to believe that they were entitled to at least the amount they last requested, the $355,297 which they retained

In this action, AJI maintains that Winmar is not entitled to the monies previously certified by the Architect. In fact, AJI goes further to suggest that Winmar has been overpaid. As there is a dispute of material fact with respect to Winmar's affirmative defense as to their entitlement to the "duplicate payment," there exists a dispute of material fact as to the matter between Winmar and QNB. Furthermore, if the Court was to determine that QNB was entitled to summary judgment on their claims against Winmar, then Winmar would be unfairly prejudiced in its claims against AJI. Therefore, summary judgment on QNB's behalf is not proper

C.   **Winmar's discharge for value defense should apply in this matter.**

As with any determination in this matter as to whether Winmar is entitled to retain the alleged "duplicate payment" from QNB, a thorough analysis of the discharge for value defense is not possible at this time. The central issue of notice and whether it was reasonable for Winmar to retain the funds based upon such notice, or lack thereof, is subject to further discovery in the claims between Winmar and AJI. As a threshold matter, however, whatever notice Winmar

received after the wire transfer on January 31, 2006 is immaterial. For all practical intents and purposes, the funds were immediately credited to AJI's account, whether or not Winmar had actual or constructive notice of the alleged error. Furthermore, QNB's reliance on AJI's statements subsequent to the duplicate payment, as indicative of the proposition that Winmar could not have reasonably believed they were entitled to those funds, is misplaced. As stated above, Winmar had adequate basis for holding the belief that they were entitled to the entire $474,677. The fact that AJI disputes this, as well as disputing the additional monies claimed by Winmar, is clearly indicative of a dispute as to a material fact between Winmar and AJI and this a dispute as to a material fact between Winmar and QNB.

>The Restatement of Restitution with respect to the discharge for value issue states:
>
>A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefore, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

RESTATEMENT OF RESTITUTION § 14(1). The only authority which addresses the "timing issue" is derived from the Sixth Circuit Court of Appeals' opinion in *In re Calumet Farm*. 398 F.3d 555 (6th Cir. 2005).

The Court, in *Calumet*, did concede, however, that the Seventh Circuit stated "a creditor should be able to treat funds credited in apparent payment of a debt as irrevocably his, unless news of the error <u>precedes arrival of the funds</u>." *Calumet*, 398 F.3d at 559 (quoting *Gen. Elec. Capital Corp. v. Cent. Bank*, 49 F.3d 280, 284 (7th Cir. 1995) (emphasis added)). In the instance case there is no dispute, the funds arrived in Winmar's account well before they received any notice.

Nonetheless, despite its reliance on the "crediting of account" issue and the timing of such crediting, the *Calumet* Court failed to define what it meant by such "crediting." Instead, it looked to the actions of the creditor party, which upon receipt of the excess funds segregated them into their personal account, keeping the amount that they believed they actually were owed in the company accounts. *Calumet*, 398 F.3d at 561. In the instant case, there is no such evidence that Winmar, upon receipt of the questioned funds, segregated them from the funds they believed they were owed. The conduct of the creditor party in *Calumet* was therefore instructive of whether that party believed the excess funds were in actual payment. It was clear that the creditor, White Birch, affirmatively did not credit the debtor's account. Winmar took no such steps and instead all monies remained in the aforementioned deposit account.

Additionally, it is not required that Winmar take steps in reliance on the payment to their detriment, which certainly a crediting of AJI's account would be. *See e.g. Banque Worms v. Bank America Int'l,* 726 F. Supp. 940, 943 (S.D.N.Y. 1989) (detrimental reliance is not required in order to be allowed to keep questioned funds). If detrimental reliance is not required in order to maintain the discharge for value defense, then the question remains as to what happens upon the "crediting" of one's account as of receipt of questioned funds.

As it is not required that the creditor "credit" the debtor's account, QNB's notice argument fails. Nonetheless, for all practical intents and purposes, AJI's account, such as it was, was immediately credited upon receipt of the funds. AJI's statements subsequent to the "duplicate payment" are indicative solely of the dispute that exists between Winmar and AJI. Clearly, issues of material fact abound between AJI and Winmar with respect to this matter. Therefore, issues of material fact as between Winmar and QNB also exist. Summary judgment on behalf of QNB is therefore not proper.

## IV. CONCLUSION

For the foregoing reasons, Winmar respectfully requests that QNB's Motion for Summary Judgment be denied. There are numerous issues of material fact between Winmar and QNB as well as between Winmar and AJI. As such QNB's Motion for Summary Judgment should be denied.

Respectfully Submitted,

LEE & McSHANE, P.C.

By: \_\_\_\_\_\\s\_____
James F. Lee, Jr., Esq. (DC Bar # 247718)
Trevor M. Ashbarry, Esq. (DC Bar # 980359)
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C. 20036
(202) 530-8100

*Counsel for Defendant, Winmar, Inc.*

## REQUEST FOR HEARING

Winmar, Inc. respectfully requests a hearing on Qatar National Bank's Motion for Summary Judgment and Winmar, Inc.'s Opposition thereto.

\_\_\_\_\_/s/_____
Trevor M. Ashbarry

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition to Qatar National Bank's Motion for Summary Judgment, and all attachments thereto was mailed, postage pre-paid, on this 7th day of July, 2008 to:

| Alan T. Dickey (DC Bar # 496403)<br>Patton Boggs, LLP<br>2550 M Street, N.W.<br>Washington, DC 20037<br>*Counsel for Plaintiff Qatar National Bank* | Leslie Hugh Wiesenfelder<br>Dow Lohnes, PLLC<br>1200 New Hampshire Avenue, NW, Suite 800<br>Washington, DC 20036<br>*Counsel for Al-Jazeera International* |
|---|---|

\s\
Trevor M. Ashbarry