**EXHIBIT 1A**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QATAR NATIONAL BANK,

        Plaintiff,

    v.

WINMAR, INC. d/b/a
WINMAR CONSTRUCTION,

        Defendant.

Case No.:  1:06CV01307

_____

WINMAR, INC. d/b/a
WINMAR CONSTRUCTION,
1420 K Street, NW, Suite 250
Washington, DC 20005

        Third–Party Plaintiff,

    v.

AL-JAZEERA INTERNATIONAL,
Serve: District of Columbia Division
    Of Consumer and Regulatory Affairs
    And
    Randall R. Smith, Esq.
    Dow Lohnes & Albertson, PLLC
    One Ravinia Drive, Suite 1600
    Atlanta, GA 30346

        Third-Party Defendant.

_____

## DEFENDANT/THIRD-PARTY PLAINTIFF WINMAR, INC. D/B/A WINMAR CONSTRUCTION'S THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANT AL-JAZEERA INTERNATIONAL

Third-Party Plaintiff Winmar, Inc., d/b/a Winmar Construction ("Winmar") for its Third-Party Complaint against Third-Party Defendant Al-Jazeera International ("Al-Jazeera") alleges as follows:



EXHIBIT
A

## PARTIES

1.     Third-Party Plaintiff Winmar is a corporation organized under the laws of the District of Columbia with its principal place of business at 1420 K Street, N.W., Washington, DC 20005.  Third-Party Plaintiff Winmar is licensed to do business within the District of Columbia.

2.     On information and belief, Third-Party Defendant Al Jazeera International is a subsidiary of Aljazeera, an entity organized under the laws of the Government of the State of Qatar, with its principal place of business in Doha, Qatar.  Al Jazeera International is not licensed to do business in the District of Columbia.

3.     Pursuant to Contract, attached as Exhibit 1 and described below, Al-Jazeera has authorized Randall R. Smith, Esq., of Dow, Lohnes & Albertson, PLLC, One Ravinia Drive, Suite 1600, Atlanta, Georgia 30346 to accept service of process on Al-Jazeera's behalf and has agreed that such service shall be deemed good and proper service and shall be binding on Al-Jazeera.

## JURISDICTION AND VENUE

4.     Winmar incorporates paragraphs 1-2 of this third-party complaint as though fully set forth herein.

5.     Plaintiff's action purports to arise under the laws of the United States including, without limitation, the federal regulations regarding wire transfers through Fedwire, 12 C.F.R. §§ 210.25-31.

6.     This Court has jurisdiction over plaintiff's action and this third-party complaint under 28 U.S.C. § 1331 because it arises under the laws of the United States.  Additionally, this Court has jurisdiction over plaintiff's action and this third-party complaint under 28 U.S.C. § 1332 because it is between a citizen of the District of Columbia and a citizen of a foreign state and the

amount in controversy, exclusive of interest and costs, exceeds $75,000. Finally, this Court has jurisdiction over plaintiff's action and this third-party complaint under 28 U.S.C. § 1367(a) because all claims share a common nucleus of facts.

7.     This Court has personal jurisdiction over third-party defendant Al-Jazeera because Al-Jazeera has entered into contracts in the District of Columbia, maintains an office in the District of Columbia, and the subject matter of third-party plaintiff's claims arose in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

8.     Winmar incorporates paragraphs 1-7 of this third-party complaint as though fully set forth herein.

9.     On November 23, 2005, Winmar entered into a modified AIA A-101 Standard Contract Between Owner and Contractor, together with a modified AIA A201 General Conditions, with Al Jazeera International for the build-out of office space at 1627 K Street NW, Washington, DC 2003 (the "Contract") attached as Exhibit 1.

10.    An attachment to the Contract was the "Monthly Estimated Draw" which set forth the schedule of payments to be made by Al-Jazeera to Winmar.

11.    Pursuant to the Contract, Al-Jazeera agreed to deposit each Monthly Estimated Draw with an escrow agent, where the funds would be held until the Architect approved the Certification for Payment. Upon presentation of the Certification, the escrow agent was to release the funds to Winmar.

12.    Upon information and belief, Al-Jazeera was unable to find an escrow agent that would serve in the capacity designated under the Contract.

13.    Al-Jazeera and Winmar agreed that Winmar would open a designated account at

Citibank Federal Savings Bank ("Citibank") in Washington, DC where Al-Jazeera would wire payment.

14.    Winmar commenced work under the Contract and proceeded in accordance with its obligations under the Contract.

15.    Al-Jazeera's first payment under the Contract in the amount of $645,161 was wired into Winmar's account at Citibank pursuant to Section 5.1.2.1 of the Contract.

16.    On or about December 12, 2005, Al-Jazeera wired $474,677 to Winmar as a progress payment pursuant to the Contract.

17.    Al-Jazeera terminated the Contract for convenience pursuant to Section 14.4 of the General Conditions on January 11, 2006.

18.    At the time of termination, Winmar was fulfilling its obligations under the Contract, and was owed for work completed under the Contract an amount in excess of $474,677.

19.    Pursuant to the terms of the Contract, Winmar was entitled to receive payment for the Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

20.    Winmar credited the alleged erroneous $464,677 wire transfer made on January 30, 2006 to the amounts undisputedly due and owing by Al-Jazeera on the Contract.

21.    Al-Jazeera made a claim with the Architect on the Project following the wire transfer alleging that the wire transfer was made in error and requesting the Architect find that those monies should be returned.

22.    Winmar returned $119,380 of the funds at issue to Al Jazeera.

23.    There remain amounts due and owing by Al-Jazeera to Winmar in excess of $75,000, which Al-Jazeera has failed to pay pursuant to the terms of the Contract.

24.     Al-Jazeera is in material breach of the Contract with Winmar.

## COUNT I
## THIRD PARTY CLAIMS

25.     Winmar incorporates paragraphs 1 through 24 of this third-party complaint as though fully set forth herein.

26.     Winmar was owed amounts in excess of $474,677 from Al-Jazeera at the time it received the alleged errant wire transfer from QNB on January 30, 2006.

27.     Winmar returned to Al-Jazeera $119,380 on March 9, 2006, following a claim made to the Architect disputing the amounts owed.

28.     Al-Jazeera accepted $119,380 from Winmar on March 9, 2006, and then accepted $474,677 from Qatar National Bank on March 20, 2006.

29.     Third-party defendant Al-Jazeera is liable to defendant and third-party plaintiff Winmar for all or part of the plaintiff's claim against the defendant and third-party plaintiff Winmar on all of the following grounds:

   a.  Al-Jazeera knowingly accepted duplicate recovery of monies from Winmar and QNB.

   b.  Al-Jazeera has been unjustly enriched by this duplicate recovery.

   c.  At the time the alleged errant wire transfer was made, Al-Jazeera owed amounts in excess of $474,677 to Winmar, and Winmar credited that amount to the debt owed, making Al-Jazeera's duplicate recovery the full amount of the wire transfer at issue.

   d.  Al-Jazeera has retained funds that it is not entitled to, and therefore, principles of equity and good conscience require that Al-Jazeera return funds to Qatar National Bank.

30.     Because of the above, Third-Party Defendant Al-Jazeera is liable to Winmar for any recovery from Winmar by Qatar National Bank in this action.

31.     To the extent plaintiffs' claims in this action have legal merit, third-party defendant Al-Jazeera has caused or contributed to the damages and other harms alleged to have been

suffered by plaintiffs.

32.     To the extent Winmar is held liable to the plaintiff, Al-Jazeera is liable to defendant/third-party plaintiff Winmar for contribution and indemnity.

## COUNT II
## BREACH OF CONTRACT

33.     Winmar incorporates paragraphs 1 through 32 of this third-party complaint as though fully set forth herein.

34.     Winmar fulfilled its obligations under the Contract.

35.     Pursuant to the terms of the Contract, Al-Jazeera was required to make monthly payments to Winmar.

36.     Al-Jazeera failed to make monthly payments to Winmar, and upon termination of the Contract by Al-Jazeera for convenience, Al-Jazeera failed to pay amounts due to Winmar pursuant to Section 14.4.3 of the General Conditions of the Contract.

37.     Al-Jazeera has breached the Contract by failing to pay all amounts due and owing to Winmar under the Contract.

38.     By reason of Al-Jazeera's breach, Winmar has been damaged in an amount in excess of $75,000, to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT

39.     Winmar incorporates paragraphs 1 through 38 of this third-party complaint as though fully set forth herein.

40.     Al-Jazeera received the benefit of Winmar crediting its account with the alleged errant wire transfer of $474,677.

41.     Winmar returned $119,380 of the funds transferred on January 30, 2006 to Al-

Jazeera in the form of a check hand delivered to counsel for Al-Jazeera on March 9, 2006.

42.    After Al-Jazeera received the benefit of having the transferred funds credited toward the amounts it owed under the Contract, and after receiving return of $119,380 from Winmar, Al-Jazeera then demanded return of $474,677 from Qatar National Bank.

43.    Al-Jazeera, according to Qatar National Bank's pleading, received $474,677 from Qatar National Bank on March 20, 2006.

44.    Al-Jazeera sought double recovery from Winmar and Qatar National Bank, and left Qatar National Bank to seek refund from Winmar, knowing that Winmar had a lawful right to keep the monies it had received.

45.    Al Jazeera has been unjustly enriched by receiving both the benefit of the funds under its contract with Winmar and the recovery of the funds from Qatar National Bank and has in fact received a double reimbursement of part of the funds.  As a result, Al-Jazeera now owes at least $474,677 to Winmar, plus interest.

## COUNT IV
## MONEY HAD AND RECEIVED/MONEY RECEIVED BY MISTAKE

46.    Winmar incorporates paragraphs 1 through 45 of this third-party complaint as though fully set forth herein.

47.    Al-Jazeera has benefited from the duplicate receipt of monies and has retained those monies for its own use.

48.    Because Winmar credited $474,677 to Al-Jazeera and Qatar National Bank returned $474,677 to Al-Jazeera, Al-Jazeera has no right to retain duplicate recovery and principles of equity and good conscience require that Al-Jazeera return those funds to Winmar.

## REQUEST FOR RELIEF

WHEREFORE, Third-Party Plaintiff Winmar, Inc. prays that upon final judgment, it has

judgment against Al-Jazeera International in an amount in excess of $474,677, plus reasonable

attorney's fees, costs, expenses, pre- and post-judgment interest, and any other and further relief,

both at law and in equity, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Third-Party Plaintiff Winmar, Inc. hereby demands a trial by jury on all issues.

Dated: October 2, 2006                                    Respectfully submitted,

                                                         LEE & McSHANE, P.C.


                                    By:      /s/ Robert A. Kearbey
                                            James F. Lee, Jr., (DC Bar No. 247718)
                                            Arthur T. K. Norris, (DC Bar No. 438907)
                                            Robert A. Kearbey, (DC Bar No. 491700)
                                            1211 Connecticut Avenue, N.W.
                                            Suite 425
                                            Washington, D.C. 20036
                                            (202) 530-8100


                                            *Counsel for Defendant and Third Party
                                            Plaintiff, Winmar, Inc.*

# ▲AIA® Document A101™ – 1997

## Standard Form of Agreement Between Owner and Contractor
### where the basis of payment is a STIPULATED SUM

**AGREEMENT** made as of the **23** day of **Nov.** in the year of **2005**
*(In words, indicate day, month and year)*

**BETWEEN** the Owner:
*(Name, address and other information)*

Al Jazeera International
1627 K Street, NW
Washington, DC

and the Contractor:
*(Name, address and other information)*

Winmar, Inc.
901 15th Street, NW
Suite 800
Washington, DC 20005

The Project is:
*(Name and location)*

Al Jazeera International – Interior Build-Out

The Architect is:
*(Name, address and other information)*

The Owner and Contractor agree as follows.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201-1997, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

This document has been approved and endorsed by The Associated General Contractors of America.


EXHIBIT
1

**AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:** (2037098010)

1

## ARTICLE 1 THE CONTRACT DOCUMENTS

The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2 THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

§2.1 To the extent Owner requires any, construction design consulting, value engineering or services incidental thereto, the Owner acknowledges that such services are advisory and are not professional design services. The Owner will, with due diligence, refer such questions, matters, and inquiries to the design professionals, and the Contractor shall have no liability to the Owner or the Architect or its consultants for such services requested by the Owner and rendered hereunder.

## ARTICLE 3 DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.

The date of commencement shall be the date established in the Owner's written notice to proceed.
If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than 142 calendar days from the date of commencement, or as follows:

*(Paragraph deleted)*

March 1, 2006

| Portion of Work | Substantial Completion Date |
| --- | --- |
| | March 1, 2006 |

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*

## ARTICLE 4 CONTRACT SUM

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be two million three hundred fifty one thousand six hundred fifteen dollars ($2,351,615.00 ), subject to additions and deductions as provided in the Contract Documents.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:

*(Paragraph deleted)*

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes: (2037098010)

See Attachment B- Construction Proposal

**§ 4.3** Unit prices, if any, are as follows:

| Description | Units | Price ($ 0.00) |
|---|---|---|
| See Attachment B – Construction Proposal | | |

**§4.4** In the event that the Contractor is required to pay or bear the burden of any new federal, state, or local tax, or of any rate increase of an existing tax (except a tax on net profits), as a result of any statute, court decision, written ruling, or regulation enacted after the Contract date, the stipulated sum shall be increased by the amount of the new tax or tax increase.

## ARTICLE 5 PAYMENTS
### § 5.1 PROGRESS PAYMENTS
**§ 5.1.1** Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

**§ 5.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

**§5.1.2.1** Upon execution of this contract by both parties, Owner shall make an initial deposit of six hundred forty-five thousand one hundred sixty one dollars ($645,161) to the Contractor.

**§5.1.2.2** Contractor has prepared a monthly cash flow statement estimating the amount of each monthly Application for Payment which is attached as Attachment A ("Monthly Estimated Draw") and is incorporated into this Agreement by reference. Owner agrees to deposit each Monthly Estimated Draw with an escrow agent selected by the Contractor ("Escrow Agent") on or before the last day of the month prior to month the Monthly Estimated Draw is actually incurred by the Contractor.

**§5.1.2.3** Upon presentment of Architect's approved Certificate for Payment, Escrow Agent shall within 3 calendar days, release such funds to the Contractor via wire transfer. Owner shall include all necessary provisions in its agreement with Escrow Agent in order to execute this Agreement.

**§5.1.2.4** If Owner fails to deposit the Monthly Estimated Draw with the Escrow Agent as required by this Agreement, Owner will be in material breach of this Agreement. The Owner shall have a cure period of 3 business days in which to cure the breach following receipt of written notice from Contractor. If the breach is not cured within the applicable cure period, the Contractor shall have the right to immediately suspend or terminate the Work provided Contractor provides Owner with additional written notice thereof at least one (1) day prior thereto. In the event of a suspension of services, the Contractor shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Contractor shall be paid all sums due prior to suspension and any expenses, including a remobilization incurred in the interruption and resumption of the Contractor's services. The Contractor's fees for the remaining services and the time schedules shall be equitably adjusted. Suspension of services shall be a minimum of five (5) days and $three thousand five hundred dollars ($3500) per day over seven (7) calendar days. Schedules shall be equitably adjusted no less than the period of suspension plus seven (7) calendar days.

**§5.1.2.5** The Contractor and Owner shall mutually agree upon the selection of an Escrow Agent used in the performance of this Agreement. The Contractor's approval of the Escrow Agent shall be an absolute condition to the selection of an Escrow Agent for this Agreement. Such approval shall not be unreasonably withheld. Owner shall pay all costs associated with retaining this Escrow Agent.

**§5.1.2.6** If the Architect does not issue a Certificate for Payment within seven days after receipt of the Contractor's Application for Payment, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. In the event that Architect does not

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes: (2037098010)

issue the Certificate of Payment within such additional seven (7) day period and Escrow Agent does not otherwise pay the amount set forth on such Application for Payment, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided for in the Contract Documents.

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the last day of a month, then the Architect shall issue the Certificate of Payment to the Escrow Agent within seven (7) days thereafter, and the Escrow Agent shall release the payment to the Contractor not later than the 3 calendar days after such date. If an Application for Payment is received by the Architect at any other time other than the last day of a month, then the Architect shall issue the Certificate of Payment to the Escrow Agent within seven ( 7 ) days thereafter, and the Escrow Agent shall release the payment to the Contractor not later than three calendar days of receipt of such Certificate of Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may reasonably require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

    .1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of five percent (5% ). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

    .2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

    .3    Subtract the aggregate of previous payments made by the Owner; and

    *(Paragraph deleted)*

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

    .1    Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work; and
        *(Section 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

    .2    Add, if final completion of the Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201-1997.

§ 5.1.8 *Intentionally Omitted.*

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:

(2037098010)

*(Paragraphs deleted)*

### § 5.2 FINAL PAYMENT

**§ 5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be released by the Escrow Agent to the Contractor when:

   .1   the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

   .2   a final Certificate for Payment has been issued by the Architect.

**§ 5.2.2** The Escrow Agent's release of the Final Payment to the Contractor shall be made no later than fourteen (14) calendar days after the issuance of the Architect's final Certificate for Payment.


## ARTICLE 6   TERMINATION OR SUSPENSION

**§ 6.1** The Contract may be terminated by the Owner or the Contractor as provided in this Agreement or as in Article 14 of AIA Document A201-1997.

**§ 6.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

## ARTICLE 7   MISCELLANEOUS PROVISIONS

**§ 7.1** Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

**§ 7.2** Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

   Twelve percent (12% simple interest )

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision.  Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

**§ 7.3** The Owner's representative is:
*(Name, address and other information)*

C-S. NAPIER
PO Box 22684
DOHA, QATAR

**§ 7.4** The Contractor's representative is:
*(Name, address and other information)*

Chris Condon
Winmar, Inc.
901 15th Street, N.W.
Suite 800
Washington, D.C. 20005

**AIA Document A101™ – 1997. Copyright** © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects.  **All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**  This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:                                                                                                                                    (2037098010)

§ 7.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 7.6 Other provisions:

## ARTICLE 8   ENUMERATION OF CONTRACT DOCUMENTS

§ 8.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated as follows:

§ 8.1.1 The Agreement is this executed 1997 edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997.

§ 8.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997, as amended and attached hereto.

§ 8.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project Manual dated , and are as follows

| Document | Title | Pages |

§ 8.1.4 The Specifications are those contained in the Project Manual dated as in Section 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
Title of Specifications exhibit:

§ 8.1.5 The Drawings are as follows, and are dated      unless a different date is shown below:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*
Title of Drawings exhibit:

§ 8.1.6 The Addenda, if any, are as follows:

| Number | Date | Pages |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

§ 8.1.7 Other documents, if any, forming part of the Contract Documents are as follows:

Attachment A- Monthly Cash Flow Statement
Attachment B – September 16, 2005 Construction Proposal and Exclusions
Attachment C- Specifications
Attachment D - Project Manual
Attachment E – Schedules

Any inconsistency in the Contract Documents shall be resolved by giving precedence to the documents in the following order:
(1) Construction Proposal and exclusions dated September 16, 2005
(2) Other contract amendments and modifications;
(3) 1997 Edition of the Standard Form of Agreement Between Owner and Contractor, AIA Document A101-1997 with all attachments;

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:                                                                                                                          (2037098010)

6

(4) The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997 as amended and attached hereto;

(5) Project Specifications

(6) Drawings

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

| OWNER *(Signature)* | CONTRACTOR *(Signature)* |
|---|---|

C.S. NAPIER DIRECTOR OF FINANCE
*(Printed name and title)*
& ADMINISTRATION

*(Printed name and title)*

AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:                                                                                                          (2037098010)

7

## Additions and Deletions Report for
## AIA® Document A101™ – 1997

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note: This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 12:49:49 on 11/22/2005.

**PAGE 1**

Al Jazeera International

...

1627 K Street, NW

...

Washington, DC

...

Winmar, Inc.

...

901 15th Street, NW

...

Suite 800

...

Washington, DC 20005

...

Al Jazeera International – Interior Build-Out

**PAGE 2**

§2.1 To the extent Owner requires any, construction design consulting, value engineering or services incidental thereto, the Owner acknowledges that such services are advisory and are not professional design services. The Owner will, with due diligence, refer such questions, matters, and inquiries to the design professionals, and the Contractor shall have no liability to the Owner or the Architect or its consultants for such services requested by the Owner and rendered hereunder.

(Insert the The date of commencement if it differs from shall be the date of this Agreement or, if applicable, state that established in the date will be fixed in a Owner's written notice to proceed.)proceed.

...

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than 142 calendar days from the date of commencement, or as follows:

...

(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)

March 1, 2006

...

March 1, 2006

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be ($ two million three hundred fifty one thousand six hundred fifteen dollars ($2,351,615.00 ), subject to additions and deductions as provided in the Contract Documents.

Additions and Deletions Report for AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes: (2037098010)

1

*(State the numbers or other identification of accepted alternates. If decisions on other alternates are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when that amount expires)*

**PAGE 3**

See Attachment B- Construction Proposal

...

       See Attachment B – Construction Proposal

...

**§4.4** In the event that the Contractor is required to pay or bear the burden of any new federal, state, or local tax, or of any rate increase of an existing tax (except a tax on net profits), as a result of any statute, court decision, written ruling, or regulation enacted after the Contract date, the stipulated sum shall be increased by the amount of the new tax or tax increase.

...

**§5.1.2.1** Upon execution of this contract by both parties, Owner shall make an initial deposit of six hundred forty-five thousand one hundred sixty one dollars ($645,161) to the Contractor.

...

**§5.1.2.2** Contractor has prepared a monthly cash flow statement estimating the amount of each monthly Application for Payment which is attached as Attachment A ("Monthly Estimated Draw") and is incorporated into this Agreement by reference. Owner agrees to deposit each Monthly Estimated Draw with an escrow agent selected by the Contractor ("Escrow Agent") on or before the last day of the month prior to month the Monthly Estimated Draw is actually incurred by the Contractor:

...

**§5.1.2.3** Upon presentment of Architect's approved Certificate for Payment, Escrow Agent shall within 3 calendar days, release such funds to the Contractor via wire transfer. Owner shall include all necessary provisions in its agreement with Escrow Agent in order to execute this Agreement.

...

**§5.1.2.4** If Owner fails to deposit the Monthly Estimated Draw with the Escrow Agent as required by this Agreement, Owner will be in material breach of this Agreement. The Owner shall have a cure period of 3 business days in which to cure the breach following receipt of written notice from Contractor. If the breach is not cured within the applicable cure period, the Contractor shall have the right to immediately suspend or terminate the Work provided Contractor provides Owner with additional written notice thereof at least one (1) day prior thereto. In the event of a suspension of services, the Contractor shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services. Before resuming services, the Contractor shall be paid all sums due prior to suspension and any expenses, including a remobilization incurred in the interruption and resumption of Contractor's services. The Contractor's fees for the remaining services and the time schedules shall be equitably adjusted. Suspension of services shall be a minimum of five (5) days and $three thousand five hundred dollars ($3500) per day over seven (7) calendar days. Schedules shall be equitably adjusted no less than the period of suspension plus seven (7) calendar days.

...

**§5.1.2.5** The Contractor and Owner shall mutually agree upon the selection of an Escrow Agent used in the performance of this Agreement. The Contractor's approval of the Escrow Agent shall be an absolute condition to the selection of an Escrow Agent for this Agreement. Such approval shall not be unreasonably withheld. Owner shall pay all costs associated with retaining this Escrow Agent.

...

**§5.1.2.6** If the Architect does not issue a Certificate for Payment within seven days after receipt of the Contractor's Application for Payment, then the Contractor may, upon seven additional days' written notice to the Owner and Architect, stop the Work until payment of the amount owing has been received. In the event that Architect does not issue the Certificate of Payment within such additional seven (7) day period and Escrow Agent does not otherwise pay the amount set forth on such Application for Payment, the Contract Time shall be extended appropriately and the Contract Sum shall be increased by the amount of the Contractor's reasonable costs of shutdown, delay and start-up, plus interest as provided for in the Contract Documents.

**PAGE 4**

Additions and Deletions Report for AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:

(2037098010)

**§ 5.1.3** Provided that an Application for Payment is received by the Architect not later than the ~~last~~ day of a month, ~~then the Architect shall~~ issue the Certificate of Payment to the ~~Owner~~ Escrow Agent within seven (7) days ~~thereafter, and the Escrow Agent shall~~ ~~make~~ release the payment to the Contractor not later than the ~~day of the month. 3 calendar days after such date.~~ If an Application for Payment is received by the Architect ~~after~~ at any other ~~time other than~~ the last day of a month, ~~then the~~ ~~application date fixed above, payment~~ Architect shall ~~be made by~~ issue the Certificate of Payment to the ~~Owner not later than~~ Escrow Agent within seven ( 7 ) days ~~after thereafter, and the Escrow Agent shall release the~~ Architect ~~receives~~ payment to the ~~Application for~~ Contractor not later than three calendar days of receipt of such Certificate of Payment.

...

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may reasonably require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

...

.1  Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of (~~five percent (5%)~~ ). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

...

.2  Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in ~~writing), less~~ ~~retainage of ( )~~ writing;

...

.4  ~~Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.~~

...

.1  Add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete ~~Work, retainage applicable to such work~~ Work; and ~~unsettled claims;~~ and

...

**§ 5.1.8** ~~Reduction or limitation of retainage, if any, shall be as follows:~~ Intentionally Omitted.

**PAGE 5**

~~(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)~~

~~§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.~~

...

§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be ~~made~~ released by the ~~Owner~~ Escrow Agent to the Contractor when:

...

§ 5.2.2 The ~~Owner's final payment~~ Escrow Agent's release of the Final Payment to the Contractor shall be made no later than ~~30~~ fourteen (14) calendar days after the issuance of the Architect's final Certificate for ~~Payment, or as follows:~~ Payment.

...

§ 6.1 The Contract may be terminated by the Owner or the Contractor as provided in this Agreement or as in Article 14 of AIA Document A201-1997.

Additions and Deletions Report for AIA Document A101™ – 1997. Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.  This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:                                                                                                          (2037098010)

3

...
~~(Insert rate of~~ Twelve percent (12% ~~simple~~ interest agreed upon, if any.)

~~(-)~~

...
Chris Condon

...
Winmar, Inc.

...
901 15th Street, N.W.

...
Suite 800

...
Washington, D.C. 20005

**PAGE 6**

§ 8.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document ~~A201- 1997.~~ A201-1997, as amended and attached hereto.

...

| ~~Section~~ Title of Specifications exhibit: | ~~Title~~ | Pages |
|---|---|---|

...

| ~~Number~~ Title of Drawings exhibit: | ~~Title~~ | ~~Date~~ |
|---|---|---|

...
Attachment A- Monthly Cash Flow Statement

...
Attachment B – September 16, 2005 Construction Proposal and Exclusions

...
~~(List here any additional~~ Attachment C- Specifications

...
Attachment D - Project Manual

...
Attachment E – Schedules

...
Any inconsistency in the Contract Documents shall be resolved by giving precedence to the documents ~~that are intended to form part~~ in the following order:

...
  (1)  Construction Proposal and exclusions dated September 16, 2005

...
  (2)  Other contract amendments and modifications;

...
  (3)  1997 Edition of the ~~Contract Documents.~~ Standard Form of Agreement Between Owner and Contractor, AIA Document ~~A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and~~ A101-1997 with all attachments;

**PAGE 7**

  (4)  The General Conditions are the ~~Contractor's bid are not part~~ 1997 edition of the ~~Contract Documents unless enumerated in this Agreement.  They should be listed here only if intended to be part~~ General Conditions of the Contract ~~Documents.)~~ for Construction, AIA Document A201-1997 as amended and attached hereto;

...
  (5)  Project Specifications

...
  (6)  Drawings

**Additions and Deletions Report for AIA Document A101™ – 1997.** Copyright © 1915, 1918, 1925, 1937, 1951, 1958, 1961, 1963, 1967, 1974, 1977, 1987, 1991 and 1997 by The American Institute of Architects.  All rights reserved.  **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.**  This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:                                                                                              (2037098010)

4

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Francina M. Segbefia, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 12:49:49 on 11/22/2005 under Order No. 1000193775_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A101™ – 1997 Standard Form of Agreement Between Owner and Contractor where the basis of payment is a STIPULATED SUM, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

AIA Document D401™ – 2003. Copyright © 1992 and 2003 by The American Institute of Architects.  All rights reserved.  WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 12:49:49 on 11/22/2005 under Order No.1000193775_1 which expires on 8/17/2006, and is not for resale.
User Notes:                                                                                          (2037098010)

1