**EXHIBIT 5**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| QATAR NATIONAL BANK,<br>Winmar, | : | |
| | : | |
| | : | |
| v. | : | Civil Action No. 1:06-cv-01307-GK |
| | : | |
| WINMAR, INC.,<br>Defendant and Third<br>Party Winmar. | : | |
| | : | |
| WINMAR, INC.,<br>Third Party Winmar<br>and Counterclaim<br>Defendant, | : | Next Scheduled Court Deadline:<br><br>Pretrial Conference – Nov. 13, 2008 |
| v. | : | |
| | : | |
| AL JAZEERA INTERNATIONAL,<br>Third Party Defendant<br>and Counterclaim<br>Winmar. | : | |

**AL JAZEERA INTERNATIONAL'S
RESPONSES AND OBJECTIONS TO
WINMAR'S FIRST SET OF INTERROGATORIES**

Pursuant to the Federal Rules of Civil Procedure ("Federal Rules"), Al Jazeera

International ("Al Jazeera"), by and through counsel, hereby submits the following responses and

objections to Winmar's First Set of Interrogatories (the "interrogatories").

**GENERAL OBJECTIONS**

A.    Al Jazeera's responses and objections set forth herein are based upon its current

information, understandings and beliefs.  Al Jazeera thus expressly reserves the right to

supplement or amend these responses and objections as may become necessary or appropriate in

the future.

B.    Al Jazeera submits its responses and objections to the interrogatories without admitting the competency, relevance, materiality, authenticity or admissibility of any information to be provided, and all objections to the use of any information to be provided in response to the interrogatories, hereby expressly are preserved.

C.    Al Jazeera objects to the interrogatories to the extent that they purport to seek any information or documents that were prepared in anticipation of litigation, are protected by the attorney-client, joint defense, or common interest privilege, constitute work product, disclose mental impressions, conclusions, opinions or legal theories of any attorney or other representative of defendants, or are otherwise protected from disclosure under applicable privileges, laws or rules. Al Jazeera's provision of information in response to the interrogatories is without waiver of any and all such privileges and protections. In the event that privileged or protected material is provided inadvertently, such inadvertent production shall not be deemed to constitute a waiver of applicable privileges or protections. To the extent applicable, Al Jazeera's provision of information is subject to and governed by any confidentiality order entered by the Court in this action.

D.    Al Jazeera objects to the interrogatories to the extent that they seek any information and/or documents beyond the permissible scope of, or otherwise seek to impose obligations beyond those required by or inconsistent with, the Federal Rules.

E.    Al Jazeera objects to the interrogatories to the extent that they seek information or documents that are not in Al Jazeera's possession, custody, or control or primarily or exclusively are within the possession, custody, or control of Winmar or Qatar National Bank ("QNB").

F.    Al Jazeera objects to the interrogatories to the extent they seek information constituting Al Jazeera's trade secrets or other confidential or proprietary information without entry of an acceptable protective order.

G.    Al Jazeera objects to the interrogatories to the extent that they seek information regarding persons or entities that are not parties to this litigation and who have a right to privacy with respect to such information, or who have entered agreements that prevent disclosure of information to third parties unless judicially compelled to do so.

H.    Al Jazeera objects to the interrogatories to the extent that they are vague, ambiguous, overbroad, argumentative, unduly burdensome, or not relevant to any claim or defense.

I.    Al Jazeera objects to the interrogatories to the extent that they purport to require Al Jazeera to provide information regarding events that occurred after the termination for convenience of the contract between Al Jazeera and Winmar and states that Al Jazeera's answers will be limited to the timeframe ending with said termination for convenience except to the extent Al Jazeera believes that the information sought by the interrogatories is relevant to any claim or defense.

J.    The aforementioned objections are incorporated into each specific objection set forth herein.

### WINMAR'S INTERROGATORIES AND AL JAZEERA'S SPECIFIC OBJECTIONS AND RESPONSES THERETO

**Interrogatory No. 1**

Please describe each element of the damages claimed by AJI, state the amount of each element of damage, set forth your method of calculating each element of damage and identify each individual with personal knowledge of your claim for damages.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera incorporates by reference the damage claims set out in its Counterclaims. Those damages consist of all amounts paid by Al Jazeera in excess of the total amount due to Winmar under the Contract (as defined in the interrogatories' definitions), plus pre-judgment and post judgment interest, costs, expenses, and reasonable attorneys' fees. In addition to counsel and employees of Winmar, Al Jazeera believes that Kris Collins and Michael Etherton of Mark G. Anderson Consultants have personal knowledge of the extent of the work performed by Winmar prior to the termination for convenience.

**Interrogatory No. 2**

If you contend that non-payment for the services this party provided was justified, excused, or in anyway not required for whatever reason, please describe, in detail, the facts and circumstances that form the basis of any such contention.

**Response and/or Objection:**

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and seeking information not relevant to any claim or defense in this action. Subject to and without waiving any of its general or specific objections, Al Jazeera states that there is no issue of non-payment of Winmar by Al Jazeera in this case. To the contrary, Al Jazeera has paid Winmar far more than the amount to which Winmar is entitled under the Contract. Al Jazeera's contentions in this regard are set out in its Counterclaims, which Al Jazeera hereby incorporates by reference.

**Interrogatory No. 3**

If you contend that this party or any of its agents, servants or employees, failed to perform any obligations required for the project, please describe, in detail, the facts and circumstances that form the basis of any such contention. As to each such contention, state the obligation that was allegedly not performed, the provision of the agreement that you claim was violated by the alleged nonperformance, and identify any and all documents related thereto.

4

**Response and/or Objection:**

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and seeking information not relevant to any claim or defense in this action. Subject to and without waiving any of its general or specific objections, Al Jazeera states that Winmar claimed it was entitled to payments from Al Jazeera that Winmar knew or should have known it was not entitled to under the Contract. Each Application and Certificate for Payment submitted by Winmar included the following sworn statement executed by an officer of Winmar:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief, the Work covered by this Application for Payment has been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

However, based on Winmar's inability to produce documentation supporting material portions of the various Applications and Certificates for Payment submitted by Winmar or the spreadsheet attached to its March 20, 2008, interrogatory responses, Winmar has breached its obligation of good faith and fair dealing that is part of every contract under District of Columbia law. In addition, at a minimum, Winmar breached Sections 5.1.4 and 5.1.5 of AIA Document A101-1997 as well as Sections 7.2.1, 9.3.2, 9.6.2, 9.6.5, 14.4.3 of AIA Document A201-1997. To the extent non-privileged responsive documents in the possession of Al Jazeera that have not already been produced by Winmar support the fact of these breaches, they will be made available for inspection and copying; however, these breaches are principally supported by the fact that there are no documents supporting material portions of Winmar's various Applications and Certificates for Payment or its spreadsheet attached to Winmar's March 20, 2008, interrogatory responses.

### Interrogatory No. 4

If it is your contention that the party propounding these Interrogatories breached any agreement, please set forth the facts upon which you base that contention, including, but not limited to, the identity of each agreement breached, the specific provision or provisions breached, the terms thereof, the manner in which the breach occurred, the specific act or omission which you contend constituted a breach and the date of the breach. If you do not hold such a contention, please so indicate.

### Response and/or Objection:

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving any of its general or specific objections, Al Jazeera states that Winmar claimed it was entitled to payments from Al Jazeera that Winmar knew or should have known it was not entitled to under the Contract. Each Application and Certificate for Payment submitted by Winmar included the following sworn statement executed by an officer of Winmar:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief, the Work covered by this Application for Payment has been paid by the Contractor for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

However, based on Winmar's inability to produce documentation supporting material portions of the various Applications and Certificates for Payment submitted by Winmar or the spreadsheet attached to its March 20, 2008, interrogatory responses, Winmar has breached its obligation of good faith and fair dealing that is part of every contract under District of Columbia law with each Application and Certificate for Payment it submitted and by submitting the spreadsheet attached to its March 20, 2008, interrogatory responses. In addition, in so doing, at a minimum, Winmar breached Sections 5.1.4 and 5.1.5 of AIA Document A101-1997 as well as Sections 7.2.1, 9.3.2, 9.6.2, 9.6.5, 14.4.3 of AIA Document A201-1997.

**Interrogatory No. 5**

If you contend that any party to this action has at any time made any statement or admission against interest herein, state the basis for your contention and identify any and all documents related thereto, and all individuals with personal knowledge thereof.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera states that it currently does not so contend.

**Interrogatory No. 6**

Please describe in detail all facts and circumstances that you contend support all statements or defenses as listed in your Answer to the Third Party Complaint filed by Winmar in the above captioned matter.

**Response and/or Objection:**

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving any of its general or specific objections, Al Jazeera states that its Answer to the Third Party Complaint speaks for itself.

**Interrogatory No. 7**

Please describe in detail all facts and circumstances that you contend support all allegations contained in your Counter-complaint against Winmar.

**Response and/or Objection:**

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving any of its general or specific objections, Al Jazeera states that its Counterclaims speaks for themselves. In addition, Al Jazeera states that Winmar claimed it was entitled to payments from Al Jazeera that Winmar knew or should have known was not entitled to under the Contract. Each Application and Certificate for Payment submitted by Winmar included the following sworn statement executed by an officer of Winmar:

> The undersigned Contractor certifies that to the best of the Contractor's knowledge, information and belief, the Work covered by this Application for Payment has been paid by the Contractor

7

for Work for which previous Certificates for Payment were issued
and payments received from the Owner, and that current payment
shown herein is now due.

However, Winmar has been unable to document material portions of the amounts claimed

it was owed under the Contract in each instance it made a claim.  Those claims consist of: (a)

$1,363,463 for Application and Certificates for Payment Nos. 1, 2b and 3, prior to the

termination for convenience, (b) $653,449 due as its final payment under the contract pursuant to

Application and Certificate for Payment No. 3-Revision 1 (which previously had been in the

amount of $775,913) submitted on January 18, 2006, i.e., after the termination for convenience;

(c) $355,297 due as its final payment under the contract pursuant to Application and Certificate

for Payment No. 3-Revision 2 (which previously had been in the amount of $653,449) submitted

on January 25, 2006, and (d) $643,646, which is Winmar's current claim in the spreadsheet

attached to its March 20, 2008, interrogatory responses.  Because Winmar has the burden of

proof, and it has failed in carrying that burden based on Winmar's inability to produce

documentation supporting material portions of the various Applications and Certificates for

Payment submitted by Winmar or the spreadsheet attached to its March 20, 2008, interrogatory

responses, Winmar has been overpaid, as asserted in Al Jazeera's Counterclaims.

**Interrogatory No. 8**

     If you contend that this party or any of its agents, servants or employees admitted
liability or fault for the claims set forth in the pleadings, please set forth all facts and
circumstances which support any such contention, including but not limited to, the precise
substance of each admission, the person making each admission, the date of each admission, and
each individual with personal knowledge of any such facts and circumstances.

**Response and/or Objection:**

     Subject to and without waiving any of its general objections, and assuming that "this

party" refers to Winmar, Al Jazeera states that it currently does not so contend.

8

**Interrogatory No. 9**

If you contend that the party propounding these Interrogatories by its conduct undertook or assumed duties not set forth in the parties' contract, please set forth the facts upon which you base that contention, including but not limited to, the exact nature of the duties assumed or undertaken, the conduct by which the duties were assumed or undertaken, the date each such duty was undertaken, and the identity of all person with personal knowledge of the duties or the manner in which they were assumed or undertaken.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera states that it currently does not so contend, except to the extent that Winmar assumed obligations that are part of every contract under District of Columbia law including but not limited to the obligation of good faith and fair dealing.

**Interrogatory No. 10**

Please identify all photographs, designs, drawings, plats, diagrams, or other tangible objects relating to the Project or the subject property which are within your control or possession.

**Response and/or Objection:**

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and seeking information not relevant to any claim or defense in this action. Subject to and without waiving any of its general or specific objections, Al Jazeera states that to the extent non-privileged responsive documents in the possession or control of Al Jazeera relate to the Contract and are relevant to a claim or defense in this case, they will be made available for inspection and copying.

**Interrogatory No. 10**

Identify each employee, agent, contractor, consultant or former employee, agent, contractor or consultant of AJI who communicated with any employee, agent or contractor or any former employee, agent or contractor of Janson Design Group, Architect for the Project.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera states that it believes that in addition to counsel for Al Jazeera and those persons identified in the documents that will be made available for inspection and copying by Al Jazeera, the following persons had communications responsive to this interrogatory that relate to the Contract:

Mark G. Anderson, President, MGAC

Kris Collins, Vice President, MGAC

Michael Etherton, Vice President, MGAC

Gary Napier

Clive Brady

William Stebbins

Steve Jedowski

Stephen W. Nease, Jr.

Due to the passage of time and changes in personnel employed by Al Jazeera, the foregoing list cannot be considered exhaustive.

**Interrogatory No. 12**

Identify each employee, agent, contractor, consultant or former employee, agent, contractor or consultant of AJI who communicated with any employee, agent or contractor of any former employee, agent or contractor of QNB with respect to the facts and circumstances which form the substance of the parties' dispute with respect to the above captioned action.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera states that it believes that in addition to those persons identified in the documents produced by QNB or will be made available for inspection and copying by Al Jazeera, Gary Napier had communications

with QNB that relate to the payment at issue in QNB's Complaint against Winmar and counsel

for Al Jazeera has had communications with counsel for QNB.

### Interrogatory No. 13

Identify each employee, agent, contractor, consultant or former employee, agent, contractor or consultant of AJI who communicated with any employee, agent or contractor of any former employee, agent or contractor of any contractor or subcontractor for the Project.

### Response and/or Objection:

Subject to and without waiving any of its general objections, Al Jazeera states that this

interrogatory is unintelligible. Assuming that this interrogatory was intended to read "Identify

each employee, agent, contractor, consultant or former employee, agent, contractor or consultant

of AJI who communicated with any employee, agent or contractor or any former employee, agent

or contractor of any contractor or subcontractor for the Project," AJI believes that in addition to

counsel for Al Jazeera and those persons identified in the documents that will be made available

for inspection and copying by Al Jazeera, the following persons had communications responsive

to this interrogatory that relate to the Contract:

Mark G. Anderson, President, MGAC

Kris Collins, Vice President, MGAC

Michael Etherton, Vice President, MGAC

Gary Napier

Clive Brady

William Stebbins

Steve Jedowski

Stephen W. Nease, Jr.

11

Due to the passage of time and changes in personnel employed by Al Jazeera, the foregoing list cannot be considered exhaustive.

**Interrogatory No. 14**

Describe in detail, state fully the basis for, and identify all documents that support, your calculation and determination that AJI is entitled to a refund from Winmar in the amount of no less than $261,919 as stated in paragraph 38 of your Counter-complaint.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera states that on February 3, 2006, AJI informed Winmar, through counsel, that AJI owed nothing to Winmar and, to the contrary, AJI had overpaid Winmar by approximately $200,000. No mention of the $474,677 erroneous duplicate payment was made at that time, and it was not considered by AJI in calculating, based on the information then available, that Winmar had been overpaid by approximately $200,000. As a result, when by letter dated February 24, 2006, a copy of which was sent by email to Winmar and by email and regular mail to counsel for Winmar, AJI, through counsel, submitted in accordance with the provisions of the Contract a formal Claim to the Architect with respect to, *inter alia*, the refund due to AJI from Winmar as a result of Winmar having been overpaid.

In its February 24, 2006, letter, which was sent to Dennis C. Janson, Managing Partner of the Janson Design Group, in his capacity as Architect pursuant to Section 4.2 of the General Conditions of the Contract, titled "Architect's Administration of the Contract," AJI specifically invoked Section 4.2.11, which provided in relevant part:

> The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either of the Owner [AJI] or Contractor [Winmar]. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

In its letter, AJI made several requests of the Architect and one Claim as that term is

defined in Section 4.3.1 of the General Conditions. The first request of the Architect was as

follows:

> "By your letter to Chris Condon of Winmar dated
> January 5, 2005, you rescinded certification of Applications
> and Certificates for Payment Nos. 1, 2b, and 3, dated
> December 7, 2005, October 31, 2005, and November 30,
> 2005, respectively, totaling $1,363,463 (the "Rescission
> Letter"). The Rescission Letter stated that you were
> rescinding those certifications due to "a number of
> discrepancies" in those Applications and Certificates for
> Payment, "as well as the lack of appropriate supporting
> documentation." AJI understands that your determination
> that Winmar's supporting documentation was inadequate
> was based on your interpretation of the Contract, as the
> Architect, and your understanding of your obligations, and
> Winmar's, under the Contract. Please confirm that this
> understanding is correct."

By letter dated March 20, 2006, the Architect made the following ruling as to that

request:

> "As the Architect of record for this project, I did
> rescind certification of Applications and Certificates for
> Payment numbers 1, 2b and 3, dated December 7, 2005,
> October 31, 2005, and November 30, 2005, respectively
> based on my understanding and my interpretation of the
> Contract and the fact that Winmar did not provide
> appropriate supporting documentation and which invoices
> contained a number of discrepancies. The Application and
> Certification for Payment was initially approved in error
> and based on Section 9.5.1 of the General Conditions my
> rescission was appropriate."

The second request AJI made of the Architect in AJI's February 24, 2006, letter was as

follows:

> "If AJI is correct in understanding that you
> rescinded the certification of Applications and Certificates
> for Payment Nos. 1, 2b, and 3 based on your interpretation
> of the obligations imposed on Winmar under the Contract,
> AJI then requests that you, as the Architect, rescind the

>portions of Application and Certificate for Payment No. 2
>that also lack the supporting documentation required by the
>Contract.  Specifically, AJI requests that you rescind
>certification of Application and Certificate for Payment No.
>2's requested payment of $157,000 for Change Order No. 1
>and requested payment of $225,000 for Change Order No.
>2."

In his letter dated March 20, 2006, the Architect made the following ruling as to that request:

>Attached under separate heading is my letter
>rescinding the certification of Application and Certification
>of Payment No. 2 containing Change Order No. 1 for [sic]
>and Change Order No. 2 for lack of appropriate
>documentation as interpreted under the Contract.

The third request AJI made of the Architect in AJI's February 24, 2006, letter was as follows:

>"AJI requests that you, as the Architect, issue a
>determination, pursuant to Section 4.2.11 of the General
>Conditions, that Winmar has not submitted any Claims (as
>defined by Section 4.3.1) and that there are no Claims by
>Winmar currently pending before you as the Architect."

In his letter dated March 20, 2006, the Architect made the following ruling as to AJI's third request:

>"Pursuant to Section 4.2.11 of the General
>Conditions, Winmar has not submitted any Claims as
>defined by section 4.3.1 and that there are no claims by
>Winmar currently pending before me as the Architect of
>record."

In its February 24, 2006, letter, AJI also made the following Claim against Winmar:

>"Pursuant to Sections 4.3 and 4.4 of the General
>Conditions, AJI requests that you determine, in your
>capacity as the Architect, that Winmar has been overpaid
>by AJI based on the services performed by Winmar prior to
>termination of the Contract and that AJI therefore is
>entitled to a refund from Winmar in the amount of
>$855,976, less that portion of the overhead and fee to which

14

Winmar is determined to be entitled as a result of AJI's termination of the Contract."

In his letter dated March 20, 2006, the Architect made the following ruling as to AJI's Claim against Winmar:

"Pursuant to Section 4.3 and 4.4 of the General Conditions and based on the services performed by Winmar prior to Al Jazeera International's termination of the Contract, Winmar has been over paid by the amount of $855,976 and Al Jazeera International is due a refund in that amount less that portion of the overhead and fee for which Winmar may be entitled as a result of Al Jazeera International's termination of the Contract.

Pursuant to Section 4.4.5 of the General Conditions, "[t]he approval or rejection of a Claim by the Architect shall be final and binding on the parties but subject to mediation and litigation."

The refund to AJI of $855,976 (less that portion of the overhead and fee to which Winmar is determined to be entitled pursuant to the Termination for Convenience provision of the contract) that the Architect ruled needed to be made by Winmar must be reduced to reflect the fact that said figure (a) included the $474,677 duplicate payment erroneously made to Winmar by QNB, for which QNB has reimbursed AJI; (b) included a $3,000 error made by AJI in setting out the amount of the duplicate payment as $477,677 in AJI's February 24, 2006, letter to the Architect rather than $474,677; and (c) did not include the March 9, 2006, payment Winmar made to AJI in the amount of $119,380, which could not have been included in AJI's February 24, 2006, letter to the Architect and which AJI has credited to the refund due to it from Winmar.

Accordingly, as of the date Al Jazeera filed its Counterclaims, Al Jazeera was of the view, for the reasons set forth therein, that the net amount of the refund Winmar owes Al Jazeera was $261,919 (less that portion of the overhead and fee to which Winmar is determined to be

entitled pursuant to the Termination for Convenience provision of the contract). However, Al

Jazeera is still in the process of evaluating and quantifying the actual amounts it overpaid

Winmar.

### Interrogatory No. 15

Describe in detail, state fully the basis for, and identify all documents which support
your calculation and estimation that the rough finish and carpentry portion of the project was
only 14% complete as of the date of Winmar's termination from the Project as indicated in Mr.
Wiesenfelder's February 24, 2006 letter to Dennis C. Janson. A copy of the letter is attached hereto
as Exhibit 1.

### Response and/or Objection:

Subject to and without waiving any of its general or specific objections, Al Jazeera states

in addition to what is stated in Exhibit 1 to the interrogatories, the 14% figure was based on

reviewing the drawings and specifications to determine what work was required for the Rough

Finish and Carpentry portion of the Contract and comparing that to the actual work completed

by Winmar therefor, which consisted of certain blocking in the walls. Winmar has copies of the

drawings and specifications; however, Winmar has failed to produce any documents showing

any labor or materials for the Rough Finish and Carpentry portion of the Contract. To the

extent that Al Jazeera has additional non-privileged responsive documents relevant to the Rough

Finish and Carpentry portion of the Contract, they will be made available for inspection and

copying. Al Jazeera is in the process of evaluating and quantifying the portion of the Rough

Finish and Carpentry line item Winmar in fact completed as of the Termination for

Convenience.

### Interrogatory No. 16

Describe in detail, state fully the basis for, and identify all documents which support,
your calculation and estimation that the Drywall partitions and framing portion of the project
was only 26% complete as of the date of Winmar's termination from the Project, as indicated in
the letter attached hereto as Exhibit 1.

**Response and/or Objection:**

Subject to and without waiving any of its general or specific objections, Al Jazeera states

in addition to what is stated in Exhibit 1 to the interrogatories, the 26% figure was based on

reviewing the drawings and specifications to determine what work was required for the Drywall

Partitions and Framing portion of the Contract and comparing that to the actual work completed

by Winmar therefor, which consisted of some drywall stacked on the floor and some framing

being done.  Winmar has copies of the drawings and specifications; however, Winmar has failed

to produce any documents showing any labor or materials for the Drywall Partitions and

Framing portion of the Contract other than two bills for materials from Capitol Building totaling

about $6,000 for drywall, framing and screws.  To the extent that Al Jazeera has additional non-

privileged responsive documents relevant to the Drywall Partitions and Framing portion of the

Contract, they will be made available for inspection and copying.  Al Jazeera is in the process of

evaluating and quantifying the portion of the Drywall Partitions and Framing line item Winmar

in fact completed as of the Termination for Convenience.

**Interrogatory No. 17**

Describe in detail, state fully the basis for, and identify all documents which support,
your calculation and estimation that the Fire Protection portion of the Project was only 21%
complete as of the date of Winmar's termination from the Project, as indicated in the letter
attached hereto as Exhibit 1.

**Response and/or Objection:**

Subject to and without waiving any of its general or specific objections, Al Jazeera states

in addition to what is stated in Exhibit 1 to the interrogatories, the 21% figure was based on

reviewing the drawings and specifications to determine what work was required for the Fire

Protection portion of the Contract and comparing that to the actual work completed by Winmar

therefor.  Winmar has copies of the drawings and specifications.  Al Jazeera's understanding is

17

that Winmar's subcontract with American Automatic Sprinkler covered 100 percent of this line

item and that, based on American Automatic Sprinkler's invoice to Winmar, 27 percent of this

work was completed ($9,967.50 divided by $36,350 equals 27 percent). However, Al Jazeera is

in the process of evaluating and quantifying the portion of the Fire Protection line item Winmar

in fact completed as of the Termination for Convenience. To the extent that Al Jazeera has

additional non-privileged responsive documents relevant to the Fire Protection portion of the

Contract, they will be made available for inspection and copying.

**Interrogatory No. 18**

    Describe in detail, state fully the basis for, and identify all documents which support,
your calculation of any Overhead and Fee, if any, that you claim Winmar is entitled to under the
terms of the parties' contract.

**Response and/or Objection:**

    Subject to and without waiving any of its general or specific objections, Al Jazeera states

that Winmar has the burden of proof as to each element of its claims against Al Jazeera. To the

extent this interrogatory is seeking Al Jazeera's position with respect to Winmar's claim for

Overhead and Fee, Al Jazeera views them as separate elements that Winmar has improperly

combined in various aspects of its claims. Al Jazeera further states that it views Winmar's

entitlement to Overhead and to Fee differently for purposes of the base amount of the Contract

than for signed Change Orders. One approach for the base contract would be allocate Overhead

based on the percentage of the work actually completed for the base contract and for each

Change Order. If no work was done on a line item or a Change Order, no Overhead is due. With

respect to Fee for the base contract and for each Change Order, Al Jazeera views that as

controlled by Sections 4.3.10 and 14.4.3 of AIA Document A201-1997.

**Interrogatory No. 19**

Describe in detail all facts upon which you intend to rely, state fully the basis for, and identify all documents which support any affirmative defense as stated in your Answer to Winmar's Third Party Complaint.

**Response and/or Objection:**

Subject to and without waiving any of its general or specific objections, Al Jazeera states that its claim of laches is based on the length of time it took Winmar to assert any claims against Al Jazeera, during which period of time memories faded and personnel familiar with the contract left the employ of Al Jazeera.

Al Jazeera's claim of unclean hands is based on Winmar's conduct as set out in Al Jazeera's responses to interrogatories 1, 3, 4 and 7, which responses are hereby incorporated by reference.

Al Jazeera's fourth, fifth, sixth and seventh affirmative defenses are all based on the fact that Winmar was paid more than it was entitled to under the Contract and knew or should have known that it was not entitled to all the monies it received or was claiming, for the reasons set out in Al Jazeera's responses to interrogatories 1, 3, 4 and 7, which responses are hereby incorporated by reference.

**Interrogatory No. 20**

With regard to each inspection which has been conducted of the subject property, at any time, including during construction, please set forth the date of each inspection, the person making each inspection, the scope (including areas) of each inspection, the results of each inspection, and each individual with personal knowledge of such facts and circumstances.

**Response and/or Objection:**

Al Jazeera objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome, and seeking information not relevant to any claim or defense in this action.

**Interrogatory No. 21**

Please identify all persons employed by you to manage and/or supervise the construction of the project.

**Response and/or Objection:**

Subject to and without waiving any of its general objections, Al Jazeera states that

Winmar and Janson Design Group had responsibility for various aspects of the management and

supervision of the work to be performed under the Contract.  In addition to those individuals

identified in the documents produced by Winmar or to be made available by Al Jazeera for

inspection and copying, Gary Napier, Clive Brady, William Stebbins, Steve Jedowski and

Stephen W. Nease, Jr. also had varying roles.

AL JAZEERA INTERNATIONAL

Dated:  July 2, 2008

By: _____

Leslie H. Wiesenfelder
(D.C. Bar No. 173500)

DOW LOHNES PLLC
1200 New Hampshire Ave., N.W.
Suite 800
Washington, DC 20036
Tel.:  (202) 776-2726
Fax:  (202) 776-2222

Attorneys for Third-Party Defendant
and Counterclaim Winmar Al Jazeera
International

20

## VERIFICATION OF WILLIAM STEBBINS

I, William Stebbins, based on my personal knowledge, information and belief, and after consultation with counsel, declare as follows:

1.    In my capacity as Bureau Chief for the Americas of Al Jazeera, I have reviewed Al Jazeera International's Responses and Objections to Winmar's First Set of Interrogatories (collectively, the "Interrogatory Responses").

2.    I verify, under penalty of perjury under the laws of the United States of America, that the substantive responses contained in the Interrogatory Responses are true and accurate to the best of my knowledge, information and belief.

_____
William Stebbins

## CERTIFICATE OF SERVICE

I, Leslie H. Wiesenfelder, hereby certify that a copy of the foregoing was served

on the following in the manner indicated below on this 2nd day of July, 2008:

Trevor M. Ashbarry (Hand Delivery)
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C.  20036

Alan T. Dickey (Regular Mail)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037

_____
Leslie H. Wiesenfelder

21

## VERIFICATION OF WILLIAM STEBBINS

I, William Stebbins, based on my personal knowledge, information and belief, and after consultation with counsel, declare as follows:

1.    In my capacity as Bureau Chief for the Americas of Al Jazeera, I have reviewed Al Jazeera International's Responses and Objections to Winmar's First Set of Interrogatories (collectively, the "Interrogatory Responses").

2.    I verify, under penalty of perjury under the laws of the United States of America, that the substantive responses contained in the Interrogatory Responses are true and accurate to the best of my knowledge, information and belief.

_____
William Stebbins

## CERTIFICATE OF SERVICE

I, Leslie H. Wiesenfelder, hereby certify that a copy of the foregoing was served

on the following in the manner indicated below on this 2nd day of July, 2008:

Trevor M. Ashbarry (Email and Regular Mail)
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C.  20036

Alan T. Dickey (Email and Regular Mail)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037

_____
Leslie H. Wiesenfelder

21