# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QATAR NATIONAL BANK                    :
                                       :
                Plaintiff,             :
                                       :
        v.                             :    Civil Action No.: 1:06CV-01307-GK
                                       :
WINMAR, INC. d/b/a                     :
WINMAR CONSTRUCTION                    :
                                       :
                Defendant and Third Party    :
                Plaintiff              :
_____      :
                                       :
WINMAR, INC.,                          :
                Third Party Plaintiff  :
                and Counterclaim       :
                Defendant,             :
                                       :
        v.                             :
                                       :
AL JAZEERA INTERNATIONAL,              :
                Third Party Defendant  :
                and Counterclaim       :
                Plaintiff              :

### WINMAR, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant/Third Party

Plaintiff/Counterclaim Defendant, Winmar, Inc. ("Winmar"), by counsel, propounds the

following Interrogatories upon Third Party Defendant/Counterclaim Plaintiff Al Jazeera

International ("AJI") subject to the conditions set forth below:

### INSTRUCTIONS

A.     All information is to be divulged which is in your possession, custody, or control,

including information in the possession, custody, or control of your attorneys, investigators, agents,

employees, officers, accountants, bankers, brokers, insurers, independent contractors,

S:\070\06DC013\Interrogatories to AJI.doc

subcontractors, consultants, experts, or other representatives.

     B.    In answering these Interrogatories, you are required to make a diligent search for all available sources of information within your actual and constructive possession, custody, control, or care and not merely such information known of your own personal knowledge.

     C.    Where a particular Interrogatory calls for a response that involves more than one part, please set forth each of your responses separately.

     D.    If any Interrogatory calls for information which is not available to you or which is only partially available, please provide whatever information is available on the particular subject, including estimates and impressions, followed by a brief statement setting forth the reason or reasons why complete information is now unavailable and further stating what efforts were made and by whom to obtain the information requested in the unanswered portions and the estimated date on which the information necessary to fully respond to the Interrogatory will become available.

     E.    Any request embodied in an Interrogatory to "identify" any person or persons shall be deemed to include the following request:

     1.    With respect to a natural person, that person's:

        a.    full name;

        b.    employer or other organization or entity with which the person is affiliated;

        c.    present or last known business or home address and telephone number; and

        d.    job title(s).

     2.    With respect to other persons:

        a.    the full name of the organization, entity, or person,

        b.    the name, employer, job title, business address, telephone number, and place of work of each individual employed by, affiliated with or representing such person with whom

communications have been made relating to the subject matter of the interrogatory.

      F.     In any request to "list", "describe", or "identify" any document, as defined above, please:

          1.     Designate the type of document (i.e., letter, contract, map, etc.);

          2.     State the title of the document, the date, the author, any file, reference, or identifying number or symbol connected with the document;

          3.     Identify all persons who wrote, signed, initialed, dictated, or otherwise participated in the creation of said document or received a copy thereof;

          4.     State the document's general subject matter;

          5.     Identify all persons to whom the document was addressed, if any;

          6.     State the present or last known location of the document and identify the person known or believed to have possession, custody, or control of the document; and

          7.     If the document was, but no longer is, in your possession, custody, and control, state if the document was lost or destroyed or what other disposition was made of it and the reasons therefor.

      G.     If a document is claimed to be privileged or attorney work product please provide the following information in addition to the information requested in F. above.

          1.     Identify the general subject matter claimed to be privileged; and

          2.     State the ground or grounds upon which you base your claim of privilege.

      H.     The Interrogatories are intended as continuing Interrogatories, requiring you to answer by Supplemental Answer, setting forth any further material information within the scope of the Interrogatories as may be acquired by you following your original Answer.

## DEFINITIONS

As used in this request, the following terms are defined as indicated:

A.    "Winmar" refers to Defendant/Third Party Defendant/Counterclaim Defendant and any or all of its agents, representatives, accountants, attorneys, engineers, experts, independent contractors, other governmental agency(ies) and any person acting or purporting to act on its behalf.

B.    "AJI" "Third Party Defendant" "You," or "Your" means the Third Party Defendant/Counterclaim Plaintiff Al Jazeera International, and includes any and all present or former officers, directors, agents and employees, representatives, accountants, attorneys, contractors, and any person acting or purporting to act on its behalf.

C.    "QNB" means Plaintiff Qatar National Bank and includes any and all present or former officers, directors, agents and employees, representatives, accountants, attorneys, contractors, and any person acting or purporting to act on its behalf.

D.    "Document" has the broadest connotation ascribed to it under the Federal Rules of Civil Procedure. The term "document" shall include writings, drawings, graphs, charts, identical copy or draft thereof, any data or information stored on magnetic or optical storage media as an active file or files (readily readable by one or more computer applications or forensics software), any deleted but recoverable electronic files on such media, any electronic file fragments (files that have been deleted and partially overwritten with new data), and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some, but not all of, previously stored data).

E.    "Identify," when referring to a person or entity, shall require you to list the name, address, and telephone number of the person or entity or, if you do not have that information available, the best description you have of who that person or entity is, where that person or entity

can be found, and any sources of documents or other information that can be used to find that person or entity.

F.    "Describe" means to describe completely and accurately to the best of your ability the subject matter about which inquiry is made, using the most factual statement of which you are capable.

G.    "Communication" means the transmittal of information by correspondence, memoranda, telephone, facsimile, e-mail, and other methods of transmitting information (in the form of facts, ideas, inquiries, or otherwise).

H.    "Concerning" or "relating" means referring. to, describing, evidencing or constituting, "Person" means an individual, voluntary association, corporation, limited liability company, partnership, joint venture, trust, estate, government agency or commission, and any other form of business, governmental or judicial entity recognized by law.

I.    The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope of the request.

J.    References to the singular include the plural, and references to the plural include the singular.

K.    The past verb tense includes the present verb tense, and the present verb tense includes the past verb tense.

L.    The term "Project" shall mean anything related to the design and construction of the build-out of office space at 1627 K Street NW, Washington, DC 20006.

M.    The term "Contract" as it refers to the Project shall mean the modified AIA A-101 Standard Contract Between Owner and Contractor, together with a modified AIA A201 General

Conditions, between Winmar and AJI.

## INTERROGATORIES

**INTERROGATORY NO. 1:**        Please describe each element of the damages claimed by AJI, state the amount of each element of damage, set forth your method of calculating each element of damage and identify each individual with personal knowledge of your claim for damages.

**INTERROGATORY NO. 2:**        If you contend that non-payment for the services this party provided was justified, excused, or in anyway not required for whatever reason, please describe, in detail, the facts and circumstances that form the basis of any such contention.

**INTERROGATORY NO. 3:**        If you contend that this party or any of its agents, servants or employees, failed to perform any obligations required for the project, please describe, in detail, the facts and circumstances that form the basis of any such contention.  As to each such contention, state the obligation that was allegedly not performed, the provision of the agreement that you claim was violated by the alleged nonperformance, and identify any and all documents related thereto.

**INTERROGATORY NO. 4:**        If it is your contention that the party propounding these Interrogatories breached any agreement, please set forth the facts upon which you base that contention, including, but not limited to, the identity of each agreement breached, the specific provision or provisions breached, the terms thereof, the manner in which the breach occurred, the specific act or omission which you contend constituted a breach and the date of the breach.  If you do not hold such a contention, please so indicate.

**INTERROGATORY NO. 5:**        If you contend that any party to this action has at any time made any statement or admission against interest herein, state the basis for your contention and

identify any and all documents related thereto, and all individuals with personal knowledge thereof.

**INTERROGATORY NO. 6:**        Please describe in detail all facts and circumstances that you contend support all statements or defenses as listed in your Answer to the Third Party Complaint filed by Winmar in the above captioned matter.

**INTERROGATORY NO. 7:**        Please describe in detail all facts and circumstances that you contend support all allegations contained in your Counter-complaint against Winmar.

**INTERROGATORY NO. 8:**        If you contend that this party or any of its agents, servants or employees admitted liability or fault for the claims set forth in the pleadings, please set forth all facts and circumstances which support any such contention, including but not limited to, the precise substance of each admission, the person making each admission, the date of each admission, and each individual with personal knowledge of any such facts and circumstances.

**INTERROGATORY NO. 9:**        If you contend that the party propounding these Interrogatories by its conduct undertook or assumed duties not set forth in the parties' contract, please set forth the facts upon which you base that contention, including but not limited to, the exact nature of the duties assumed or undertaken, the conduct by which the duties were assumed or undertaken, the date each such duty was undertaken, and the identity of all person with personal knowledge of the duties or the manner in which they were assumed or undertaken.

**INTERROGATORY NO. 10:**        Please identify all photographs, designs, drawings, plats, diagrams, or other tangible objects relating to the Project or the subject property which are within your control or possession.

**INTERROGATORY NO. 11:**        Identify each employee, agent, contractor, consultant or former employee, agent, contractor or consultant of AJI who communicated with any employee,

agent or contractor or any former employee, agent or contractor of Janson Design Group, Architect for the Project.

**INTERROGATORY NO. 12:**    Identify each employee, agent, contractor, consultant or former employee, agent, contractor or consultant of AJI who communicated with any employee, agent or contractor of any former employee, agent or contractor of QNB with respect to the facts and circumstances which form the substance of the parties' dispute with respect to the above captioned action.

**INTERROGATORY NO. 13:**    Identify each employee, agent, contractor, consultant or former employee, agent, contractor or consultant of AJI who communicated with any employee, agent or contractor of any former employee, agent or contractor of any contractor or subcontractor for the Project.

**INTERROGATORY NO. 14:**    Describe in detail, state fully the basis for, and identify all documents that support, your calculation and determination that AJI is entitled to a refund from Winmar in the amount of no less than $261,919 as stated in paragraph 38 of your Counter-complaint.

**INTERROGATORY NO. 15:**    Describe in detail, state fully the basis for, and identify all documents which support your calculation and estimation that the rough finish and carpentry portion of the project was only 14% complete as of the date of Winmar's termination from the Project as indicated in Mr. Wiesenfelder's February 24, 2006 letter to Dennis C. Janson.  A copy of the letter is attached hereto as Exhibit 1.

**INTERROGATORY NO. 16:**    Describe in detail, state fully the basis for, and identify all documents which support, your calculation and estimation that the Drywall partitions and framing portion of the project was only 26% complete as of the date of Winmar's termination from the

Project, as indicated in the letter attached hereto as Exhibit 1.

**INTERROGATORY NO. 17:**      Describe in detail, state fully the basis for, and identify all documents which support, your calculation and estimation that the Fire Protection portion of the Project was only 21% complete as of the date of Winmar's termination from the Project, as indicated in the letter attached hereto as Exhibit 1.

**INTERROGATORY NO. 18:**      Describe in detail, state fully the basis for, and identify all documents which support, your calculation of any Overhead and Fee, if any, that you claim Winmar is entitled to under the terms of the parties' contract.

**INTERROGATORY NO. 19:**      Describe in detail all facts upon which you intend to rely, state fully the basis for, and identify all documents which support any affirmative defense as stated in your Answer to Winmar's Third Party Complaint.

**INTERROGATORY NO. 20:**      With regard to each inspection which has been conducted of the subject property, at any time, including during construction, please set forth the date of each inspection, the person making each inspection, the scope (including areas) of each inspection, the results of each inspection, and each individual with personal knowledge of such facts and circumstances.

**INTERROGATORY NO. 21:**      Please identify all persons employed by you to manage and/or supervise the construction of the project.

Respectfully submitted,

LEE & McSHANE, P.C.

By: _____

James F. Lee, Jr., (DC Bar No. 247718)
Trevor M. Ashbarry, (DC Bar No.980359)
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C. 20036

> *Counsel for Defendant and Third-Party
> Plaintiff, Winmar, Inc. d/b/a Winmar
> Construction*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Request for Production of Documents to Plaintiff Qatar National Bank was served this 2nd day of June, 2008, as indicated below:

| VIA US MAIL | VIA HAND DELIVERY |
|---|---|
| Alan T. Dickey, Esq.<br>Patton Boggs, LLP<br>2550 M Street, N.W.<br>Washington, DC 20037<br>*Counsel for Plaintiff Qatar National Bank* | Leslie Hugh Wiesenfelder<br>DOW LOHNES PLLC<br>1200 New Hampshire Avenue, NW,Suite 800<br>Washington, DC 20036<br>*Counsel for Al-Jazeera International* |

_____
Trevor M. Ashbarry, Esquire

# DOW, LOHNES & ALBERTSON, PLLC
## ATTORNEYS AT LAW

**WASHINGTON, D.C.**

LESLIE H. WIESENFELDER
DIRECT DIAL 202-776-2726
lwiesen@dowlohnes.com

1200 NEW HAMPSHIRE AVENUE, N.W. · SUITE 800 · WASHINGTON, D.C. 20036-6802
TELEPHONE 202-776-2000 · FACSIMILE 202-776-2222
www.dowlohnes.com

ONE RAVINIA DRIVE · SUITE 1600
ATLANTA, GEORGIA 30346-2108
TELEPHONE 770-901-8800
FACSIMILE 770-901-8874

February 24, 2006

**VIA EMAIL & UPS**

Dennis C. Janson
Managing Partner
Janson Design Group
257 Park Avenue South, Suite 303
New York, NY 10010

**Re:    Contract Between Al Jazeera International and Winmar, Inc.**

Dear Mr. Janson:

As you know, this firm represents Al Jazeera International ("AJI"). In this capacity, we write to you in your capacity as Architect with respect to AJI's contract with Winmar, Inc. ("Winmar") for the 1627 K Street, N.W., Washington, D.C. project (the "Contract"). As you also know, AJI terminated the Contract for convenience pursuant to Section 14.4 of the General Conditions as of the close of business, January 11, 2006.

Section 4.2.11 of the General Conditions provides in relevant part:

> The Architect will interpret and decide matters concerning performance under and requirements of, the Contract Documents on written request of either the Owner or Contractor. The Architect's response to such requests shall be made in writing within any time limits agreed upon or otherwise with reasonable promptness.

In addition, Section 4.3 of the General Conditions deals with Claims and Disputes. In light of the foregoing, and in accordance with Section 4.2.11, AJI hereby formally requests the following:

1.    By your letter to Chris Condon of Winmar dated January 5, 2005, you rescinded certification of Applications and Certificates for Payment Nos. 1, 2b, and 3, dated December 7, 2005, October 31, 2005, and November 30, 2005, respectively, totaling $1,363,463 (the "Rescission Letter"). The Rescission Letter stated that you were rescinding those certifications due to "a number of discrepancies" in those Applications and Certificates for Payment, "as well as the lack of appropriate supporting documentation." AJI understands that your determination



Dennis C. Janson
February 24, 2006
Page 2

that Winmar's supporting documentation was inadequate was based on your interpretation of the
Contract, as the Architect, and your understanding of your obligations, and Winmar's, under the
Contract. Please confirm that this understanding is correct.

     2.     If AJI is correct in understanding that you rescinded the certification of
Applications and Certificates for Payment Nos. 1, 2b, and 3 based on your interpretation of the
obligations imposed on Winmar under the Contract, AJI then requests that you, as the Architect,
rescind the portions of Application and Certificate for Payment No. 2 that also lack the
supporting documentation required by the Contract. Specifically, AJI requests that you rescind
certification of Application and Certificate for Payment No. 2's requested payment of $157,000
for Change Order No. 1 and requested payment of $225,000 for Change Order No. 2.

     3.     AJI requests that you, as the Architect, issue a determination, pursuant to Section
4.2.11 of the General Conditions, that Winmar has not submitted any Claims (as defined by
Section 4.3.1) and that there are no Claims by Winmar currently pending before you as the
Architect.

     4.     Pursuant to Sections 4.3 and 4.4 of the General Conditions, AJI requests that you
determine, in your capacity as the Architect, that Winmar has been overpaid by AJI based on the
services performed by Winmar prior to termination of the Contract and that AJI therefore is
entitled to a refund from Winmar in the amount of $855,976, less that portion of the overhead
and fee to which Winmar is determined to be entitled as a result of AJI's termination of the
Contract.

     Each of these is addressed in full below.

**1.    The Rescission Letter Was Based On The Architect's Determination That Winmar
Had Failed To Document Its Applications And Certificates For Payment As
Required By The Contract**

     Your letter of January 6, 2006, to Chris Condon of Winmar stated that you had rescinded
certification of Winmar's Applications and Certificates for Payment Nos. 1, 2b, and 3 pursuant
to Section 9.5 of the General Conditions. Section 9.5.1 states in relevant part:

> The Architect may withhold a Certificate for Payment in
> whole or in part, to the extent reasonably necessary to protect the
> Owner, if in the Architect's opinion the representations to the
> Owner required by Section 9.4.2 cannot be made. . . . The
> Architect may also withhold a Certificate for Payment or, because
> of subsequently discovered evidence, may nullify the whole or a
> part of a Certificate for Payment previously issued, to such extent
> as may be necessary in the Architect's opinion to protect the
> Owner from loss for which the Contractor is responsible. . . .

Dennis C. Janson
February 24, 2006
Page 3

Please confirm that you issued the Rescission Letter based on your judgment, as the Architect, that your office had erred in certifying the subject Applications and Certificates for Payment and that rescission was therefore appropriate under Section 9.5.1.

Your letter to Chris Condon of January 6, 2006, requested that Winmar provide certain information, described in the letter, to support its Application and Certificate for Payment in the amount of $1,363,463. AJI requests that you state, pursuant to Section 4.2.11, whether it is your judgment, as the Architect, that Winmar is required to provide the requested information as a condition for receiving payment.

If your Rescission Letter and your follow-up letter of January 6 did not constitute your determination regarding the nature and extent of the documentation Winmar is obligated to provide under the Contract to support its entitlement to payment, AJI hereby requests that you formally determine and describe the documentation that Winmar must provide to support its entitlement to payment.

## 2.    The Amounts Included In Winmar's Application And Certificate for Payment No. 2 For Change Orders Nos. 1 and 2 Should Be Rescinded

AJI believes that when you issued your Rescission Letter, you should also have rescinded certification of Application and Certificate for Payment No. 2 for Change Orders Nos. 1 and 2, in the amounts of $157,000 and $225,000, respectively, because Winmar had not provided any documentation supporting them.

Therefore, AJI requests that you determine that those portion of Certificate and Application for Payment No. 2 are rescinded.

## 3.    Winmar Has No Claim Pending Before The Architect

As AJI reads the Contract, as a result of AJI's termination of the Contract for convenience, Winmar became obligated to submit a Claim under the Contract for whatever amount it seeks as a final payment under the Contract. AJI's understanding is based on Section 4.3.1 of the General Conditions, which provides:

> Definition. A Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim.

Please indicate whether you, as the Architect, agree with AJI's reading of the Contract. If you do, please indicate whether you also agree that any such Claim that Winmar submits for

Dennis C. Janson
February 24, 2006
Page 4

final payment under the Contract must comply with the standards established in your Rescission Letter and your follow-up letter of January 6. Finally, AJI would also appreciate your confirming that Winmar has not submitted such a Claim, and that Winmar has no Claim presently pending before you.

### 4.    Winmar Has Already Been Overpaid And Owes A Refund to AJI

As reflected in the Rescission Letter, before AJI terminated the Contract for convenience, Winmar was claiming that it was entitled to be paid an additional $1,363,463 over and above the $1,119,841 it had already received.

On January 18, 2006, i.e., after AJI's termination of the Contract for convenience, Winmar submitted a 2-page Application and Certificate for Payment in the amount of $653,449 to the Owner's Representative, Mark G. Anderson Consultants ("MGAC"). MGAC forwarded this application to you, as the Architect. You rejected that Application and Certificate for Payment due to the lack of any supporting documentation.

On January 25, 2006, counsel for Winmar provided undersigned counsel with still another Application and Certificate for Payment, this one dated January 23, 2006, in the amount of $355,297, which did include some supporting documentation. Counsel for Winmar's letter indicates that a complete copy was provided to you, as the Architect. That $355,297 was the product of the following calculation:

| | |
|---|---|
| Total Completed and Stored to Date per Winmar | $1,475,135 |
| Less Previous Payments to Winmar per Winmar | $1,119,838 |
| Total Claimed Due to Winmar | $355,297 |

However, on January 31, 2006, through the mistake of AJI's bank, Winmar was paid an additional $477,677, which Winmar has refused to return in whole or in part. This refusal continues even in the face of the fact that based on Winmar's own claim of $355,297, it has now received $122,380 more than even it believes it is entitled to. In any event, as a result, the amount which Winmar has actually been paid is not $1,119,838 but rather $1,597,515. Taking this fact into account, the above calculation becomes as follows:

| | |
|---|---|
| Total Completed and Stored to Date per Winmar | $1,475,135 |
| Less Previous Payments to Winmar | $1,597,515 |
| Total Claimed Due to Winmar | ($122,380) |

Moreover, to the extent items included in the $1,475,135 were not for work completed or for materials and equipment delivered and suitably stored as required by Section 9.3.2 of the

Dennis C. Janson
February 24, 2006
Page 5

General Conditions ("Completed and Stored to Date"), the overpayment to Winmar must be increased.[1] The following is the list of items included in $1,475,135 that need to be adjusted:

•

### Change Orders

For the convenience of the Architect, Winmar and AJI, AJI is willing to credit Winmar with 100% of all amounts it paid to any subcontractor in connection with the Contract. This credit will be applied to the base contract. As a result, AJI will add all of those payments to subcontractors to the base contract amount Winmar has claimed. Where that results (as shown below) in an increase to the amount Winmar is claiming for a given item, AJI has increased the amount of that item dollar-for-dollar for what was paid to a subcontractor.

This has no negative impact on Winmar and simplifies the process of determining the net amount of the overpayment to Winmar by eliminating any issues regarding how Winmar may have intended a payment be applied versus how a given subcontractor applied that payment.

Accordingly, for change orders, AJI agrees to 100% of the $24,500 in suspension fees and to the $12,345 Winmar actually paid to the Buckhoist supplier. Thus, of the total of $576,504 claimed for change orders, Winmar is entitled to $36,845 and the amount it is claiming as "Completed and Stored to Date" should be reduced by $539,659.

To the extent that you, as the Architect, disagree with AJI treating change orders in this manner and are of the opinion that, under the Contract, Winmar is due a higher or lower amount than $36,845 for any of these change orders, your decision will increase or decrease the adjustment AJI is claiming for these change orders.

### Demolition/Site Work

For Demolition/Site Work, the approved contract amount is $9,500. Winmar claims this item is 100% complete and seeks $9,500. AJI agrees that this item is 100% complete and

---

[1] Section 9.3.2 provided:

> Unless otherwise provided in the Contract Documents, payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment suitably stored off the site at a location agreed upon in writing. Payment for materials and equipment stored on or off the site shall be conditioned upon compliance by the Contractor with procedures satisfactory to the Owner to establish the Owner's title to such materials and equipment or otherwise protect the Owner's interest, and shall include the costs of, storage and transportation to the site for such materials and equipment stored off the site.

Dennis C. Janson
February 24, 2006
Page 6

therefore AJI is not claiming any adjustment to the amount Winmar is claiming as "Completed and Stored to Date" based on this item.

Nevertheless, to the extent that you, as the Architect, based on your knowledge of the job, believe that a higher or lower amount than $9,500 for work done on this item is warranted, your decision will increase or decrease the amount Winmar is claiming based on this item.

## Rough Finished Carpentry

For the Rough Finished Carpentry, the approved contract amount is $36,525. Winmar claims this item was 40% done and seeks $14,610. All of this work was to have been performed by Winmar itself. However, AJI estimates that only 14%, or $5,000 worth, of this work has been done, and all of that was for blocking and hoist landings. No work has been done on the following: elevator protection, site protection, doors/frames/hardware installation or blocking for studio partition and windows.

Therefore, for this item, AJI contends that the amount Winmar is claiming as "Completed and Stored to Date" should be reduced by $9,610. Nevertheless, to the extent that you, as the Architect, based on your knowledge of the job, believe that a higher or lower estimate than $5,000 for work done on this item is warranted, your decision will increase or decrease the $9,610 reduction AJI is claiming for this item.

## Drywall Partitions & Framing

For the Drywall Partitions & Framing, the approved contract amount is $156,215. Winmar claims this item was 75% complete and seeks $117,161; however, AJI estimates this item is only 26% complete because the framing is only 70% complete on the 7th floor and 10% complete on the 4th floor; some drywall has been stacked on the floor, but none was hung; no drywall hanging, taping or finishing was done; no work was done on ceiling grids or ceilings; and there is no acoustic material on site or installed. In addition, neither Winmar nor its counsel has provided any documentation showing that any acoustic material has been ordered or paid for.

Therefore, for this item, AJI contends that the amount Winmar is claiming as "Completed and Stored to Date" should be reduced by $76,539. Nevertheless, to the extent that you, as the Architect, based on your knowledge of the job, believe that a higher or lower estimate than 26% for work done on this item is warranted, your decision will increase or decrease the $76,539 reduction AJI is claiming for this item.

## Plumbing and HVAC

For Plumbing and HVAC, the approved contract amounts are $21,945 and $686,312, respectively, for a total of $708,257. Winmar claims these items are 80% and 39% complete and seeks $17,556 and $264,916, respectively. For the sake of simplicity, and because these are

Dennis C. Janson
February 24, 2006
Page 7

items subcontracted by Winmar to John J. Kirlin, Inc. ("Kirlin"), these two items will be combined. As a result, of the approved contract amounts, which total $708,257, Winmar is seeking $282,472. However, Kirlin has actually been paid $379,185. This amount is being credited here in its entirety, consistent with AJI's treatment of change orders, discussed above. That $379,185 was paid for Kirlin Invoices Nos. 1 and 3. Kirlin Invoice No. 2 was processed by Winmar, but Winmar's check to Kirlin bounced due to insufficient funds. Kirlin no longer expects Invoice No. 2 nor any of its other invoices to be paid by Winmar.

Therefore, for these items, AJI contends that the amount Winmar is claiming as "Completed and Stored to Date" should be increased by $96,713. Nevertheless, to the extent that you, as the Architect, are of the opinion that, under the Contract, Winmar is due a higher or lower amount than $379,185 for these items, your decision will increase or decrease the adjustment AJI is claiming for these items.

### Fire Protection

For Fire Protection, the approved contract amount is $53,515. Winmar claims this item is 40% complete and seeks $21,406; however, this item is only 21% complete. Winmar has actually incurred only $11,075 in connection with this item and this item should be decreased by $10,331.

Therefore, for this item, AJI contends that the amount Winmar is claiming as "Completed and Stored to Date" should be reduced by $10,331. Nevertheless, to the extent that you, as the Architect, based on your knowledge of the job, believe that a higher or lower amount than $11,075 for work done on this item is warranted, your decision will increase or decrease the adjustment AJI is claiming for this item.

### Electrical & Fire Alarm

For Electrical & Fire Alarm, the approved contract amount is $865,955. Winmar claims this item is 17% complete and seeks $145,480; however, because Pel-Bern Electric, Inc. has actually been paid $202,050, this amount is being credited here in its entirety, consistent with AJI's treatment of change orders, discussed above. This item is therefore increased by $56,570 to $202,050. In addition, like Kirlin, Pel-Bern does not expect to receive any further payments from Winmar and will not seek any further payments from Winmar in connection with this Project.

Therefore, for this item, AJI contends that the amount Winmar is claiming as "Completed and Stored to Date" should be increased by $56,570. Nevertheless, to the extent that you, as the Architect, are of the opinion that Winmar is due a higher or lower amount than $202,050 for this item under the Contract, your decision will increase or decrease the adjustment AJI is claiming for this item.

Dennis C. Janson
February 24, 2006
Page 8

## Overhead and Fee

For Overhead and Fee, the approved contract amount is $250,740. Winmar claims this item was 100% complete, presumably based on the termination for convenience; however, Winmar is not automatically entitled to the entirety of its overhead and fee simply by virtue of a termination for convenience. Unless and until the remainder of the items in dispute between AJI and Winmar are resolved, this item cannot be calculated and, therefore, Winmar's claim for overhead and fee must, for the present, be reduced by $250,740. The amount ultimately agreed upon or determined for this item will be added back in.

Therefore, at this juncture, for this item, AJI contends that the amount Winmar is claiming as "Completed and Stored to Date" should be reduced by $250,740. Nevertheless, to the extent that you, as the Architect, are of the opinion that you have obtained or can obtain from Winmar sufficient information to calculate the amount of overhead and fee due to Winmar under the Contract, your decision will lower this $250,740 reduction by the amount so calculated.

The adjustments described above are summarized in the chart below:

| RECAP | | |
|---|---|---|
| Total Completed and Stored to Date Per Winmar | | $1,475,135 |
| Adjustments Per AJI | | |
| | Change Orders | (539,659) |
| | Demolition/Site Work | 0 |
| | Rough Finished Carpentry | (9,610) |
| | Drywall Partitions & Framing | (76,539) |
| | Plumbing and HVAC | 96,713 |
| | Fire Protection | (10,331) |
| | Electrical & Fire Alarm | 56,570 |
| | Overhead and Fee | (250,740)[2] |
| Total Adjustments to Completed and Stored to Date Per AJI | | ($733,596) |
| Net Total Completed and Stored to Date Per AJI | | $741,539 |
| Less Previous Payments to Winmar | | ($1,597,515) |
| Plus Overhead and Fee | | TBD |
| Overpayment to Winmar (Subject to reduction for Overhead and Fee) | | ($855,976) |

In support of these Claims and requests, AJI has attached photographs of the job site taken shortly after the termination for convenience as well as various job-related documents.

---

[2] As already noted, Winmar is entitled to some portion of this amount, which remains to be determined.

Dennis C. Janson
February 24, 2006
Page 9

For purposes of evaluating these Claims and requests, AJI represents to the Architect that neither Kirlin nor Pel-Bern has asserted or will assert any claims against Winmar that either of them is owed any money under its respective subcontract with Winmar.

Accordingly, AJI requests that the Architect rule that AJI has overpaid Winmar by $855,976 minus that portion of the overhead and fee to which Winmar is determined to be entitled.

Unless Winmar waives the 30-day deadline set forth in Section 4.4.1, AJI asks that the Architect rule on each of these items within no more than 30 days, i.e., on or before March 24, 2006. Moreover, because "Claim" as defined in the Contract includes each of the four numbered items set forth herein, AJI requests that the Architect request Winmar to provide responses to each, as provided for in Section 4.4.4:

> If the Architect requests a party to provide a response to a Claim or to furnish additional supporting data, such party shall respond, within ten days after receipt of such request, and shall either provide a response on the requested supporting data, or advise the Architect that no supporting data will be furnished. Upon receipt of the response or supporting data, if any, the Architect will either reject or approve the Claim in whole or in part.

To the extent that you, as the Architect, need any further supporting data from AJI or wish to consult with AJI or MGAC regarding any of the items raised herein, please let me know. We will be pleased to assist you in any way we can.

AJI hereby expressly reserves the right to submit additional Claims and to modify this Claim as circumstances or additional information warrant.

Sincerely yours,

Leslie H. Wiesenfelder

LHW/cds
Enclosures
cc (w/encl.):    Gary Napier [Via Email]
                 Clive Brady [Via Email]
                 Jonathan Hart, Esq. [Via Email]
                 Randall Smith, Esq. [Via Email]
                 Mark Anderson [Via Email]
                 Kris Collins [Via Email]
                 James F. Lee, Jr., Esq. [Via Email and U.S. Mail]
                 Edwin Villegas [Via Email]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

QATAR NATIONAL BANK          :
                                    :
       Plaintiff,              :
                                    :
       v.                   :       Civil Action No.: 1:06CV-01307-GK
                                    :
WINMAR, INC. d/b/a            :
WINMAR CONSTRUCTION     :
                                    :
         Defendant and Third Party  :
         Plaintiff               :
_____:
                                    :
WINMAR, INC.,               :
         Third Party Plaintiff      :
         and Counterclaim        :
         Defendant,            :
                                    :
       v.                   :
                                    :
AL JAZEERA INTERNATIONAL,  :
         Third Party Defendant    :
         and Counterclaim        :
         Plaintiff               :

### WINMAR, INC.'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO AL JAZEERA INTERNATIONAL

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Winmar, Inc. ("Winmar"), by counsel, propounds the following Requests for Production of Documents upon Third Party Defendant/Counterclaim Plaintiff Al Jazeera International ("AJI") subject to the conditions set forth below:

### INSTRUCTIONS

A.     All information is to be divulged which is in your possession, custody, or control, including information in the possession, custody, or control of your attorneys, investigators, agents,

S:\070\06DC013\RPDs to AJI.doc

employees, officers, accountants, bankers, brokers, insurers, independent contractors, subcontractors, subconsultants, experts or other representatives.

     B.    If a document is claimed to be privileged or attorney work-product, please provide the following information:

        1.    Designate the type of document (i.e., letter, contract, map, etc.);

        2.    State the title of the document, the date, the author, any file, reference, or identifying number or symbol connected with the document;

        3.    Identify all persons who wrote, signed, initialed, dictated or otherwise participated in the creation of said document or received a copy thereof;

        4.    State the document's general subject matter;

        5.    Identify all persons to whom the document was addressed, if any;

        6.    State the present or last known location of the document and identify the person known or believed to have possession, custody, or control of the document;

        7.    If the document was, but no longer is, in your possession, custody, or control, state if the document was lost or destroyed or what other disposition was made of it and the reasons therefore;

        8.    State the ground(s) upon which you base any claim of privilege.

     C.    Responsive documents or copies thereof are to be served on James F. Lee, Jr. at the offices of Lee & McShane, P.C. 1211 Connecticut Avenue, N.W. Suite 425, Washington, D.C. 20036, or such other place as may be agreed upon by counsel, on or before April 24, 2008.

## DEFINITIONS

As used in this request, the following terms are defined as indicated:

A.     "Winmar" refers to Defendant/Third Party Plaintiff/Counterclaim Defendant and any or all of its agents, representatives, accountants, attorneys, engineers, experts, independent contractors, other governmental agency(ies) and any person acting or purporting to act on its behalf.

B.     "QNB" or "Plaintiff" means Plaintiff Qatar National Bank, and includes any and all present or former officers, directors, agents and employees, representatives, accountants, attorneys, contractors, and any person acting or purporting to act on its behalf.

C.     "AJI", "You" or "Your" means Third Party Defendant/Counterclaim Plaintiff Al Jazeera International and includes any and all present or former officers, directors, agents and employees, representatives, accountants, attorneys, contractors, and any person acting or purporting to act on its behalf.

D.     'Document" has the broadest connotation ascribed to it under the Federal Rules of Civil Procedure. The term "document" shall include writings, drawings, graphs, charts, photographs, other forms of printed material containing or conveying information and each non-identical copy or draft thereof, any data or information stored on magnetic or optical storage media as an active file or files (readily readable by one or more computer applications or forensics software), any deleted but recoverable electronic files on such media, any electronic file fragments (files that have been deleted and partially overwritten with new data), and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some, but not all, of, previously stored data).

E.     "Identify," when referring to a person or entity, shall require you to list the name,

address, and telephone number of the person or entity or, if you do not have that information available, the best description you have of who that person or entity is, where that person or entity can be found, and any sources of documents or other information that can be used to find that person or entity.

F.    "Describe" means to describe completely and accurately to the best of your ability the subject matter about which inquiry is made, using the most factual statement of which you are capable.

G.    "Communication" means the transmittal of information by correspondence, memoranda, telephone, facsimile, e-mail, and other methods of transmitting information (in the form of facts, ideas, inquiries, or otherwise).

H.    "Concerning" or "relating" means referring to, describing, evidencing or constituting.

I.    "Person" means an individual, voluntary association, corporation, limited liability company, partnership, joint venture, trust, estate, government agency or commission, and any other form of business, governmental or judicial entity recognized by law.

J.    The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope of the request.

K.    References to the singular include the plural, and references to the plural include the singular.

L.    The past verb tense includes the present verb tense, and the present verb tense includes the past verb tense.

M.    The term "Project" shall mean anything related to the design and construction of the build-out of office space at 1627 K Street NW, Washington, DC 20006.

N.    The term "Contract" as it refers to the Project shall mean the modified AIA A-101 Standard Contract Between Owner and Contractor, together with a modified AIA A201 General Conditions, between Winmar and AJI.

## DOCUMENT PRODUCTION

1.    All documents relating in any way to the allegations contained in the Counter-complaint filed by AJI against Winmar in the above captioned matter.

2.    All documents relating in any way to the allegations contained in the Third Party Complaint filed by Winmar in the above captioned matter.

3.    All documents relating in any way to the statements and defenses listed in your Answer to Winmar's Third Party Complaint filed in the above captioned matter.

4.    All documents relating in any way to the allegations contained in the Complaint filed by QNB in the above captioned matter.

5.    Any document containing any communication from, to, or with QNB or any employee or representative of QNB, concerning, mentioning, or otherwise relating to any transfer of funds from AJI or QNB to Winmar as it relates to the Project which forms the subject matter of the dispute between Winmar and AJI.

6.    All documents relating in any way to the Project, at any time.

7.    All documents relating in any way to the Project for the time period subsequent to the termination of Winmar by AJI.

8.     A copy of the Owner's written notice to proceed.

9.     Any and all documents relating in any way to Change Orders 1, 2, 3, 4, 5, 6, 6A, 6B, 6C, 7, 8, 9, 10, and 11.

10.    Any and all documents relating to or that support the allegations contained in paragraph 16 of your Counter-complaint against Winmar.

11.    Any and all documents relating to or that support the allegations contained in paragraph 17 of your Counter-complaint against Winmar.

12.    Any and all documents relating to or that support the allegations contained in paragraph 19 of your Counter-complaint against Winmar.

13.    Any and all documents relating to or that support the allegations contained in paragraph 21 of your Counter-complaint against Winmar.

14.    Any and all documents relating to or that support the allegations contained in paragraph 22 of your Counter-complaint against Winmar.

15.    Any documents relating to or that support your contention that AJI had "overpaid Winmar by approximately $200,000" as stated in paragraph 22 of your Counter-complaint against Winmar.

16.    Any and all documents relating to or that support the allegations contained in paragraph 38 of your Counter-complaint against Winmar.

17.    Any and all documents relating to your contention that the "Architect has determined in accordance with the terms of the [parties' contract] that AJI has overpaid Winmar and that Winmar owes a refund to AJI" as stated in paragraph 42 or your Counter-complaint against Winmar.

18.    Any and all documents that you provided to the Architect upon which the Architect relied or may have relied in order to make their determination as described in paragraph 42 of your Counter-complaint against Winmar.

19.    Any and all documents relating to or that support your contention that Winmar was not entitled to the $474,677 which comprised the December 12, 2005 or the January 30 wire transfers.

20.    All communications between you and the Dennis C. Janson, Architect, as it relates to the Project.

21.    All communications between you and any contractor or subcontractor as it relates to the Project.

22.    All communications between you and any contractor employed subsequent to the termination of Winmar from the Project.

23.    All documents which you intend to rely on in support of your answers to all interrogatories from Winmar.

24.    All written statements or oral statements reduced to writing of this party its agents, servants and/or employees concerning this action or its subject matter in your possession, custody or control.

25.    All statements concerning this action or its subject matter obtained from other parties and/or non-parties to this litigation, whether in writing or reduced to writing, presently in your possession, custody or control.

26.    All contracts, correspondence, written reports, notes, photographs, drafts, designs, design criteria, specifications, or other documents, prepared by or forwarded to you by any other

party.

27.    All non-privileged written reports, notes, photographs, diaries, drafts, working papers, correspondence, or documents compiled, generated, or in your possession concerning the subject matter of this action, and the damages claimed to have been incurred by any party to this action.

28.    All written reports, correspondence, claim files, notes, photographs, drafts, working papers or documents setting forth design criteria provided to you regarding the subject project.

29.    All documents related to any claim that the services provided by this party were inadequate

30.    All documents that relate to any claim that the services provided by this party were prepared in a faulty and negligent manner.

31.    All documents that relate to your receipt of invoices and/or payments to any party in this lawsuit.

32.    All documents including correspondence, project notes, telephone memos, field reports or other project related documentation prepared by you, or anyone else related to the project.

33.    All documents setting forth or in any way relating to the names, addresses, social security numbers, job descriptions, job duties and responsibilities and performance evaluations of each and every employee, agent, servant or independent contractor employed by you in connection with the project.

24.    Your entire file with respect to the Project.

Respectfully submitted,

LEE & McSHANE, P.C.

By: _____

James F. Lee, Jr., (DC Bar No. 247718)
Trevor M. Ashbarry, (DC Bar No.980359)
1211 Connecticut Avenue, N.W.
Suite 425
Washington, D.C.  20036

*Counsel for Defendant and Third-Party
Plaintiff, Winmar, Inc. d/b/a Winmar
Construction*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Request for Production of Documents to Plaintiff Qatar National Bank was served this 2nd day of June, 2008, as indicated below:

**VIA US MAIL**

Alan T. Dickey, Esq.
Patton Boggs, LLP
2550 M Street, N.W.
Washington, DC  20037
*Counsel for Plaintiff Qatar National Bank*

**VIA HAND DELIVERY**

Leslie Hugh Wiesenfelder
DOW LOHNES PLLC
1200 New Hampshire Avenue, NW,Suite 800
Washington, DC 20036
*Counsel for Al-Jazeera International*

_____
Trevor M. Ashbarry, Esquire