IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **QATAR NATIONAL BANK** : | |
| : | |
| Plaintiff : | |
| : | |
| v. : | 1-06CV01307 |
| : | |
| **WINMAR, INC.d/b/a** : | |
| **WINMAR CONSTRUCTION** : | |
| : | |
| Defendant : | |

### WINMAR INC.'S CORRECTED SURREPLY TO PLAINTIFF QATAR NATIONAL BANK'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant/Third Party Plaintiff/Counterclaim Defendant, Winmar, Inc. ("Winmar") by and through counsel, Lee & McShane, P.C., and submits its Corrected Surreply to Plaintiff, Qatar National Bank's ("QNB") Reply Memorandum in Support of its Motion for Summary Judgment, to correct inaccuracies therein, hereby states as follows:

QNB has made the unsupported claims that Winmar is attempting to mislead the Court and is engaging in dilatory tactics to stave off summary judgment in this matter. Neither allegation is supported by the facts.

As in their Motion for Summary Judgment, QNB is again attempting to make the argument of Third Party Defendant/Counterclaim Plaintiff, Al Jazeera International ("AJI") with respect to this matter. The core dispute of which is centered around the contract for construction between Winmar and AJI for the build out of office space which forms the substance of the parties' dispute. Despite the fact that QNB is the party who chose to file this action first, and therefore are the named Plaintiff therein, their claim, by virtue of the facts in this matter, is entirely derivative of the core dispute between Winmar and AJI. Summary Judgment on their

claim, or for that matter on Winmar's defenses thereto, therefore, is premature pending resolution of the dispute between Winmar and AJI. No motion for dispositive relief is currently pending with respect to the claims between Winmar and AJI and due to the numerous issues of material fact in this matter, a trial on the merits will be necessary to determine the resolution of this dispute.

**A. Issues of Material Fact are Present in this Matter.**

Winmar did not suggest in its Opposition to QNB's Motion for Summary Judgment that further discovery is needed to unearth issues of material fact between the parties, nor did Winmar request a deferral of ruling on QNB's Motion due to any failure to engage in discovery. Winmar did respectfully suggest, however that a ruling on QNB's Motion for Summary Judgment would be premature as numerous issues of material fact still exist and to provide such a ruling would unfairly prejudice the parties going forward in this litigation.

When faced with a Motion for Summary Judgment, the non-moving party must show the existence of a genuine issue for trial by way of affidavits, deposition testimony or answers to interrogatories. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Winmar has done this and no sifting through the record, as QNB suggests, is required.

As stated, QNB's claims against Winmar are predicated on the assumption that Winmar was not entitled to the monies allegedly erroneously wired into its account. If QNB's assumption is incorrect, which Winmar has alleged that it certainly is, then Winmar should be entitled to retain those funds. As the official comment to § 4A-303 of the UCC states

> [T]he law of restitution might allow Beneficiary to keep all or part of the [duplicate payment]….[If] Beneficiary received the [duplicate payment] in good faith in discharge of the debt, [Beneficiary] may be allowed to keep it. In this case Originator's Bank has paid an obligation of Originator and under the law of restitution…Originator's Bank would be subrogated to Beneficiary's rights

against Originator on the obligation paid by Originator's Bank. U.C.C. § 4A-303, comment 2 (as incorporated into comment 3).

Winmar's defense to QNB's claims is essentially that they are entitled under the law to retain those monies as they earned such payment by virtue of their work on the project which forms the basis of the parties' dispute in this matter. Winmar believes in good faith that it is entitled to at least $643,646 comprising all contract amounts, plus termination costs and interest for work on the project which forms the basis of the parties' dispute. *See Winmar Answers to AJI Interrogatories*, attached as Exhibit 4 to Winmar's Statement of Material Facts, and incorporated herein by reference. AJI is of the position that Winmar actually owes it money. *See AJI Answers to Winmar Interrogatories*, attached as Exhibit 5 to Winmar's Statement of Material Facts and incorporated herein by reference. Not insignificantly, AJI's own project architect certified payments totaling $2,463,301 to Winmar throughout the course of the project. *See* Winmar Affidavit, attached as Exhibit 2 to Winmar's Statement of Material Facts and incorporated herein by reference. The extent of this certification has been called into question by AJI as they had since attempted to "decertify" such payments. QNB makes the strange assertion that Winmar misleadingly omitted this fact from its Opposition, despite the inclusion of the same in its statement of material facts. Nonetheless, however, at the time of the alleged duplicate payment, Winmar had only been paid $1,119,838 of the total certified amount. Therefore, any retention by Winmar of the alleged duplicate payment of $474,677 is entirely reasonable and the product of a good faith belief that they were entitled to those funds. Indeed, Winmar has stated in their answers to AJI's Interrogatories that even taking into account the $355,297 retained from the "duplicate payment," they are still owed in excess of $643,646. Issues of material fact therefore remain in dispute between the parties.

As a further consideration, QNB and AJI have maintained throughout this action that the alleged duplicate payment was made by QNB in error. QNB alleges that the "duplicate payment" was made as a result of a request by AJI to confirm the December 8, 2005 payment from AJI to Winmar in the amount of $474,677. However, on December 19, 2005, Gary Napier of AJI sent Chris Condon of Winmar a letter and the attached, what is described in Mr. Napier's letter as, confirmation of the payment of $474,677. *See Exhibit 1*, at attached hereto. If AJI already had confirmation of the December payment, it does not stand to reason that they would seek re-confirmation a month later. Therefore, the transmission from AJI to QNB in January may well not have been a confirmation request, but a further direction to affect payment to Winmar. In any event, whether the January 2006 alleged "duplicate payment" was indeed an error or not, Winmar had a good faith reason to believe that they were entitled to well in excess of the amount of money that they received by means of that payment.

**B. Discharge for Value Rule applies to Transfers such as the one at issue in this matter.**

QNB attempts to marry differing positions with respect to Winmar's discharge for value defense. On the one hand, QNB claims that notice of the alleged error is determinative of whether the defense should apply. *See e.g. In re Calumet Farm*, 398 F.3d 555 (6th Cir. 2005). This, notwithstanding of course the Seventh Circuit's ruling in *Gen. Elec. Capital Corp. v. Cent. Bank*, 49 F.3d 280, 284 (7th Cir. 1995), which adopted the notice requirement prior to receipt of the questioned funds. It was the General Electric Court, however that also stated that the discharge for value defense would apply to bank transfers under UCC 4-303(a). No mention is made, however, in either *Calumet or General Electric* as to the applicability of the defense to a non-liquidated debt, contested debt.

On the other hand, QNB offers the contention that the discharge for value defense only applies to such liquidated debts. *See e.g. Bank of America v. Sanati*, 11 Cal. App. 4th 1079 (Cal. App. 1992) (citing RESTATEMENT OF RESTITUTION § 14). Even assuming that the defense applies only to liquidated debts, the facts that QNB glosses over clearly substantiate that the debt incurred by AJI was "concrete and preexisting." One need look no further than the certified payment applications which remained unpaid contrary to the terms of the parties' contract. Pursuant to the terms of the parties' contract, payments upon certification of Winmar's Applications for payment were to occur no later than ten days after receipt and certification of the same. *See* Winmar/AJI contract, §§ 5.1.2.3–5.1.3, as attached to Winmar's Third Party Complaint. Once that debt was not paid pursuant to the terms of the parties' contract, it became an objectively verifiable, preexisting, liquidated obligation. Upon receipt of the monies that comprised the "duplicate payment," Winmar had every good faith reason to believe that such payment was in partial satisfaction of that outstanding obligation. Accordingly, the discharge for value defense should apply to the debt owed to Winmar from AJI.

## Conclusion

QNB has gone to great lengths in its Motion for Summary Judgment in an attempt to substantiate that no issue of material fact exists in this matter. Their "undisputed facts" however, are premised on the assumption that Winmar is not owed any monies by AJI. The facts clearly remain, however, that Winmar was owed a concrete and preexisting debt by AJI. The fact that AJI disputes this and their manner of disputing it results in issues that are not able to be resolved by summary judgment alone.

Respectfully submitted,

LEE & MCSHANE, PC

By: _____\s_____
James F. Lee, Jr., Esquire
DC Bar No. 247718
Trevor M. Ashbarry, Esquire
DC Bar No. 980359
1211 Connecticut Avenue, N.W.
Suite 425
Washington, DC 20036
(202) 530-8100

*Counsel for Defendant,*
*Winmar, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Corrected Surreply to Plaintiff Qatar National Bank's Reply Memorandum in Support of Its Motion for Summary Judgment was served electronically and by first class mail, postage pre-paid, on this 5th day of August, 2008 to:

| | |
|---|---|
| Alan T. Dickey, Esquire<br>DC Bar No. 496403<br>Patton Boggs, LLP<br>2550 M Street, N.W.<br>Washington, DC 20037<br>*Counsel for Plaintiff Qatar National Bank* | Leslie Hugh Wiesenfelder, Esquire<br>DC Bar No. 173500<br>Dow Lohnes, PLLC<br>1200 New Hampshire Avenue, NW<br>Suite 800<br>Washington, DC 20036<br>*Counsel for Al-Jazeera International* |

_____\s_____
Trevor M. Ashbarry, Esquire