IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| QATAR NATIONAL BANK, | : | |
| Plaintiff, | : | Civil Action No. 1:06-cv-1307(GK) |
| v. | : | |
| WINMAR, INC., | : | |
| Defendant and Third | : | |
| Party Plaintiff. | : | |
| | : | |
| WINMAR, INC., | : | |
| Third Party Plaintiff | : | |
| and Counterclaim | : | |
| Defendant, | : | |
| v. | : | |
| ALJAZEERA INTERNATIONAL, | : | |
| Third Party Defendant | : | |
| and Counterclaim | : | |
| Plaintiff. | : | |
| | : | |

**QATAR NATIONAL BANK'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
<u>MOTION TO STRIKE WINMAR'S UNAUTHORIZED SURREPLIES</u>**

Plaintiff, Qatar National Bank ("QNB"), by and through its undersigned counsel, hereby respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Strike Winmar's Unauthorized Surreplies.

Without seeking or obtaining leave of the Court, Winmar, Inc. ("Winmar"): (1) on August 4, 2008, filed a "Surreply" in opposition to QNB's Motion for Summary Judgment with no exhibits (Dkt. #39); (2) on August 5, 2008, filed a "Corrected Surreply due to inadvertent omission of exhibit," which included as an exhibit the Declaration of Trevor M. Ashburry, which was dated August 5, 2008 (the day after the original Surreply that "omitted" the declaration was filed) and included a new paragraph on page four making a new argument referencing the new exhibit (Dkt. #40); and (3) on August 6, 2008, filed the same "Corrected Surreply" with "errata." (Dkt. #41).[1]

---

[1]  Winmar's surreply with "errata" in Dkt. # 41 appears to be identical to the "Corrected" surreply in Dkt. # 40. Both contain the new arguments and documents not included in the first surreply found in Dkt. #39. This

Because Winmar neither sought, nor obtained, leave to file any of these unauthorized Surreplies, and because it does not address any issue raised for the first time in QNB's Reply Memorandum (Dkt. #38) ("Reply"), QNB moves to strike all of them.

I. **WINMAR'S UNAUTHORIZED SURREPLIES SHOULD BE STRICKEN BECAUSE WINMAR DID NOT SEEK OR OBTAIN LEAVE TO FILE THEM**

"'A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond.' … The Court shall therefore deny Plaintiff's Motion to the extent that it constitutes an improper sur-reply." *Wada v. U.S. Secret Service*, 525 F. Supp. 2d 1, 10 (D.D.C. 2007) (quoting *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002)); *see also Anthony v. Washington Metropolitan Area Transit Authority*, 2005 WL 5329517, at *1 n.1 (D.D.C. Apr. 8, 2005) ("The Defendant filed a sur-reply without first moving for leave to file its sur-reply, as is required. … The Court thus strikes the pleading as unauthorized.") (citing *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101 (D.D.C. 2002)); *Robinson*, 211 F. Supp. 2d at 113 ("A party seeking to file a surreply must move the court for leave to file such a surreply. ... The court thus strikes the pleading as unauthorized.") (citing *Longwood Village Restaurant, Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2001); *Cramer Prods. v. Int'l Comfort Prods.*, 1990 WL 58711, at *2 (D. Kan. 1990); *Arakelian v. Nat'l Western Life Ins. Co.*, 126 F.R.D. 1, 3 (D.D.C. 1989)). Winmar neither sought, nor obtained, leave of this Court before filing its unauthorized Surreplies. Accordingly, they "constitute[]improper sur-repl[ies]" and should be stricken. *Wada*, 525 F. Supp. 2d at *10.

---

memorandum addresses the last surreply with "errata" as Winmar's "Surreply" throughout and refers to all three surreplies collectively as the 'Surreplies."

**II.    WINMAR'S SURREPLIES SHOULD BE STRICKEN BECAUSE THEY ADDRESS NO ISSUE RAISED FOR THE FIRST TIME IN QNB'S REPLY**

**A.    WINMAR'S UNAUTHORIZED SURREPLIES ADDRESS NO NEW EVIDENCE OR ARGUMENTS**

Even if Winmar had sought leave to file its unauthorized Surreplies, they are improper as a matter of law.  "The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply."  *Robinson*, 211 F. Supp. 2d. at 112.

> Here, [QNB's] reply does not raise any new matters; rather, [QNB] merely respond[ed] to [Winmar's] arguments contained in [its] opposition.  In fact, [Winmar's] surreply raises facts and legal issues not previously addressed.  Thus, it is not appropriate to permit the surreply to be filed.

*Lightfoot v. District of Columbia*, 2006 WL 54430, at *1 n.3 (D.D.C. Jan. 10, 2006).  As this Court stated:

> A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond. … <u>The matter must be truly new</u>. … <u>A surreply is most appropriate where the new matter introduced is factual</u>. … The fact is, [non-movant] took a litigation gamble by failing to address the merits of [the movant's] subpoenas duces tecum against them in their responses to the motions to compel.  They lost.  The Court will not grant leave to file a surreply to put them back in the game.

*Pogue*, 238 F. Supp. 2d at 276-77 (citing *Robinson*, 211 F. Supp. 2d. at 112; *Alexander*, 186 F.R.D. at 74; *Lewis*, 154 F. Supp. 2d at 61).  Winmar's unauthorized Surreplies address no "truly new" or factual issue in QNB's Reply.  For whatever reason, Winmar gambled in failing to address the new (albeit immaterial) issue it has now raised for the first time in its unauthorized Surreply.  Further, most of the issues addressed in Winmar's Surreplies simply reiterate arguments previously addressed in Winmar's Opposition (Dkt. #37; hereafter "Opposition" or "Winmar Opp")  not raised for the first time in QNB's Reply.  *See* Dkt. ## 39, 40, 41; *see also Robinson*, 211 F. Supp. 2d at 113 ("The plaintiff's proposed surreply consists of a reiteration of arguments made in her original response to the defendant's motion for summary judgment").  Exhibit A, attached hereto, is a chart listing by category the arguments made in Winmar's unauthorized Surreplies.  It clearly demonstrates that

3

Winmar has not addressed any issue appearing for the first time in QNB's Reply and, thus, the Surreplies are improper and should be stricken.

### B.  WINMAR'S REITERATED ARGUMENTS ABOUT THE "CORE DISPUTE"

In its Opposition, Winmar distinctly argued that:

> A dispute of material fact as to an affirmative defense does exist between Winmar and QNB based on whether AJI owes money to Winmar.  <u>Discovery is ongoing</u> as to that issue.  <u>Therefore</u>, <u>summary judgment</u> on behalf of QNB <u>at this time would be improper</u>.
> * * * *
> … [I]f this Court determines that Winmar wrongfully retained the monies paid by QNB, then the Court has thus made a determination that Winmar is not entitled to payment from AJI in any amount, or in an amount less than the $474,677. That factual determination is not before the Court, however, and <u>such issues related to that dispute still subject to further discovery between Winmar and AJI</u>.  The close of discovery between the two parties is currently set for September 8, 2008.
> * * * *
> <u>The central issue of notice</u> and whether it was reasonable for Winmar to retain the funds based upon such notice, or lack thereof, <u>is subject to further discovery in the claims between Winmar and AJI</u>.

Winmar Opp. pp. 2, 6, 9 (emphasis added).  Apparently in response to the assertion in QNB's Reply that Winmar completely failed to satisfy the requirements for such relief contained in Rule 56(f), in Winmar's unauthorized Surreply, it now states:

> <u>Winmar did not suggest in its Opposition to QNB's Motion for Summary Judgment that further discovery is needed to unearth issues of material fact between the parties, nor did Winmar request a deferral of ruling on QNB's Motion due to any failure to engage in discovery</u>.

Surreply, p. 2 (emphasis added).  Aside from the confusion over what Winmar's position really is, Winmar's comments relating to whether the issues in QNB's Motion for Summary Judgment are ripe for the Court's review address an issue that has been briefed by both sides, and thus Winmar's new comments are inappropriate for a surreply.

Winmar's reiterated argument that QNB's "claim, by virtue of the facts in this matter, is entirely derivative of the core dispute between Winmar and AJI" and thus "[s]ummary Judgment on

4

their claim, or for that matter on Winmar's defenses thereto, therefore, is premature pending resolution of the dispute between Winmar and AJI," was previously addressed in both QNB's original Memorandum, *see, e.g.*, Dkt. #35 at p. 11 ("[T]he unjust enrichment claim asserted in QNB's Complaint 'is drawn between [QNB] and [Winmar].' … '[T]he question whether [AJI] owed the money or authorized its payment is not material to that narrowly drawn issue.'"), and in Winmar's Opposition at pp. 2, 5, 6, 9.

Note that, even in reiterating this argument, Winmar's cannot cite to any authority to support its baseless argument that the resolution of QNB's action against Winmar is somehow dependant on the resolution of the independent claims and counterclaims between AJI and Winmar. QNB had already adequately addressed the fallacy of this reiterated argument in its original Memorandum (pp. 9-11) and its Reply (pp. 11-15).

Such reiterated arguments are not properly made in a surreply. Winmar concedes that its argument is merely regurgitated when it states: "As in their Motion for Summary Judgment, QNB is again attempting …" Surreply pp. 1-2 (emphasis added). As this Court has held:

> The plaintiff's proposed surreply consists of a reiteration of arguments made in her original response to the defendant's motion for summary judgment. The plaintiff's own use of language, for example, 'Once again in its Reply defendant makes factual allegations not supported …,' and 'defendant's repeated ruse …,' illustrates the plaintiff's attempt to merely respond to the defendant's previously raised arguments. … Because the plaintiff failed to file a motion for leave to file this surreply and because the proposed surreply merely reiterates arguments already made and does not add anything new, the court strikes the proposed surreply.

*Robinson*, 211 F. Supp. 2d at 113; *cf. Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001) ("Because this contention does not involve a new matter but rather an alleged mischaracterization, the court denies the plaintiff's motion."). Even if there something new hidden within these reiterated Surreply arguments, they are still improper. As the Court held in another case:

> The plaintiff expands on [its] argument in a surreply. Before filing a surreply, however, a party must move the court for leave to file. The plaintiff did not file such a motion in this case. In addition, the moving party must show that the reply filed

5

>by the moving party raised new arguments that were not included in the original motion. … Because the plaintiff here twice failed to file a motion for leave to file surreply, and because neither of the defendants' replies raised new arguments, the court will not grant leave to file these surreplies and will not consider them.

*Longwood Village Restaurant, Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2001) (citing *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 71, 74 (D.D.C. 1998)). Similarly, the Court need not consider Winmar's reiterated unauthorized Surreply arguments on this issue.

### C. WINMAR'S ARGUMENTS ABOUT ITS DISCHARGE-FOR-VALUE DEFENSE

Winmar also falsely reiterates that "QNB's claims against Winmar are predicated on the assumption that Winmar was not entitled to the monies allegedly erroneously wired into its account." Surreply p. 2. This is incorrect. QNB's position, which is clear in both its original Memorandum and its Reply is that, even if Winmar <u>was</u> entitled to the monies erroneously wired into its account, QNB is entitled to a return of the money because, *inter alia*, (1) the law of unjust enrichment in this District requires it; and (2) Winmar's discharge-for-value defense fails because (a) even if it had such a debt, it was not liquidated, *see Bank of America v. Sanati*, 11 Cal. App. 4th 1079 (Cal. App. 2 Dist. 1992); and (b) Winmar had actual and constructive notice of the mistake before it even knew of the transfer itself, *In re Calumet Farm Inc.*, 398 F.3d 555 (6th Cir. 2005). Note that, Winmar oddly argues that (a) and (b) above are inconsistent. *See* Winmar's Opposition at p. 4 ("QNB attempts to marry differing positions …"). There is nothing to this. QNB simply stated how two different legal principles each, independently, deprive Winmar of its discharge-for-value defense in this case based on undisputed facts.

In both its Memorandum and its Reply in support of its Motion, QNB cites to the law requiring a liquidated debt to invoke the discharge-for-value defense and cites to the legal standard for proving that a debt is liquidated. *See* Memorandum pp. 16-18; Reply pp. 15-16. Winmar did not address this issue at all in its Opposition. Now, for the first time in its unauthorized Surreply and

citing to no authority at all, Winmar claims that it did in fact have a liquidated debt. Winmar did not file a Local Rule 7(h) statement contesting the facts QNB set forth demonstrating the unliquidated nature of Winmar's alleged debt from AJI, and did not even contest it in the body of its Opposition. The Court need not consider this unsupported belated argument of counsel. *See Internet Financial Serv., LLC v. Law Firm of Larson-Jackson, P.C.*, 310 F. Supp. 2d 1, 4 (D.D.C. 2004) ("Arguments of counsel do not substitute for evidence that establishes a genuine issue of material fact.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In any event, the undisputed timeline of Winmar's and AJI's fluctuating demands, counter-demands, and certification and decertifications by the Architect demonstrate conclusively that there was no liquidated debt. *See Aon Risk Services, Inc. of Washington, D.C. v. Estate of Coyne*, 915 A.2d 370, 379 (D.C. 2007) ("'[D]amages are not liquidated if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment.'") (quoting *United States Fire Ins. Co. v. C & C Beauty Sales, Inc.*, 674 So. 2d 169, 171-72 (Fla. Dist. Ct. App. 1996)). Clearly, "the ascertainment of their exact sum" of any debt owed by AJI to Winmar is a mess and "requires the taking of testimony to ascertain facts upon which to base a value judgment." *Id.*

As noted in QNB's original Memorandum, based on the undisputed facts set forth in QNB's Motion for Summary Judgment and supporting documents:

- On January 4, 2006, Winmar informed AJI that Winmar was suspending performance of the Contract as of that day for alleged non-payment in the amount of $1,363,463. SMF ¶ 8.

- [O]n January 5 and 6, 2006, Winmar received notice in two letters <u>from the Architect</u> that Applications for the collective amount of $1,363,463 "have been certified in error … [d]ue to a number of discrepancies" in them "as well as a lack of supporting documentation." SMF ¶ 8. The Architect notified Winmar that it was rescinding the Applications and requesting documentation to support Winmar's claim that it was due $1,363,463 from AJI. *Id.*

- On January 11, 2006, AJI terminated the Contract for convenience. SMF ¶ 9.

- On January 18, 2006, Winmar submitted a revised Application, in which it certified that it was due $653,449 as its final payment under the Contract. SMF ¶ 10.

7

- On January 19, 2006, <u>the Architect</u> notified Winmar that it was rejecting Winmar's revised Application because the scope of the work it covered was not clear, and it again included no supporting documentation. SMF ¶ 11.

- On January 19, 2006, AJI's counsel notified Winmar's counsel by letter that AJI would not provide any further payment to Winmar until Winmar provided additional documentation. SMF ¶ 12.

- On January 23, 2006, Winmar submitted another revised Application, in which Winmar certified that it was then due only $355,297 under the Contract. SMF ¶ 13.

- The January 23, 2006 revised Application was the last such Application for payment Winmar made under the Contract before Winmar received notice of the January 31, 2006 duplicate payment of $474,677 made by QNB. SMF ¶ 14.

Reply pp. 2-4 (footnotes omitted; emphasis added). Further:

> On March 9, 2006, counsel for Winmar responded to AJI by letter by stating that "My clients were unaware until your [February 24, 2006] letter was received that any wire had been accomplished on January 31, 2006. … <u>The excess over the amount last requisitioned by Winmar</u> is reflected in the enclosed check for $119,380." … "Winmar returned to Al-Jazeera $119,380 on March 9, 2006, following a claim made to the Architect disputing the amounts owed." Winmar's 3PC ¶ 27.

SMF ¶ 23 (emphasis added). Despite its attempts to avoid these facts, Winmar still has not contested the undisputed nature of any of them. Winmar's unsupported, belated, and waived argument of counsel for the first time in its Surreply that Winmar had a liquidated debt—unsupported by a single case citation—need not be considered by the Court.

Winmar argues in its Surreply that "Winmar believes in good faith that it is entitled to at least $643,646 comprising all contract amounts, plus termination costs and interest for work on the project which forms the basis of the parties' dispute." Surreply p. 3. However, it is undisputed that, at the time the duplicate payment was made, Winmar had a different "good faith" belief that it was owed less than the $643,646 plus the $355,297 it has already improperly retained. *See supra* pp. 8-9. And those stated beliefs were different from the beliefs of AJI (who disputed those debts), and the Architect who decertified all outstanding payments requests by Winmar refused to certify any further. *Id.* Winmar has not disputed, and cannot dispute, any of those facts. Winmar's argument

8

that "AJI is of the position that Winmar actually owes it money," Surreply p. 3, only highlights the reality that the amount of the debt, if any, owed by AJI to Winmar was, and is, in dispute. This favors the grant of summary judgment here because, unless Winmar, who has the burden on its discharge-for-value defense, can show that it had a liquidated debt, that defense fails as a matter of law. *See* Memorandum pp. 8, 16-18; Reply pp. 15-16.

Note that, again, in its unauthorized Surreply, Winmar—without any factual support—attempts to confuse who did the certifying and decertifying. When emphasizing the fact that the Applications were temporarily certified, Winmar states that the Architect did it. However, when Winmar seeks to sidestep the fact that the certifications were decertified, it falsely states that AJI did it. *Compare* Reply p. 3 ("Not insignificantly, AJI's own project architect certified payments totaling $2,463,301 to Winmar throughout the course of the project"), *with id.* ("The extent of this certification has been called into question by AJI as they had since attempted to 'decertify' such payments."). There is no dispute that it was the Architect who certified some of the initial payment applications and then decertified them for lack of documentation. *See* SMF ¶¶ 8-11 & WIN012-14, 20 attached as Exhibit A to Mr. Dickey's Declaration (attached as Exh. 2 to SMF), which were produced by Winmar to QNB in discovery in this case.[2] Winmar made the same misleading assertion in its Opposition. *See* Winmar Opp. p. 3 ("AJI then provided their first Notice to Winmar that they believed the previously certified payments totaling $1,363,463 were in error.") (emphasis added). Winmar's recycled attempt to confuse the Court as to who was doing the decertifying is not supported by any record evidence, is contradicted by specific evidence in the record, and is an improper reiterated Surreply argument. There is no genuine issue of material fact as to who decertified Winmar's Applications. It was the Architect, not AJI. *See* WIN012-14, 20, *supra.*

---

[2] Winmar fact admitted to the authenticity of those letters from the Architect. *See* SMF, Exh. 3 (June 12, 2008 Stipulation by Winmar and QNB).

Winmar's confusing reargument that the *Calumet* court's reading of the *GECC* case is incorrect (Winmar Opp. pp. 4-5) is neither a proper surreply argument, nor convincing.[3] Winmar has already admitted that the Sixth Circuit's opinion was the only opinion to squarely address the timing issue. *See* Winmar Opp. p. 10. The Sixth Circuit in *Calumet* analyzed all available authorities, including the *GECC*, and came to the opposite conclusion that Winmar advocates. *Calumet Farm*, 398 F.3d at 560 (citing *GECC v. Central Bank*, 49 F.3d 280, 284 (7th Cir. 1995)). On the basis of its analysis of *GECC* and other pertinent opinions, the Sixth Circuit unambiguously held that the discharge-for-value does not apply if "<u>the beneficiary [Winmar] receives notice of a mistake before the beneficiary of the transfer credits the debtor's [AJI's] account</u>." *Id.* at 560 (emphasis added). There is no issue of material fact on this issue. Winmar "receive[d] notice of [the] mistake before [Winmar could have possibly] credit[ed] [AJI's] account." *See* SMF ¶¶ 20-26.

### D.   WINMAR'S NEW ARGUMENT THAT THERE WAS NO ERRONEOUS PAYMENT

In its second "corrected" unauthorized Surreply, which purports only to attach an omitted declaration (dated the day <u>after</u> the first uncorrected, unauthorized Surreply was filed), Winmar, for

---

[3]   In its unauthorized Surreplies, Winmar has, for the second time, misleadingly quoted the Official Comment to U.C.C. section 4A-303 as:

> [T]he law of restitution might allow Beneficiary to keep all or part of the [duplicate payment]  [If] Beneficiary received the [duplicate payment] in good faith in discharge of the debt, [Beneficiary] may be allowed to keep it. …

Surreply p. 2; Winmar Opp. p. 7 (same bracketed quote). The following highlighted text is omitted from Winmar's bracketed text:

> <u>Originator's Bank is entitled to recover the overpayment from Beneficiary **to the extent allowed by the law governing mistake and restitution**. Originator's Bank would normally have a right to recover the overpayment from Beneficiary, but **in unusual cases** the law of restitution might allow Beneficiary to keep all or part of the overpayment.</u> …

12 C.F.R. § 210 Appendix B to Subpart B--Article 4A, Funds Transfers (emphasis added). Winmar, thus, omits two important principles stated in the Official Comment, namely that: (1) the law of mistake and restitution (as set forth in QNB's Memorandum at pp. 9-11, and its Reply at pp. 8-15) governs the issue of whether a Bank, such as QNB, is entitled to a return of a duplicate payment; and (2) the recipient, like Winmar, can only retain it in an "unusual case."

the very first time, makes an irrelevant argument based upon a document Winmar has had in its possession since December 2005,[4] which it did not mention in, or attach to, its Opposition. Thus, after conceding the issue in its Opposition, Winmar for the first time now argues that "the transmission from AJI to QNB in January may well not have been a confirmation request, but a further direction to affect payment to Winmar." Winmar Opp. p. 4. Winmar bases this new argument on the fact that someone at AJI, on December 13, 2005, received a confirming telex from QNB of the December 8, 2005 payment in the amount of $474,677. Thus, argues Winmar, some other AJI employee's later request for confirmation of the payment is illogical.

AJI's motive for sending a second confirmation request is legally immaterial. The undisputed fact is that <u>QNB erroneously believed</u> that it was a second payment authorization when QNB executed it. SMF ¶¶ 15-16, 26 & Exh. 4 (Mahmoud Aff. ¶¶ 5-6 & Exh. D thereto). Winmar has conceded this by failing to comply with Rule 7(h) or even to make a contrary, unsupported argument in its Opposition. Accordingly, this late-filed immaterial document and new argument presented by Winmar for the first time in its second, "corrected" Surreply should be stricken. *United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 143-44 (D.D.C. 2004) ("That [defendant] failed to put forth its best case in its opposition is not grounds for permitting a surreply.").

Further, Winmar's new argument of counsel that "the transmission from AJI to QNB in January may well not have been a confirmation request, but a further direction to affect payment to Winmar" does not logically follow from content of either this late-filed document or the content of the later handwritten confirmation request, which caused QNB to erroneously duplicate the subject payment on January 30, 2006.

Winmar has not cited, nor can it cite, to any evidence in the record to suggest that the

---

[4] The letter on its face states that it was sent by AJI to Winmar on December 19, 2005. Further, it was produced by Winmar to AJI in discovery more than four months ago.

11

January 30, 2006 fax was intended as anything but a confirmation request. It is undisputed that, in that document, AJI faxed for a second time the December 12, 2005 payment order to QNB, but added a handwritten note stating that AJI had not "received any … transfer confirmation for this … Can you please send the Confirmation please." SMF ¶ 15 & Exh. 4 (Mahmoud Aff. ¶ 5 & Exh. C thereto). There is no evidence suggesting that this faxed confirmation request was not, in fact, what it appears to be—a confirmation request. SMF ¶¶ 16-17-26. Such non sequitur arguments of counsel may not defeat QNB's properly-supported Motion for Summary Judgment. "In their [Surreplies], Defendants provide only speculation, rather than facts and affidavits. Arguments of counsel do not substitute for evidence that establishes a genuine issue of material fact." *Internet Financial*, 310 F. Supp. 2d at 4 (citing *Celotex*, 477 U.S. at 324).

Thus, in deciding whether Winmar's new suggestion is remotely reasonable, the Court may consider the following questions:

(1) Why would AJI request re-sending a $474,677 payment on January 30, 2006 when AJI was disputing that it owed any debt to Winmar, and nobody even at Winmar was, at that time, claiming it was entitled to a payment in that large of an amount? *See supra*.

(2) And why would AJI attempt to affect such a surprising duplicate payment by re-sending a copy of the old faxed payment order with hand-written comments on it specifically asking for confirmation of the previous payment, rather than simply sending a new payment order to affect that illogical transfer?

In answering these questions, the strained logic of Winmar's counsel would require the Court to believe that the previous December 13, 2005 confirmation means that, when someone else from AJI later, on January 30, 2006, again sought a confirmation of the same transaction from QNB, AJI really did not mean that it wanted such confirmation; it really meant for that confirmation request to cause QNB to duplicate a payment on a debt that (1) AJI disputed and (2) was smaller than the

debt even Winmar was claiming at that time. That would be an entirely farcical interpretation of that late-filed document.

Nevertheless, Winmar makes the new argument that "[i]f AJI already had confirmation of the December payment, it does not stand to reason that they would seek re-confirmation a month later. Therefore, the transmission from AJI to QNB in January <u>may well</u> not have been a confirmation request, but a further direction to affect payment to Winmar." Surreply p. 4. And the moon <u>may well</u> be made out of cheese. But Winmar does not have any evidence that logically supports its belated argument. Such "metaphysical doubt" about existing, properly, and timely-filed summary judgment evidence does not create an issue of fact (aside from Winmar's concession of the issue by failing to comply with Rule 7(h) or even to contest the issue in the text of its Opposition). "[T]he nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor." *Meadows v. Mukasey*, 555 F. Supp. 2d 205, 209 (D.D.C. 2008) (Kessler, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986)). Accordingly, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 249-50) (citations omitted). As this Court has noted, and the U.S. Supreme Court has

> emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is <u>some metaphysical doubt as to the material facts</u>. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial. ... [T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Scott v. Harris*, --- U.S. ----, 127 S. Ct. 1769, 1776 (2007) (quotations omitted); *see also Bergman v. Paulson*, --- F. Supp. 2d ----, 2008 WL 1905861, at *3-*4 (D.D.C. May 1, 2008) (Kessler, J.) (quoting *Scott v. Harris*). "A nonmoving party … must establish more than 'the mere existence of a scintilla of evidence' in support of its position." *U.S. ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 165

(D.D.C. 2007) (quoting *Liberty Lobby*, 477 U.S. at 252). Winmar has failed meet its burden because it has failed to produce even a scintilla of evidence to support its tenuous, belated argument that a handwritten request from AJI seeking a second confirmation of a transaction (more than a month after the previous one), may, in fact, have been a strange request for a second payment by AJI of a debt that AJI was hotly contesting even existed. Winmar's new, belatedly-filed evidence, which does not even logically support its belated Surreply arguments, should be stricken.

### III.  CONCLUSION

For the foregoing reasons, QNB respectfully requests this Court grant its Motion to Strike.

DATED:    August 20, 2008                    Respectfully submitted,


                                             _____/s/ Alan T. Dickey_____
                                             Alan T. Dickey (DC Bar # 496403)
                                             PATTON BOGGS LLP
                                             2550 M Street, N.W.
                                             Washington, D.C. 20037
                                             Telephone: (202) 457-6000
                                             Facsimile: (202) 457-6315

                                             *Attorneys for Plaintiff*
                                             *Qatar National Bank*