IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QATAR NATIONAL BANK, : | |
| Plaintiff, : | Civil Action No. 1:06-cv-1307(GK) |
| v. : | |
| WINMAR, INC., : | |
| Defendant and Third : | |
| Party Plaintiff. : | |
| : | |
| _____ : | |
| WINMAR, INC., : | |
| Third Party Plaintiff : | |
| and Counterclaim : | |
| Defendant, : | |
| v. : | |
| ALJAZEERA INTERNATIONAL, : | |
| Third Party Defendant : | |
| and Counterclaim : | |
| Plaintiff. : | |
| _____ : | |

**QATAR NATIONAL BANK'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION TO STRIKE WINMAR'S UNAUTHORIZED SURREPLIES**

Plaintiff, Qatar National Bank ("QNB"), by and through its undersigned counsel, hereby respectfully submits this Reply Memorandum in Support of its Motion to Strike Winmar's Unauthorized Surreplies.

Winmar's Opposition to QNB's Motion to Strike ("Motion") fails to establish the propriety of its unauthorized surreplies (collectively "Surreply") and fails to change the reality that:

> For more than a century, the courts of this jurisdiction have follow[ed] the established rule that one who pays money to another under an honest mistake of fact may, in the absence of an equitable defense, recover the money so paid. … To [this] rule … there is no exception.

*Association of American Railroads v. Connerton*, 723 A.2d 858, 862 (D.C. 1999) (citations and quotations omitted). There is no genuine issue of fact regarding the reality that QNB paid Winmar the subject duplicate payment on January 31, 2006 through an honest mistake of fact. QNB's Statement of Material Facts to Which There is No Genuine Dispute (hereinafter "SMF") ¶¶ 15-16, 26 & Exh. 4 (Mahmoud Aff. ¶¶ 5-6 & Exh. D thereto). Because there is no genuine dispute of fact on that issue,

Winmar instead hopes the Court will infer one simply because QNB's customer sought more than one confirmation that the December 8, 2005 payment order was executed. Winmar still cannot articulate any way that such a fact could lead a reasonable person to believe that the later, mistaken January 31, 2006 duplicated payment was not, in fact, a mistake.

Moreover, Winmar's Opposition does not support its prior unauthorized Surreply's attempts to salvage Winmar's failed discharge-for-value defense. Nothing in any of the five oppositions and surreplies filed by Winmar since QNB filed its Motion for Summary Judgment have identified a single trace of record evidence to dispute, in any way, the indisputable facts that: (1) Winmar did not have a liquidated debt from Al-Jazeera International ("AJI") on January 31, 2008 when QNB executed the erroneous, duplicate payment, and (2) Winmar had actual and constructive notice of the mistake before it even knew of the transfer itself.[1] Either of these undisputed facts neutralizes Winmar's discharge-for-value defense as a matter of law.

In its Opposition, Winmar, having filed its three unauthorized surreplies from August 4 to August 6, 2008 without giving advance notice to QNB or seeking leave from the Court, complains of a lack of a conference before QNB responded to these unauthorized surreplies by filing a Motion to Strike. However, according to Winmar's Opposition, its Surreply seeks to introduce new factual matters. Dkt. #44 ("Winmar Opp."), p.2. Further, while criticizing the lack of a conference before QNB filed its Motion to Strike in response to QNB's unauthorized Surreply, Winmar at the same time asks the Court to grant Winmar leave to file its Surreply *ex post facto*—even though Winmar did not confer with QNB before filing its Surreply in the first place. This request is hypocritical to say the least.

---

[1]    QNB's Memorandum and Reply Memorandum in support of its Motion for Summary Judgment comprehensively address these issues.

In filing its Motion to Strike, QNB sought to demonstrate to the Court: (1) why the Surreply is defective insofar as it was both (a) unauthorized; (b) reiterated previously-addressed arguments; (c) raised new legal arguments; and (d) introduced a document that Winmar has had in its possession for more than two and a half years; and also (2) to demonstrate the immateriality of Winmar's rehashed and new arguments. The Court should reject Winmar's request to deny QNB the right to file its Motion to Strike in response to Winmar's unauthorized Surreply because QNB must have some vehicle to respond to Winmar's alleged "new factual information." Winmar Opp, p. 2.

Whether styled as a Motion to Strike or something else, the Court should consider the reasons set forth in the Motion as to why Winmar's belated Surreply arguments do not create any genuine issue of material fact. In other cases, this Court has elevated substance over form in reviewing whether a surreply should be permitted. For example, in *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1 (D.D.C. 2007), when the movant responded to the non-movant's unauthorized surreply (styled as a "motion"), the Court simply denied the relief sought in the unauthorized surreply. *Id.* at 10. In the present situation, QNB requests that the Court similarly deny Winmar's unauthorized request to consider a late-filed (though immaterial) document that Winmar's has possessed for years.

Even if the request to strike Winmar's Surreply in the absence of a conference is "technically improper under the Local Rule, [it] is harmless enough and easily remedied" if Winmar would simply withdraw its unauthorized and improper Surreply. *See Cobell v. Norton*, 355 F. Supp. 2d 531, 533 (D.D.C. 2005). Further, this Court has stricken such blatantly unauthorized and improper surreplies on its own initiative, and can do so here. *See, e.g., Anthony v. Washington Metro. Area Transit Auth.*, 2005 WL 5329517, at *1 n.1 (D.D.C. Apr. 8, 2005); *Gossard v. Washington Gas Light Co.*, 217 F.R.D. 38, 40 n.3 (D.D.C. 2003); *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 113 (D.D.C. 2002).

Winmar's statement that its "Surreply is proper in that it brings to light new factual information not previously available" (Winmar Opp. p.2) is demonstrably false. Winmar has had the

"new" document "in its possession since December 2005." Motion, p. 11. Winmar did not deny that in its Opposition, and also did not deny, as stated in QNB's Motion, that "[t]he letter on its face states that it was sent by AJI to Winmar on December 19, 2005," or that "it was produced by Winmar to AJI in discovery more than four months ago." *Id.* at n.4. Upon reading Winmar's confusing assertion that the letter constituted "new factual information not previously available" (Winmar Opp. p.2), and that it "was as a result of AJI's document production pursuant to Winmar's request that Winmar was able to confirm the existence of the document attached to its Corrected Surreply with the Errata" (p.3), QNB's undersigned counsel, Alan Dickey, sought confirmation of the original date and source of the production of this document. On September 4, 2008, AJI's counsel, Mr. Leslie Wiesenfelder, confirmed again to Mr. Dickey that Winmar produced that same document in discovery to AJI during the week of March 24, 2008. Mr. Dickey then called Winmar's counsel on the same day to determine whether Winmar disputed this. Winmar's counsel, Mr. Trevor Ashbarry, confirmed to Mr. Dickey by telephone on September 4, 2008 that he did not dispute that the document was, in fact, produced by Winmar to AJI during the week of March 24, 2008. Consequently, regardless of whether or not AJI later re-produced the same document back to Winmar, Winmar independently has had the document in its possession since December 2005, and its counsel had it and produced it to AJI in March 2008—three and a half months before Winmar filed its Opposition to QNB's Motion for Summary Judgment (on July 7, 2008).

Moreover, Winmar's statement that its "Surreply is proper in that it brings to light new factual information not previously available" does not address any of the many improper arguments and assertions contained in Winmar's first surreply (Dkt. #39) or the identical text constituting the majority of the contents of Winmar's latter two surreplies (Dkt. ## 40, 41), which have nothing to do with this alleged "new factual information." *See* Exhibit A, attached to QNB's Motion.

4

In any event, whether or not the Court strikes Winmar's Surreply, QNB respectfully requests that the Court consider the arguments set forth in QNB's Motion to Strike setting forth why the old and new unsupported arguments in Winmar's Surreply, and the "new" document attached thereto, are legally immaterial to a determination of QNB's Motion for Summary Judgment.

In its Opposition, Winmar still cannot cite to any evidence in the record to suggest that the January 30, 2006 fax from AJI to QNB was intended as anything but a confirmation request. Aside from the late nature of its filing, there is nothing in the "new" document that would allow a reasonable person to conclude that, when, on January 30, 2006, AJI faxed for a second time the December 12, 2005 payment order to QNB with a handwritten note stating that AJI had not "received any … transfer confirmation for this … Can you please send the Confirmation please,"[2] what AJI really meant was "please rewire the same amount to the Winmar even though AJI has stated that it owes Winmar no debt." Nothing in the record supports this bizarre conclusion.

Winmar also again misstates QNB's position in claiming that "[t]heir 'undisputed facts' … are premised on the faulty assumption that Winmar is not owed any monies by AJI." Winmar Opp. p.4. As fully stated in QNB's prior memoranda, it does not matter whether or not Winmar is (or was) owed any monies by AJI. It does, however, matter that such a debt, if any existed, was not liquidated as of January 31, 2006. *See* QNB's Memorandum in Support of its Motion for Summary Judgment, pp. 16-18; QNB Reply Memorandum, pp. 11-16. Winmar has not introduced one scintilla of evidence indicating that it had such a liquidated debt. Because any such debt was not liquidated as a matter of law, Winmar's discharge-for-value defense also fails as a matter of law. *Id.* Further, as noted at length in QNB's prior memoranda, the non-liquidated nature of this alleged debt is of several entirely independent defects in Winmar's discharge-for-value defense. It is also fatal to Winmar's discharge-for-value defense that Winmar had actual and constructive notice of the

---

[2] *See* QNB's SMF ¶ 15 & Exh. 4 (Mahmoud Aff. ¶ 5 & Exh. C thereto).

mistake before it even knew of the underlying transfer itself. Winmar has expressly admitted those facts. *See* SMF ¶ 25, Exh. 5 (responses to QNB's interrogatories and requests for admission) & Exh. 3 (stipulation) (admitting that QNB's February 2008 demand "'seeking reimbursement from Winmar for the payment of $474,677.00, made on or around January 31, 2006,' was the first notice that Winmar received that the payment of $474,677.00 had been made on or around January 31, 2006 into Winmar's Citibank account.").

For the foregoing reasons, QNB respectfully requests this Court grant its Motion to Strike.

DATED:   September 9, 2008                    Respectfully submitted,


                                              ____/s/ Alan T. Dickey_____
                                              Alan T. Dickey (DC Bar # 496403)
                                              PATTON BOGGS LLP
                                              2550 M Street, N.W.
                                              Washington, D.C. 20037
                                              Telephone: (202) 457-6000
                                              Facsimile: (202) 457-6315

                                              *Attorneys for Plaintiff*
                                              *Qatar National Bank*

6