# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**QATAR NATIONAL BANK,**
        **Plaintiff,**

    **v.**

**WINMAR INC.,**
        **Defendant, Third Party Plaintiff,**
        **and Counterclaim Defendant,**

    **v.**

**AL JAZEERA INTERNATIONAL,**
        **Third Party Defendant**
        **and Counterclaim Plaintiff.**

**Civil Action No. 06-1307 (GK/JMF)**

## REPORT AND RECOMMENDATION

Before me at this time are three motions for Report and Recommendation: Winmar, Inc.'s Motion to Alter or Amend the Judgment to Include Attorneys' Fees and Costs Plus Pre and Postjudgment Interest [Doc. #69],[1] Winmar, Inc.'s Motion to Quash Notice of Seizure or in the Alternative to Permit Winmar to Execute Upon Its Judgment Against Al Jazeera International

---

[1] Ordinarily, the filing of an appeal would bar consideration of Winmar's motion, and the provisions of Federal Rule of Civil Procedure 62.1 would be operative. Order of May 6, 2011 [Doc. #112]. However, on April 13, 2011, the Court of Appeals issued an Order stating that Al Jazeera's appeal would "'be held in abeyance pending further order of the court' and directing the parties to file motions to govern future proceedings in this case 'within 30 days of the district court's resolution of appellant's [sic, appellee's] motion to alter or amend the judgment to include attorneys fees and costs as well as pre- and post-judgment interest,'" which Al Jazeera understood as a limited remand under Federal Rule of Appellate Procedure 12.1 and Federal Rule of Civil Procedure 62.1. Al Jazeera International's Supplemental Brief [Doc. #115] at 2. Winmar expressed a similar understanding. Winmar, Inc.'s Supplemental Brief [Doc. #114] at 3. I agree with them, and believe it is proper to address the motion at this time.

[Doc. #90], and Qatar National Bank's Motion for Entry of a Charging Order [Doc. #88].[2]

The facts of this case may be found in Judge Kessler's principal opinions, Qatar National Bank v. Winmar, Inc., 650 F. Supp. 2d 1 (D.D.C. 2009) and Winmar, Inc. v. Al Jazeera International, 741 F. Supp. 2d 165 (D.D.C. 2010).  Winmar, Inc. ("Winmar") was contracted to construct a state-of-the-art television studio and office space in northwest Washington, D.C., by Al Jazeera International ("Al Jazeera") in 2005. Winmar, 741 F. Supp. 2d at 170.  The architect of the project, Janson Design Group ("Janson"), acted as Al Jazeera's representative throughout the project. Id. at 171.  Pursuant to the contract between them, Winmar submitted applications for payment to Al Jazeera through Janson, who had to certify the applications by determining the percentage of work completed before sending them to Al Jazeera for payment. Id. at 172.  Once it did, Al Jazeera would pay Winwar the amount Janson certified by wiring funds to an account at Citibank Federal Savings Bank ("Citibank") in Washington. Qatar Nat'l Bank, 650 F. Supp. 2d at 3.  Al Jazeera maintained an account at Qatar National Bank ("QNB"), and would send a payment order to QNB to wire the funds to the Citibank account. Id.

On December 8, 2005; Al Jazeera faxed a payment order to QNB, requesting that $474,677 be wired to the Citibank account; on December 12, QNB did so. Id.

On December 22, 2005, a Winmar Vice President sent Al Jazeera a letter demanding $1,363,463, the total of three payments that Janson had certified were due to Winmar in a December 7, 2005 payment application. Id.  On January 5 and 6, 2006 Janson wrote letters to Winmar indicating that it had erred in certifying the $1,363,463, and requested that Winmar

---

[2] Following the introduction of a document by its full name, citations will be made to the document number.

provide documentation to support its claim for that amount.[3]  <u>Id.</u>  On January 11, 2006, Al Jazeera terminated the contract with Winmar for convenience. <u>Id.</u> at 3-4.

Al Jazeera did not make a payment after December 8, 2005.  On January 30, 2006, Al Jazeera faxed a second copy of the December 8, 2005 payment order to QNB, with a handwritten note stating that Al Jazeera had not received any transfer confirmation for the payment, and requesting that QNB send the confirmation. <u>Id.</u> at 4.  As Judge Kessler concluded, QNB mistakenly understood the fax to be a second payment order, and caused another $474,677 to be sent to the Citibank account. <u>Id.</u>  QNB was unable to stop the transmittal of that amount to the Citibank account, and Winmar refused to refund the money. <u>Id.</u> at 4-5.  QNB refunded the $474,677 to Al Jazeera, and then sued Winmar for that amount. <u>Id.</u> at 5.  Judge Kessler granted QNB summary judgment, concluding that the second payment to Winmar was an honest mistake of fact, that it conferred a benefit on Winmar, that Winmar retained the benefit, and that the retention of the benefit was unjust. <u>Id.</u> at 8.  In reaching the conclusion that Winmar's retention of the benefit was unjust, Judge Kessler rejected Winmar's contention that there was a factual dispute as to whether Winmar retained the second payment to discharge a portion of the debt that Winmar claimed Al Jazeera owed it. <u>Id.</u> at 8-10.

Following a bench trial, Judge Kessler concluded that Winmar was entitled to a total of $1,472,625.50 on its third party claim against Al Jazeera for breach of contract and unjust enrichment. <u>Winmar</u>, 741 F. Supp. 2d at 196.  Winmar has now moved the Court to amend that judgment to include amounts for attorneys' fees and pre- and post-judgment interest.

---

[3] Judge Kessler determined that the decertification by Janson was not valid, as they had no authority under the contract to do so for the reasons stated (<i>i.e.</i>, failure to provide supporting documentation). <u>Winmar</u>, 741 F. Supp. 2d at 181-82.

## I.      MOTION TO AMEND

### A.      Attorneys' Fees

Winmar has submitted a demand for fees from Al Jazeera that includes all of its counsel's work in defending Winmar from QNB's lawsuit and in securing its judgment against Al Jazeera. Opposition of Al Jazeera International to Plaintiff's Motion to Alter or Amend the Judgment to Include Attorney's Fees and Costs Plus Pre and Postjudgment Interest [Doc. #72] at 1-2. Al Jazeera protests that it cannot possibly be responsible for the fees Winmar paid to defend itself against QNB's claim. Id. at 3. Al Jazeera seems to claim that, as Winmar's counsel has not differentiated the fees allocable to the defense of the action brought against Winmar from the fees Winmar paid to get its judgment against Al Jazeera, the entire petition should be denied. Id.

Winmar premises its demand for fees on § 4.6.3 of the General Conditions of its contract with Al Jazeera. Winmar Inc.'s Reply Memorandum [Doc. #79]. That provision reads, "In any action or proceeding brought by the Contractor [Winmar] to enforce any provision of this Agreement, or where any provision is validly asserted as a defense, the Contractor shall be entitled to recover reasonable attorneys' fees in addition to its costs and expenses and any other available remedy." Defendant/Third-Party Plaintiff Winmar, Inc. d/b/a Winmar Construction's Third-Party Complaint Against Third-Party Defendant Al-Jazeera International [Doc. #19] at Exh. 1, Gen. Cond. § 4.6.3.

Winmar alleges that its defense against the QNB claim "is entirely related to the prosecution of its claims against Al Jazeera," i.e., had Al Jazeera not materially breached the contract by failing to make the certified payments, Winmar would not have had any reason to keep the duplicate payment from QNB. #79 at 2-3. Specifically, in response to QNB's motion

for summary judgment, Winmar advanced a "discharge for value" defense, claiming that, once

Al Jazeera failed to pay the certified payment applications in violation of the terms of the

contract, the debt "became an objectively verifiable, preexisting, liquidated obligation," and

Winmar was entitled to keep the amount due to it by Al Jazeera from the money sent by QNB.

<u>Winmar, Inc.'s Corrected Surreply to Plaintiff Qatar National Bank's Reply Memorandum in</u>

<u>Support of Its Motion for Summary Judgment</u> [Doc. #41] at 5.  Winmar explicitly relied on the

provision in the contract that required Al Jazeera to pay Winmar upon the certification by Janson

that a certain amount was due. <u>Id.</u>  According to Winmar, that contractual provision permitted it

to keep and allocate money sent to it by QNB on behalf of Al Jazeera, and that Judge Kessler, by

ordering the return of the money from Winmar to QNB, was unfairly resolving whether Winmar

was owed the money by Al Jazeera under the contract. <u>Id.</u>

It certainly appears that Winmar asserted the contractual provision entitling it to payment

upon the architect's certification as a defense to QNB's demand for reimbursement of the money

paid by mistake.  Fees incurred by Winmar in its defense of the action by QNB were potentially

fees incurred in a proceeding "where any provision [of the contract] is validly asserted as a

defense." #19, Exh. 1 at Gen. Cond.§ 4.6.3.  Unfortunately for Winmar, the contractual provision

requires that the contractual provision be *validly* asserted as a defense; the question presented is

whether the valid assertion of a defense can mean a defense that was unsuccessful.

The court of appeals has indicated that "[i]nterpretation of a contract, like statutory and

treaty interpretation, must begin with the plain meaning of the language." <u>Am. Fed'n of Gov't</u>

<u>Emps., Local 2924 v. Fed. Labor Relations Auth.</u>, 470 F.3d 375, 381 (D.C. Cir. 2006); <u>see also</u>

<u>Rastall v. CSX Transp., Inc.</u>, 697 A.2d 46, 50 (D.C. 1997) ("In reviewing a contract for

ambiguity, we consider the face of the document, giving the language used its plain meaning.");

Kakaes v. George Washington Univ., 683 A.2d 128, 132 (D.C. 1996).("Words in a contract are

to be given their common meaning.") (internal citations omitted).  "Unless a different intention is

manifested, (a) where language has a generally prevailing meaning, it is interpreted in accordance

with that meaning." Restatement (Second) of Contracts § 202(3).[4]

      According to Black's Law Dictionary, the common meanings of the word "valid" are

"Legally sufficient, binding <a valid contract>" and "Meritorious <that is a valid conclusion

based on the facts presented in this case>." Black's Law Dictionary 1548 (7th ed. 1999).[5]  While

the argument made by Winmar may have been legitimate, it was rejected by Judge Kessler. Qatar

Nat'l Bank, 650 F. Supp. 2d at 10.  A rejected argument is not "valid" as all persons (including

the lawyers who draft contracts for their clients) use the word "valid."  To the contrary, the

argument was invalid because the court rejected it and accepted the opposing argument.

      Thus, Al Jazeera's point is well taken—it should not be responsible for the fees Winmar

incurred in its defense of the action brought against it by QNB.  It hardly follows, however, that

---

[4] All references to the United States Code, District of Columbia Code, or Restatements are to the electronic versions that appear in Westlaw or Lexis.

[5] The Oxford English Dictionary is to the same effect:

> 1.a. Good or adequate in law; possessing legal authority or force; legally binding or efficacious.
> . . .
> 2.a. Of arguments, proofs, assertions, etc.: Well founded and fully applicable to the particular matter or circumstances; sound and to the point; against which no objection can fairly be brought.

Valid Definition, OED Online, http://www.oed.com/view/Entry/221190?redirectedFrom=valid (last visited July 14, 2011) (originally appeared in 2d ed. 1989).

Winmar's claiming all the fees should work a forefeiture of the fees in its action against Al

Jazeera.  Those fees fall directly within the provision requiring Al Jazeera to pay fees Winmar

incurred in "any action or proceeding brought by [Winmar] to enforce any provision of [the

parties' Contract]." #19, Exh. 1 at Gen. Cond. § 4.6.3.  I therefore recommend that <u>Winmar,

Inc.'s Motion to Alter or Amend the Judgment to Include Attorneys' Fees and Costs Plus Pre and

Postjudgment Interest</u> [Doc. #69] be denied without prejudice to its submission of a revised

motion seeking only the attorneys' fees incurred by Winmar in its action against Al Jazeera.

### B.  Pre-judgment Interest

Judge Kessler, in her Conclusions of Law, stated:

> As an initial matter, the facts established at trial make clear that Al
> Jazeera failed to deposit the funds required under Article 5 of the
> Standard Form into Winmar's holding account after the Architect
> certified the Payment Applications.  Section 5.1.2.4 of the Standard
> Form states that the owner's failure to make such progress
> payments constitutes a material breach of the contract.  Thus, Al
> Jazeera materially breached the Contract when it failed to make
> those progress payments.

<u>Winmar</u>, 741 F. Supp. 2d at 178.

She also noted that Section 7.2 of the Standard Form of the Contract provides:

"[p]ayments due and unpaid under the Contract shall bear interest from the date payment is due

at [12% simple interest]." <u>Id.</u> at 195.  Judge Kessler rejected Al Jazeera's argument that D.C.

Code § 15-108, which creates a statutory mandate for pre-judgment interest in actions to recover

a liquidated debt, was applicable. <u>Id.</u> at 195-96.  Instead, she held that D.C. Code § 15-109 was

applicable, and that there is "nothing in the language of § 15-109 to suggest that it precludes the

enforcement of a contractual provision granting a party the right to collect interest on payments

due at a given rate." Id. at 196.

Al Jazeera asks the court to exercise its discretion to specify the date from which pre-judgment interest will run. #72 at 3-4.  The request ignores that the source of Al Jazeera's obligation to pay interest on the amounts due Winmar is based on a contractual provision, and the court has no "discretion" to modify a provision in a contract to which both parties agreed. Furthermore, Judge Kessler has already specifically concluded that (1) Winmar was entitled to compensation for the work performed up to the time of Al Jazeera's termination for convenience and (2) that Winmar is not precluded by the District of Columbia statute concerning pre-judgment interest from claiming the interest required to be paid by Section 7.2 of the contract. Winmar, 741 F. Supp. 2d at 194, 196.

Winmar has submitted two methods of calculation for pre-judgment interest: one is a phased amount, calculated based on the differing amounts due on December 12, 2005 (the date that the payments certified on December 7, 2005, were due), on January 11, 2006 (the date of Al Jazeera's termination for convenience), and on March 9, 2006 (the date on which Winmar provided the difference Winmar believed was owed to Al Jazeera after accepting the QNB wire transfer); the other is calculated based on the total amount due, counting from January 11, 2006. #69-1 at 5-7.  As Al Jazeera has not objected to the calculations by either method, other than asking for a different date for the commencement of the obligation to pay it, the question is which method seems most accurate.

As Judge Kessler noted, unpaid amounts under the contract "bear interest from the date payment is due." Winmar, 741 F. Supp. 2d at 195.  Furthermore, the full amount awarded, $1,472,625.50, was not due until March 9, 2006. #69-1 at 6.  The phased amounts, then, would

8

seem to yield more accurate results.  Winmar's calculations by the phased method result in the

following amounts:

- As of December 12, 2005, Winmar was entitled to payment of $1,312,191.50 (the total amount due to Winmar, $2,473,086.50, minus $16,544 payment for work after December 7, 2005, the March 9, 2006 $119,381 payment to Al Jazeera, suspension fees of $24,500, and the total amount paid by Al Jazeera, $1,119,841). See #69-1 at 5; Winmar, 741 F. Supp. 2d at 196.

- As of January 11, 2006, Winmar was entitled to total payment in the amount of $1,353,245.50 (the total amount due, minus the total amount paid by Al Jazeera and the later payment to Al Jazeera).  See #69-1 at 5-6; Winmar, 741 F. Supp. 2d at 196.

- As of March 9, 2006, Winmar was entitled to total payment in the amount of $1,472,625.50 (the total amount, minus the total amount paid by Al Jazeera). See #69-1 at 6; Winmar, 741 F. Supp. 2d at 196.

Thus, Winmar proposes the following amounts for calculating pre-judgment interest:

- $12,942.30 between December 12, 2005 and January, 11, 2006 (a period of 30 days at a rate of $431.41 per day);

- $25,359.30 between January 11, 2006 and March 9, 2006 (a period of 57 days at a rate of $444.90 per day); and

- $806,109.75 between March 9, 2006 and September 29, 2010 (a period of 1,665 days at a rate of $484.15 per day).

#69-1 at 6.

The proposed amounts would be accurate in light of the September 29, 2010 judgment; however, that judgment should be vacated, and a new judgment entered in its place.  I will therefore recommend that the pre-judgment interest awarded should be the sum of $12,942.30, $25,359.30, and the total of $484.15 multiplied by the number of days from March 9, 2006, to

the date of the new judgment.[6]

C.   **Post-judgment Interest**

Al Jazeera argues that Winmar's claim for post-judgment interest should be awarded

pursuant to the controlling statute, 28 U.S.C. § 1961. #72 at 8.  The relevant language is as

follows:

> (a) Interest shall be allowed on any money judgment in a civil case
> recovered in a district court.  Execution therefor may be levied by
> the marshal, in any case where, by the law of the State in which
> such court is held, execution may be levied for interest on
> judgments recovered in the courts of the State.  Such interest shall
> be calculated from the date of the entry of the judgment, at a rate
> equal to the weekly average 1-year constant maturity Treasury
> yield, as published by the Board of Governors of the Federal
> Reserve System, for the calendar week preceding[.] the date of the
> judgment. The Director of the Administrative Office of the United
> States Courts shall distribute notice of that rate and any changes in
> it to all Federal judges.

28 U.S.C. § 1961.

Al Jazeera claims that the statutory rate should be applicable in calculating post-judgment

interest, rather than the contracted rate of 12%. #72 at 8-9.  The post-judgment interest rate for

the week of September 24, 2010, was 0.25%. Post-Judgment Interest Rate 2010,

http://www.utd.uscourts.gov/documents/int2010.html (last visited July 14, 2011).

Once again, the existence of a statute that specifies a certain rate of interest does not

displace a contractual provision that specifies a different rate of interest.  Al Jazeera's obligation

to pay interest on the amounts due Winmar is based on a contractual provision, and the court has

---

[6] For example, July 15, 2011 is 2,320 days from March 9, 2005; the interest accrued since March
9, 2005 would be $1,123,228 (2,320 * $484.15), and the total pre-judgment interest due would be
$12,942.30 + $25,359.30 + $1,123,228 = $1,161,529.60.

10

no discretion to modify a provision in a contract to which both parties agreed.  Therefore, I recommend that the 12% interest rate apply to the full amount awarded in Judge Kessler's opinion, $1,472,625.50, to accrue at a rate of $484.15 per day.

As to the post-judgment award of attorneys' fees, once the fees are determined, I recommend that the parties brief whether interest should accrue on those fees, and the rate at which the fees awarded should accrue interest, as the parties have not yet been heard on that issue.

## II.      MOTION TO QUASH OR EXECUTE UPON JUDGMENT

QNB served Winmar with a notice of seizure relative to the Al Jazeera judgment on or around January 3, 2011, following the issuance of a writ of execution against Winmar's assets relative to QNB's judgment against Winmar. Memorandum in Support of Winmar, Inc.'s Motion to Quash Notice of Seizure or in the Alternative to Permit Winmar to Execute Upon Its Judgment Against Al Jazeera International [Doc. #90-1] at 3.  QNB claims that it has a right to Winmar's judgment against Al Jazeera, even if that means a sale of the judgment. Memorandum in Opposition to Winmar Inc.'s Motion to Quash Notice of Seizure or in the Alternative to Permit Winmar to Execute Upon Its Judgment Against Al Jazeera International [Doc. #92] at 2-3.  In the meantime, Winmar attempted to file a writ of execution as to Al Jazeera on December 22, 2010, but the Clerk's Office told Winmar that the writ could not be issued pending appeal. #90-1 at 3. In the meantime, there has been no stay issued on the execution of judgment against Al Jazeera, and Al Jazeera has never posted a supersedeas bond. Id. at 5.

Winmar's motion asks for two alternative forms of relief.  On the one hand, Winmar asks that QNB's notice of seizure as to the Al Jazeera judgment be quashed, and any attempt by QNB

to execute upon its judgment by using the Al Jazeera judgment be stayed, because Winmar essentially and practically has no tangible interest in the judgment. #90-1 at 4.  Therefore, Winmar claims, it would be improper to allow the sale of an asset that is beyond the reach of Winmar at this time. Id.  Furthermore, the motion to alter the judgment (discussed above) could change the value of the Al Jazeera judgment, which would also make sale at this time improper. Id. at 5.  In the alternative, Winmar requests either that it be allowed to execute on its judgment against Al Jazeera, or that Al Jazeera be made to post a supersedeas bond. Id.

In my view, both applications to execute on the judgment are now premature and moot. The September 29, 2010 judgment upon which QNB seeks to execute should be vacated to be replaced by a judgment that reflects the award of (a) a specific amount of pre-judgment interest and (b) attorneys' fees.  Until that is done and a judgment issues, there is nothing upon which to execute.  Therefore, I recommend that Winmar's motion to quash the QNB notice of seizure be granted, and that Winmar's motion to execute upon the Al Jazeera judgment be denied as premature.

As a supplementary recommendation, I would recommend that, as soon as judgment is entered, Al Jazeera be compelled to file a supersedeas bond.  The award in this case, once pre-judgment interest and attorneys' fees are calculated, has the potential to be very large; a bond would protect the interests of both Winmar and QNB as judgment creditors.

## III.    MOTION FOR CHARGING ORDER

QNB filed a motion requesting that the Court enter a charging order which would transfer to QNB Winmar's beneficial interest in two business ventures:  "(1) Winmar/Dustin Janney Elementary School Joint Venture, LLC; and (2) Winmar-Dustin (Fort Stanton Community

Center) Joint Venture." #88 at 1-2.  QNB makes the request pursuant to D.C. Code § 29-1038

pertaining to the rights of a creditor, which reads as follows: "On application to a court of

competent jurisdiction by any judgment creditor of a member, the court may charge the interest

of the member in the limited liability company with payment of the unsatisfied amount of the

judgment with interest." D.C. Code § 29-1038.  In its opposition, Winmar admits that it

maintains an ownership interest in "Winmar/Dustin Janney Elementary School Joint Venture"

and Winmar-Dustin (Fort Stanton Community Center) Joint Venture, but further notes that

> QNB requests a charging order against an LLC of a similar name to
> the joint venture for which QNB has attached the joint venture
> agreement. QNB has provided no documentation evidencing the
> existence of a limited liability company of the same name, nor has
> it provided the LLC agreement pertaining to the same, if any.

Winmar, Inc.'s Opposition to Qatar National Bank's Motion for Entry of a Charging Order [Doc. #98] at 1, 1 n.1.

As Winmar points out, the exhibits QNB attached to its motion are both joint venture

agreements, not limited liability company ("LLC") agreements. #88 at Exhs. B & C.  The D.C.

Code provision on which QNB relies pertains only to limited liability companies.  QNB has

provided no evidence to show that Winmar is involved in an LLC by the name of

"Winmar/Dustin Janney Elementary School Joint Venture, LLC," and "Winmar-Dustin (Fort

Stanton Community Center) Joint Venture" is decidedly not an LLC.  Furthermore, QNB filed no

reply to Winmar's opposition.  I recommend that QNB's motion be denied.

IV.     **CONCLUSION**

My recommendations are as follows:

I recommend that the September 29, 2010 judgment be vacated.

13

I recommend that Winmar, Inc.'s Motion to Alter or Amend the Judgment to Include Attorneys' Fees and Costs Plus Pre and Postjudgment Interest [Doc. #69] be denied without prejudice as to the attorneys' fees, and that Winmar file a revised motion for attorneys' fees based on the work performed only in the action to enforce the contract against Al Jazeera.

I recommend that Winmar, Inc.'s Motion to Alter or Amend the Judgment to Include Attorneys' Fees and Costs Plus Pre and Postjudgment Interest [Doc. #69] be granted as to pre- and post-judgment interest.  Pre-judgment interest should be calculated as discussed above; however, the third phase of pre-judgment interest will accrue at the rate of $484.15 from March 9, 2005, until the date of the new judgment, whatever that may be.  Post-judgment interest on the final award amount of $1,472,625.50 will accrue at the 12% interest rate of $484.15 per day, calculated from the date of the new judgment until the entire amount owed is paid.

I further recommend that the parties brief whether attorneys' fees should accrue interest, and whether interest should accrue at the contract rate or the statutory rate.  I recommend that interest on attorneys' fees, if any, accrue from the new date of judgment.

I recommend that Winmar, Inc.'s Motion to Quash Notice of Seizure or in the Alternative to Permit Winmar to Execute Upon Its Judgment Against Al Jazeera International [Doc. #90] be granted as to the motion to quash.

I recommend that Winmar, Inc.'s Motion to Quash Notice of Seizure or in the Alternative to Permit Winmar to Execute Upon Its Judgment Against Al Jazeera International [Doc. #90] be denied as premature as to the motion to permit Winmar to execute upon its judgment.  I also recommend that, as soon as a new judgment is entered, Al Jazeera be compelled to file a supersedeas bond.

14

Finally, I recommend that Qatar National Bank's Motion for Entry of a Charging Order [Doc. #88] be denied.

**Failure to file timely objections to the findings and recommendations set forth in this report may waive your right of appeal from an order of the District Court adopting such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).**

_____

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE